COPY

1  Joshua E. Anderson (SBN 211320)
   janderson@sidley.com
2  SIDLEY AUSTIN LLP
   555 West Fifth Street, Suite 4000
3  Los Angeles, California 90013
   Telephone: (213) 896-6000
4  Facsimile: (213) 896-6600

5  Joel S. Feldman (*pro hac vice* forthcoming)
   jfeldman@sidley.com
6  Lisa E. Schwartz (*pro hac vice* forthcoming)
   lschwartz@sidley.com
7  SIDLEY AUSTIN LLP
   One South Dearborn Street
8  Chicago, Illinois 60603
   Telephone: (312) 853-7000
9  Facsimile: (312) 853-7036

10 Attorneys for Unum Life Insurance
   Company of America

11

12            UNITED STATES DISTRICT COURT
              CENTRAL DISTRICT OF CALIFORNIA
13
              CV13-  4502 DSFIVBKX
14

15 RUBEN DON,                          | Case No. _____
   Individually, and on behalf of those|
16 persons similarly situated,         |
                                       |
17            Plaintiff,               |
                                       |
18      vs.                            | **DEFENDANT UNUM LIFE
                                       | INSURANCE COMPANY OF
19 UNUM LIFE INSURANCE COMPANY         | AMERICA'S NOTICE OF
   OF AMERICA; WEDNER INSURANCE        | REMOVAL; DECLARATION OF
20 GROUP, INC. dba THE MORTON          | JOSHUA E. ANDERSON**
   WEDNER INSURANCE AGENCY, and        |
21 DOES 1-30,                          | State Action Filed:  May 17, 2013
                                       |
22            Defendants.              | State Action Served:  May 23, 2013

23

24

25

26

27

28

─────────────────────────────────────────────────────────
DEFENDANT UNUM LIFE INSURANCE COMPANY OF AMERICA'S NOTICE OF REMOVAL

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT,
CENTRAL DISTRICT OF CALIFORNIA:**

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, defendant UNUM Life Insurance Company of America ("Unum") hereby removes to this Court the above-styled putative class action, pending as Case No. BC509235 in the Superior Court of the State of California for the County of Los Angeles (the "State Court Action").

**INTRODUCTION**

1.     On or about May 17, 2013, plaintiff Ruben Don ("plaintiff") filed the State Court Action against Unum and defendant Wedner Insurance Group, Inc. ("Wedner") in the Superior Court of the State of California, County of Los Angeles. Plaintiff purports to represent a putative statewide class consisting of: (1) "all current and former California insureds who suffered a covered loss and received benefits under the UNUM Long Term Care Policies and the annual increase was applied to the amount of the benefits remaining and not to the Lifetime Maximum Benefit Amount" ("Subclass I"); and (2) "all current and former California insureds under the UNUM Long Term Care Policies who have not yet suffered a covered loss or received benefits but will be faced with Defendant UNUM's unreasonable and wrongful policy interpretation, as it relates to the application of the annual increase to the amount of benefits remaining, if and when they do make a claim, based on Defendant UNUM's uniform erroneous interpretation to the calculation of benefits" ("Subclass II"). Compl. ¶¶ 7-8.[1]

2.     Plaintiff makes two key allegations in his complaint. First, plaintiff alleges that putative class members were wrongfully denied benefits owed under long term care policies issued by Unum in the State of California containing an optional inflation protection provision. Compl. ¶¶ 1-2. Second, plaintiff alleges

---

[1] Plaintiff's Complaint is included as Exhibit A to the attached Declaration of Joshua E. Anderson ("Anderson Decl.").

-1-

**DEFENDANT UNUM LIFE INSURANCE COMPANY OF AMERICA'S NOTICE OF REMOVAL**

1   that had purchasers "known the true facts, they would not have purchased this

2   insurance, …." Compl. ¶ 59.

3        3.    Based on these allegations, plaintiff seeks various modes of relief.

4   Plaintiff specifically seeks: 1) the return of premiums paid; 2) compensatory

5   damages; 3) punitive damages; and 4) attorneys' fees.

6        4.    Removal to the United States District Court for the Central District of

7   California is proper as authorized by the Class Action Fairness Act of 2005

8   ("CAFA"), 28 U.S.C. § 1332(d)(2). There is minimal diversity. In addition, based

9   on the allegations of the Complaint, which must be accepted as true for removal

10  purposes, the amount in controversy easily surpasses $5,000,000. Finally, this case

11  is a putative class action in which the class contains at least 100 members. *See* 28

12  U.S.C. §§ 1332(d)(1), 1332(d)(2), 1332(d)(2)(A), and 1332(d)(5).

## I.    REMOVAL IS PROPER UNDER THE CLASS ACTION FAIRNESS ACT.

### A.    This is a Putative Class Action Involving At Least 100 Class Members.

5.    Plaintiff's Complaint was filed as a state-wide class action, as defined in 28 U.S.C. § 1332(d)(1)(B). Compl. ¶¶ 1, 25.

6.    While CAFA requires at least one hundred putative class members, UNUM's current best estimate as to the number of class members in this case is approximately 49,639. *See* Affidavit of Ronald L. Lucas ("Lucas Aff." ) ¶ 8.[2]

### B.    There is Minimal Diversity.

7.    To satisfy CAFA's minimal diversity requirement, "any member of a class of plaintiffs [must be] a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). This requirement is satisfied here because plaintiff is a citizen of California (Compl. ¶ 6 & Ex. A at 16) and Unum is a citizen of Maine (Compl. ¶ 10; Lucas Aff. ¶ 3). *See* 28 U.S.C. § 1332(c)(1).

---

[2] The Lucas Affidavit is included as Exhibit B to the Anderson Declaration.

-2-

**C.   The Alleged Amount in Controversy is Well in Excess of $5,000,000.**

8.   Unum denies that plaintiff is entitled to any of the relief sought in his Complaint and does not waive any defenses with respect to any of plaintiff's claims.  However, the amount in controversy is guided by accepting plaintiff's allegations as true.  *See, e.g., Campbell v. Vitran Express, Inc.*, 471 Fed. App'x 646, 648 (9th Cir. 2012) ("[I]n assessing the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'") (internal citations omitted); *Cain v. Hartford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.").

9.   As discussed below, accepting plaintiff's allegations as true, the amount that the Complaint seeks through return of premium alone is exponentially greater than $5,000,000.  In addition, the Complaint's requests for compensatory damages, punitive damages, and statutory and contractual attorneys' fees must also be added into the equation to compute the amount in controversy in this case. Compl. ¶¶ 39, 45, 49-50, 58, 60-62, 72, 77.[3]

**1.   Return of Premium.**

10.   On behalf of Subclass II, Plaintiff seeks a "full repayment of their past paid premium, plus interest."  Compl. ¶ 58.  This is the only theory of relief under

---

[3] Plaintiff asserts six causes of action:  (1) a cause of action for declaratory relief by plaintiff, Subclass I, and Subclass II against Unum; (2) a cause of action for breach of insurance contract by plaintiff and Subclass I against Unum; (3) a cause of action for insurance bad faith by plaintiff and Subclass I against Unum; (4) a cause of action for fraud by intentional misrepresentation by Subclass II against Unum; (5) a cause of action for negligence and negligent concealment/misrepresentation by plaintiff against Wedner; and (6) a cause of action for unfair business practices in violation of California Business and Professions Code § 17200 *et seq.* by plaintiff, Subclass I, and Subclass II against Unum and Wedner.  Compl. ¶¶ 30-77.

the Complaint's fraud cause of action. *Id.* ¶¶ 51-62. Plaintiff alleges that every member of Subclass II would seek this relief. *Id.* ¶¶ 58-59.

11.     While Unum denies that there has been any fraud and that any return of premiums should occur, as previously stated, for purposes of removal, the allegations of the complaint must be accepted as true. *Vitran Express,* 471 Fed. App'x at 648; *Hartford Life,* 890 F. Supp. 2d at 1249. A return of all premiums paid for Subclass II amounts to relief of approximately $304,251,090. Lucas Aff. ¶ 10.

12.     As detailed in the Lucas Affidavit, Unum searched its computer records to determine how many persons in the State of California belonged to Subclass II. *See* Lucas Aff. ¶¶ 5-6, 8. That is, Unum located how many putative class members own the policies at issue but have yet to file a claim for benefits. *Id.* That total, which comprises Subclass II, is 49,535. *Id.* ¶ 8.

13.     Unum then computed the total amount of premiums paid by these putative class members. *See* Lucas Aff. ¶¶ 9-10. Unum undertook this task by (a) for each member of Subclass II, multiplying the total length of coverage (reflected in years and fractional years) by the annual premium amount to determine the total premiums each such individual paid, and then (b) summing those amounts for all members of Subclass II. *Id.* The total of premiums paid for Subclass II is, accordingly, $304,251,090. *Id.* ¶ 10.

**2.     Compensatory Damages.**

14.     Plaintiff's request for return of premium, by itself, is more than enough to satisfy with ease the $5,000,000 threshold for jurisdiction. Plaintiff nonetheless seeks numerous other forms of relief that also count toward the total. For example, on behalf of himself and Subclass I, plaintiff seeks compensatory damages amounting to the difference between the amount of long term care benefits that Unum actually paid class members and the amount of long term care benefits

1    plaintiff alleges class members should have been paid under his interpretation of the
2    policies. Compl. ¶¶ 45, 49.

3        15.    Unum has calculated compensatory damages to plaintiff and Subclass I
4    under plaintiff's theory of recovery. *See* Lucas Aff. ¶¶ 11-12. It did so by (a)
5    computing the difference between what each member of Subclass I actually
6    received in benefits from Unum and what such individual would have received in
7    benefits from Unum under plaintiff's interpretation of the policy, and then (b)
8    summing the resulting amounts for all of the members of Subclass I . *Id.* Based on
9    this calculation, the amount of compensatory damage is $1,731,587. *Id.* ¶ 12.

10       16.    Accordingly, plaintiff seeks a total of $1,731,587 in compensatory
11   damages on behalf of Subclass I.

12                    **3.    Punitive Damages.**

13       17.    Punitive damages, when available under the applicable law, must also
14   be included in the amount in controversy. *See, e.g., Gibson v. Chrysler Corp.*, 261
15   F.3d 927, 945 (9th Cir. 2001); *Guglielmino v. McKee Foods Corp., 506 F.3d 696,*
16   698, 700 (9th Cir. 2007).

17       18.    Plaintiff seeks punitive damages with respect to the Complaint's
18   insurance bad faith and fraud causes of action, alleging that Unum's conduct was
19   "fraudulent...malicious, oppressive, extreme, outrageous, and despicable." Compl.
20   ¶¶ 47-48, 60; *see also* Prayer for Relief ¶¶ F, G. Punitive damages are available
21   under California law for these claims. *See, e.g., Archdale v. Am. Int'l Specialty*
22   *Lines Ins. Co.*, 154 Cal. App. 4th 449, 467 n.19 (2007); *Textron Fin. Corp. v. Nat'l*
23   *Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1085 (2004); Cal. Civil
24   Code § 3294.

25       19.    If one were to assume a 1:1 ratio between return of
26   premium/compensatory damages and punitive damages, the amount of punitive
27   damages would be $305,982,677. This assumption is conservative because
28   California courts routinely award punitive damages at higher ratios. *See, e.g.,*

1   *Textron Fin. Corp.*, 118 Cal. App. 4th at 1085 (approving 4:1 ratio of punitive

2   damages to compensatory damages on insurance bad faith and fraud claims).

3                 **4.**     **Attorneys' Fees.**

4         20.    Finally, attorneys' fees must also be added into the amount in

5   controversy.

6         21.    Plaintiff seeks attorneys' fees under California Civil Procedure Code

7   section 1021.5 and as damages under his insurance bad faith cause of action.

8   Compl. ¶ 77, Prayer ¶ H; *see also id.* ¶ 49, Prayer ¶ F.

9         22.    "The amount in controversy includes ... attorney's fees, if authorized

10  by statute or contract." *Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir.

11  2006); *see also Vitran Express*, 471 Fed. App'x at 649 ("Where an underlying

12  statute authorizes an award of attorneys' fees, either with mandatory or

13  discretionary language, such fees may be included in the amount in controversy.");

14  *Guglielmino,* 506 F.3d at 700 (including attorneys' fees claimed under Cal. Code

15  Civ. P. §1021.5 in the amount in controversy); *Hartford Life*, 890 F. Supp. 2d at

16  1250 (including attorneys' fees sought as damages under insurance bad faith claim

17  in determining amount in controversy).

18        23.    Courts in the Ninth Circuit consider a reasonable and fair estimate of

19  attorneys' fees to be twenty-five percent of the total recovery. *See Powers v.*

20  *Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Lim v. Helio, LLC*, No. CV 11-9183

21  PSG, 2012 WL 359304, at *3 (C.D. Cal. Feb. 2, 2012); *Molnar v. 1-800-*

22  *Flowers.com, Inc.*, No. CV 08-0542 CAS, 2009 WL 481618, at *5 (C.D. Cal. Feb.

23  23, 2009).

24        24.    Plaintiff seeks a total of $611,965,354 in recovery, including return of

25  premium, compensatory damages, and punitive damages.  Accordingly, 25% of that

26  amount, or $152,991,338 is an appropriate estimate for the amount of attorneys'

27  fees plaintiff seeks.

28

**DEFENDANT UNUM LIFE INSURANCE COMPANY OF AMERICA'S NOTICE OF REMOVAL**

5.    **Amount in Controversy Summary.**

25.    As explained above, plaintiff's Complaint seeks $304,251,090 in return of premium, $1,731,587 in compensatory damages, $305,985,677 in punitive damages, and $152,991,338 in attorneys' fees, for a total of $764,956,692.  This amount more than satisfies CAFA's $5,000,000 amount in controversy requirement.

**D.    CAFA's Exceptions Do Not Apply.**

26.    It is plaintiff's burden to establish that any exception to CAFA applies. *See, e.g., Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1021-22 (9th Cir. 2007). Because this is a California only class, CAFA's "local controversy" exception theoretically could apply.[4]  However, plaintiff cannot meet his burden because the Senate Report on CAFA expressly rejects the local controversy exception when, as here, an out of state insurance company is the primary defendant and the in-state defendant is the selling broker.  In addition, the local controversy exception requires that the local defendant be a defendant against whom "significant relief" is sought and whose alleged conduct forms a "significant basis" for the claims

---

[4] The statute states that a district court must decline jurisdiction:
(A)(i) over a class action in which--
    (I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;
    (II) at least 1 defendant is a defendant--
        (aa) *from whom significant relief is sought by members of the plaintiff class;*
        (bb) *whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class;* and
        (cc) *who is a citizen of the State in which the action was originally filed;* and
    (III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and
(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons[.]
28 U.S.C. § 1332(d)(4)(A) (emphasis added).

**DEFENDANT UNUM LIFE INSURANCE COMPANY OF AMERICA'S NOTICE OF REMOVAL**

asserted by the class, meaning that a significant percentage of the class has claims against the local defendant. Plaintiff cannot satisfy this requirement either.

**1.    The Senate Report Expressly Rejects the Local Controversy Exception When the Insurance Company Defendant Is Out of State and the Only In-State Defendant Is the Selling Broker**

27.    The Complaint correctly pleads that Unum is a citizen of Maine. Compl. ¶ 10; Lucas Aff. ¶ 3. The only in-state defendant is the selling broker, Wedner. *Id.* ¶ 11.[5]

28.    The Complaint further confirms that Unum issued insurance policies to each member of the putative class. Compl. ¶¶ 2, 26. In contrast, the Complaint alleges that Wedner is an insurance agency that was involved in brokering only plaintiff's purchase of a Unum policy. *Id.* ¶ 64.

29.    The Senate Report regarding CAFA's local controversy exception expressly speaks of the example of an out of state insurance company defendant with an in-state selling broker. The Senate Report notes that this situation cannot qualify for the local controversy exception:

> [I]n a consumer fraud case alleging that an insurance
> company incorporated and based in another state
> misrepresented its policies, a local agent of the company
> named as a defendant presumably would not fit [the
> "local controversy"] criteria. He or she probably would
> have had contact with only some of the purported class
> members and thus would not be a person from whom
> significant relief would be sought by the plaintiff class
> viewed as a whole. Obviously, from a relief standpoint,

---

[5] The citizenship of the Doe defendants is immaterial to the diversity analysis. *See* 28 U.S.C. § 1441(b)(1).

**DEFENDANT UNUM LIFE INSURANCE COMPANY OF AMERICA'S NOTICE OF REMOVAL**

the real demand of the full class in terms of seeking significant relief would be on the insurance company itself.  Similarly, the agent presumably would not be a person whose alleged conduct forms a significant basis for the claims asserted.  At most, that agent would have been an isolated role player in the alleged scheme implemented by the insurance company.  In this instance, the real target in this action (both in terms of relief and alleged conduct) is the insurance company, and if that company is not local, this criterion would not be met.

S. Rep. No. 109-14, at 40 (2005); *see also Kearns v. Ford Motor Co.*, No. 05-5644 GAF (JTLx), 2005 WL 3967998, at *10-11 (C.D. Cal. Nov. 21, 2005) (relying upon Senate Report No. 109-14 in rejecting application of "local controversy" exception); *Waters v. Advent Prod. Dev., Inc.*, No. 07cv2089 BTM(LSP), 2008 WL 7683231, at *5-6 (S.D. Cal. June 26, 2008) (same).

> **2.     The Local Controversy Exception Also Requires That a Significant Percentage of the Class Has a Claim Against the In-State Defendant.**

30.     Plaintiff also cannot satisfy the "significant basis" and "significant relief" requirements for the local controversy exception.  *See* 28 U.S.C. § 1332(d)(4)(A)(i)(II)(aa)-(cc).  While undefined by the statute, courts have found that those requirements mean that a significant percentage of the putative class has a claim against the in-state defendant, and that the in-state defendant's conduct is a significant part of the alleged conduct of all the defendants.  *See Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, (3d Cir. 2009); *Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1167 (11th Cir. 2006); *Robinson v. Cheetah Transp.*, No. Civ. A. 06-0005, 2006 WL 468820, at *3-4 (W.D. La. Feb. 27, 2006).

DEFENDANT UNUM LIFE INSURANCE COMPANY OF AMERICA'S NOTICE OF REMOVAL

31.     Here, the allegations of plaintiff's Complaint conclusively demonstrate that only the named plaintiff, or at worst an infinitesimal percentage of the class, has a potential claim against Wedner. *See Coleman v. Estes Express Lines, Inc.*, 631 F.3d 1010, 1015 (9th Cir. 2011) (holding that the district court must look only to the pleadings to determine whether significant relief is sought from a defendant and whether a defendant's conduct forms a significant basis for the claims asserted).

32.     The Complaint alleges that Wedner is an insurance agency that was involved only in brokering plaintiff's purchase of a Unum policy.  Compl. ¶ 64. There is no allegation in the Complaint that Wedner was involved in the sale of Unum policies to any other putative class member, let alone a significant percentage of the California class members.  The fact is, Wedner is mentioned in only one of the twenty-nine paragraphs forming the body of plaintiff's Complaint, and that one paragraph merely identifies Wender as a defendant. *Id.* ¶¶ 1-29. Moreover, of the five claims asserted by the class, only one of them is asserted against Wedner whereas all five are asserted against Unum. *Id.* ¶¶ 30-62, 73-77.

33.     Given that the Complaint alleges that the in-state defendant merely sold one policy to the named plaintiff, the local controversy exception cannot apply. *See Kearns*, 2005 WL 3967998, at *10-11; *Waters*, 2008 WL 7683231, at *5-6.[6]

## II.   THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE SATISFIED.

34.     Under 28 U.S.C. §§ 1441(a) and (b) and 28 U.S.C. § 1453(b), any class action over which this Court would have original jurisdiction may be removed to this Court by any defendant.

35.     This Court is the proper venue for this action under 28 U.S.C. § 1441(a), as the State Court Action is pending in the County of Los Angeles,

---

[6] The so-called "home state" exception in 28 U.S.C. § 1332(d)(4)(B) also does not apply because Wedner is not the "primary" defendant for the reasons stated above.

**DEFENDANT UNUM LIFE INSURANCE COMPANY OF AMERICA'S NOTICE OF REMOVAL**

California and the United States District Court for the Central District of California is the United States District Court embracing the place where the State Court Action is pending.

36.     This notice is being filed within thirty days of receipt by Unum of a copy of the summons and Complaint, pursuant to 28 U.S.C. §§ 1446(b) and 1453(b).

37.     Pursuant to 28 U.S.C. § 1446(a), a copy of the summons and complaint served upon Unum are attached (*see* Anderson Decl., Ex. A), and these are the only process, pleadings, and orders served upon Unum to date.

38.     Pursuant to 28 U.S.C. § 1446(d), Unum will promptly file a removal notice with the Clerk of the Superior Court of the State of California for the County of Los Angeles and will serve written notice of same upon counsel of record for plaintiff.

39.     The consent of the other defendant in this action is not required.  28 U.S.C. § 1453(b); *United Steel v. Shell Oil Co.*, 549 F.3d 1204, 1208 (9th Cir. 2008).

40.     By filing this notice of removal, Unum does not waive, either expressly or implicitly, its rights to assert any defense which it could have asserted in the Superior Court of the State of California for the County of Los Angeles.

WHEREFORE, defendant Unum Life Insurance Company of America respectfully requests that the Court assume jurisdiction over this action.

DATED:  June 21, 2013                    Respectfully submitted,

                                         SIDLEY AUSTIN LLP

                                         By:  *John E. Anderson*
                                              Joshua E. Anderson

                                         Attorneys for Defendant Unum Life
                                         Insurance Company of America

-11-

DEFENDANT UNUM LIFE INSURANCE COMPANY OF AMERICA'S NOTICE OF REMOVAL

# Declaration of

# Joshua E. Anderson

## DECLARATION OF JOSHUA E. ANDERSON

I, JOSHUA E. ANDERSON, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and before the United States District Court for the Central District of California.  I am a partner in the law firm of Sidley Austin LLP and counsel of record for Defendant Unum Life Insurance Company of America in this action.  The matters set forth below are within my personal knowledge, and if called upon as a witness I could and would testify competently as follows:

2.      Attached as Exhibit A is a true and correct copy of the Summons and Complaint in the State Court Action, styled as *Don v. Unum Life Insurance Company of America, et al.*, Case No. BC509235, that was filed in the Superior Court of the State of California, County of Los Angeles.

3.      Attached as Exhibit B is a true and correct copy of the Affidavit of Ronald J. Lucas, Vice President and actuary at Unum Life Insurance Company of America.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on the 21st day of June, 2013, in Los Angeles, California.

Joshua E. Anderson
Joshua E. Anderson

-12-

# Exhibit A



**C O R P O R A T I O N   S E R V I C E   C O M P A N Y·**

# Notice of Service of Process

**null / ALL**
**Transmittal Number: 11207569**
**Date Processed: 05/24/2013**

| | |
|---|---|
| Primary Contact: | Jen Majic<br>UNUM Group<br>1 Fountain Square<br>Chattanooga, TN 37402 |
| Copy of transmittal only provided to: | Janna Mullin-Erickson |

| | |
|---|---|
| Entity: | Unum Life Insurance Company Of America<br>Entity ID Number  2979591 |
| Entity Served: | Unum Life Insurance Company of America |
| Title of Action: | Ruben Don vs. Unum Life Insurance Company of America |
| Document(s) Type: | Summons/Complaint |
| Nature of Action: | Class Action |
| Court/Agency: | Los Angeles County Superior Court, California |
| Case/Reference No: | BC509235 |
| Jurisdiction Served: | California |
| Date Served on CSC: | 05/23/2013 |
| Answer or Appearance Due: | 30 Days |
| Originally Served On: | CSC |
| How Served: | Personal Service |
| Sender Information: | Allan A. Shenoi<br>626-792-2300 |

Notes:     Page 4 of Exhibit A was not served.

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**
*CSC is SAS70 Type II certified for its Litigation Management System.*
2711 Centerville Road   Wilmington, DE 19808   (888) 690-2882   |   sop@cscinfo.com

**Exhibit A**

**13**

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAY 17 2013

John A. Clarke, Executive Officer/Clerk

BY _Cristina Grijalva_, Deputy
Cristina Grijalva

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

UNUM LIFE INSURANCE COMPANY OF AMERICA; "additional parties attachment form is attached"

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

RUBEN DON, Individually, and on behalf of those persons similarly situated

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):*

| | CASE NUMBER *(Número de Caso):* |
|---|---|
| Los Angeles Superior Court, Stanley Mosk Courthouse, 111 N. Hill St. Los Angeles, California 90012 | BC 509235 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Allan A. Shenoi, SHENOI KOES LLP, 175 S. Lake Ave., Suite 202, Pasadena, CA 91101 tel. 626-792-2300

DATE: May 17, 20___ John A. Clarke, Clerk, by CRISTINA GRIJALVA, Deputy
*(Fecha)* *(Secretario)* *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]
MAY 17 2013

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☑ on behalf of *(specify):* UNUM LIFE INSURANCE COMPANY OF AMERICA

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☑ other *(specify):* CCP 415.95
4. ☑ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 (Rev. July 1, 2009)

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

**Exhibit A**
**14**

SUM-200(A)

| SHORT TITLE | CASE NUMBER |
|---|---|
| Don v. UNUM Life Insurance Company of America, et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☑ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

WEDNER INSURANCE GROUP, INC. dba THE MORTON WEDNER INSURANCE AGENCY, and DOES 1-30

Page 2 of 2

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

**Exhibit A**
**15**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**
**NOTICE OF CASE ASSIGNMENT – CLASS ACTION CASES**

Case Number             **BC 509235**

THIS FORM IS TO BE SERVED WITH THE SUMMONS AND COMPLAINT
Your case is assigned for all purposes to the judicial officer indicated below (Local Rule 3.3(c)).

| ASSIGNED JUDGE | DEPT | ROOM |
|---|---|---|
| Judge Elihu M. Berle | 323 | 1707 |
| Judge Lee Smalley Edmon | 322 | 1702 |
| Judge John Shepard Wiley, Jr. | 311 | 1408 |
| Judge Kenneth Freeman | 310 | 1412 |
| Judge Jane Johnson | 308 | 1415 |
| Judge Anthony J. Mohr | 309 | 1409 |
| Judge William F. Highberger | 307 | 1402 |

## Instructions for handling Class Action Civil Cases

The following critical provisions of the Chapter Three Rules, as applicable in the Central District, are summarized for your assistance.

**APPLICATION**
The Chapter Three Rules were effective January 1, 1994. They apply to all general civil cases.

**PRIORITY OVER OTHER RULES**
The Chapter Three Rules shall have priority over all other Local Rules to the extent the others are inconsistent.

**CHALLENGE TO ASSIGNED JUDGE**
A challenge under Code of Civil Procedure section 170.6 must be made 15 days after notice of assignment for all purposes to a judge, or if a party has not yet appeared, within 15 days of the first appearance.

**TIME STANDARDS**
Cases assigned to the Individual Calendaring Court will be subject to processing under the following time standards:

**COMPLAINTS:** All complaints shall be served within 60 days of filing and proof of service shall be filed within 90 days of filing.

**CROSS-COMPLAINTS:** Without leave of court first being obtained, no cross complaint may be filed by any party after their answer is filed. Cross complaints shall be served within 30 days of the filing date and proof of service filed within 60 days of the filing date.

A Status Conference will be scheduled by the assigned Independent Calendar Judge no later than 270 days after the filing of the complaint. Counsel must be fully prepared to discuss the following issues: alternative dispute resolution, bifurcation, settlement, trial date, and expert witnesses.

**FINAL STATUS CONFERENCE**
The Court will require the parties at a status conference not more than 10 days before the trial to have timely filed and served all motions in limine, bifurcation motions, statements of major evidentiary issues, dispositive motions, requested jury instructions, and special jury instructions and special jury verdicts. These matters may be heard and resolved at this conference. At least 5 days before this conference, counsel must also have exchanged lists of exhibits and witnesses and have submitted to the court a brief statement of the case to be read to the jury panel as required by Chapter Eight of the Los Angeles Superior Court Rules.

**SANCTIONS**
The court will impose appropriate sanctions for the failure or refusal to comply with Chapter Three Rules, orders made by the Court, and time standards or deadlines established by the Court or by the Chapter Three Rules. Such sanctions may be on a party or if appropriate on counsel for the party.

This is not a complete delineation of the Chapter Three Rules, and adherence only to the above provisions is therefore not a guarantee against the imposition of sanctions under the Trial Court Delay Reduction. Careful reading and compliance with the actual Chapter Rules is absolutely imperative.

Given to Plaintiff/Cross-Complainant/Attorney of Record on _____.

JOHN A. CLARKE, Executive Officer/Clerk

By _____ , Deputy Clerk

**Exhibit A**
**16**

# VOLUNTARY EFFICIENT LITIGATION STIPULATIONS



**Superior Court of California
County of Los Angeles**



**Los Angeles County
Bar Association
Litigation Section**

**Los Angeles County
Bar Association Labor and
Employment Law Section**



**Consumer Attorneys
Association of Los Angeles**



**Southern California
Defense Counsel**



**Association of
Business Trial Lawyers**

**California Employment
Lawyers Association**

The Early Organizational Meeting Stipulation, Discovery Resolution Stipulation, and Motions in Limine Stipulation are voluntary stipulations entered into by the parties. The parties may enter into one, two, or all three of the stipulations; however, they may not alter the stipulations as written, because the Court wants to ensure uniformity of application. These stipulations are meant to encourage cooperation between the parties and to assist in resolving issues in a manner that promotes economic case resolution and judicial efficiency.

*The following organizations endorse the goal of promoting efficiency in litigation and ask that counsel consider using these stipulations as a voluntary way to promote communications and procedures among counsel and with the court to fairly resolve issues in their cases.*

◆**Los Angeles County Bar Association Litigation Section**◆

◆ **Los Angeles County Bar Association
Labor and Employment Law Section**◆

◆**Consumer Attorneys Association of Los Angeles**◆

◆**Southern California Defense Counsel**◆

◆**Association of Business Trial Lawyers**◆

◆**California Employment Lawyers Association**◆

**Exhibit A
17**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

FAX NO. (Optional):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – EARLY ORGANIZATIONAL MEETING | CASE NUMBER: |
|---|---|

This stipulation is intended to encourage cooperation among the parties at an early stage in the litigation and to assist the parties in efficient case resolution.

The parties agree that:

1. The parties commit to conduct an initial conference (in-person or via teleconference or via videoconference) within 15 days from the date this stipulation is signed, *to discuss and consider whether there can be agreement on the following:*

    a. Are motions to challenge the pleadings necessary? If the issue can be resolved by amendment as of right, or if the Court would allow leave to amend, could an amended complaint resolve most or all of the issues a demurrer might otherwise raise? If so, the parties agree to work through pleading issues so that a demurrer need only raise issues they cannot resolve. Is the issue that the defendant seeks to raise amenable to resolution on demurrer, or would some other type of motion be preferable?  Could a voluntary targeted exchange of documents or information by any party cure an uncertainty in the pleadings?

    b. Initial mutual exchanges of documents at the "core" of the litigation.  (For example, in an employment case, the employment records, personnel file and documents relating to the conduct in question could be considered "core."  In a personal injury case, an incident or police report, medical records, and repair or maintenance records could be considered "core.");

    c. Exchange of names and contact information of witnesses;

    d. Any insurance agreement that may be available to satisfy part or all of a judgment, or to indemnify or reimburse for payments made to satisfy a judgment;

    e. Exchange of any other information that might be helpful to facilitate understanding, handling, or resolution of the case in a manner that preserves objections or privileges by agreement;

    f. Controlling issues of law that, if resolved early, will promote efficiency and economy in other phases of the case. Also, when and how such issues can be presented to the Court;

    g. Whether or when the case should be scheduled with a settlement officer, what discovery or court ruling on legal issues is reasonably required to make settlement discussions meaningful, and whether the parties wish to use a sitting judge or a private mediator or other options as

LACIV 229 (new)
LASC Approved 04/11

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

**Exhibit A**

18

| SHORT TITLE: | CASE NUMBER |
|---|---|
|  |  |

discussed in the "Alternative Dispute Resolution (ADR) Information Package" served with the complaint;

h. Computation of damages, including documents not privileged or protected from disclosure, on which such computation is based;

i. Whether the case is suitable for the Expedited Jury Trial procedures (see information at *www.lasuperiorcourt.org* under "*Civil*" and then under "*General Information*").

2. The time for a defending party to respond to a complaint or cross-complaint will be extended to _____ for the complaint, and _____ for the cross-complaint, which is comprised of the 30 days to respond under Government Code § 68616(b), and the 30 days permitted by Code of Civil Procedure section 1054(a), good cause having been found by the Civil Supervising Judge due to the case management benefits provided by this Stipulation.

3. The parties will prepare a joint report titled "Joint Status Report Pursuant to Initial Conference and Early Organizational Meeting Stipulation, and if desired, a proposed order summarizing results of their meet and confer and advising the Court of any way it may assist the parties' efficient conduct or resolution of the case. The parties shall attach the Joint Status Report to the Case Management Conference statement, and file the documents when the CMC statement is due.

4. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

The following parties stipulate:

Date:

Date: _____ (TYPE OR PRINT NAME)      ► _____ (ATTORNEY FOR PLAINTIFF)

Date: _____ (TYPE OR PRINT NAME)      ► _____ (ATTORNEY FOR DEFENDANT)

Date: _____ (TYPE OR PRINT NAME)      ► _____ (ATTORNEY FOR DEFENDANT)

Date: _____ (TYPE OR PRINT NAME)      ► _____ (ATTORNEY FOR DEFENDANT)

Date: _____ (TYPE OR PRINT NAME)      ► _____ (ATTORNEY FOR _____ )

Date: _____ (TYPE OR PRINT NAME)      ► _____ (ATTORNEY FOR _____ )

_____ (TYPE OR PRINT NAME)      ► _____ (ATTORNEY FOR _____ )

LACIV 229 (new)
LASC Approved 04/11

**STIPULATION – EARLY ORGANIZATIONAL MEETING**

Page 2 of 2

Exhibit A
19

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER: | Reserved for Clerk's File Stamp |
|---|---|---|
| TELEPHONE NO.:<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): FAX NO. (Optional): | | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES**

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION – DISCOVERY RESOLUTION | CASE NUMBER: |
|---|---|

This stipulation is intended to provide a fast and informal resolution of discovery issues through limited paperwork and an informal conference with the Court to aid in the resolution of the issues.

**The parties agree that:**

1. Prior to the discovery cut-off in this action, no discovery motion shall be filed or heard unless the moving party first makes a written request for an Informal Discovery Conference pursuant to the terms of this stipulation.

2. At the Informal Discovery Conference the Court will consider the dispute presented by parties and determine whether it can be resolved informally. Nothing set forth herein will preclude a party from making a record at the conclusion of an Informal Discovery Conference, either orally or in writing.

3. Following a reasonable and good faith attempt at an informal resolution of each issue to be presented, a party may request an Informal Discovery Conference pursuant to the following procedures:

   a. The party requesting the Informal Discovery Conference will:

      i. File a Request for Informal Discovery Conference with the clerk's office on the approved form (copy attached) and deliver a courtesy, conformed copy to the assigned department;

      ii. Include a brief summary of the dispute and specify the relief requested; and

      iii. Serve the opposing party pursuant to any authorized or agreed method of service that ensures that the opposing party receives the Request for Informal Discovery Conference no later than the next court day following the filing.

   b. Any Answer to a Request for Informal Discovery Conference must:

      i. Also be filed on the approved form (copy attached);

      ii. Include a brief summary of why the requested relief should be denied;

LACIV 036 (new)
LASC Approved 04/11

**STIPULATION – DISCOVERY RESOLUTION**

Page 1 of 3

Exhibit A
20

| SHORT TITLE: | | CASE NUMBER: |
|---|---|---|
| | | |

iii. Be filed within two (2) court days of receipt of the Request; and

iv. Be served on the opposing party pursuant to any authorized or agreed upon method of service that ensures that the opposing party receives the Answer no later than the next court day following the filing.

c. No other pleadings, including but not limited to exhibits, declarations, or attachments, will be accepted.

d. If the Court has not granted or denied the Request for Informal Discovery Conference within ten (10) days following the filing of the Request, then it shall be deemed to have been denied. If the Court acts on the Request, the parties will be notified whether the Request for Informal Discovery Conference has been granted or denied and, if granted, the date and time of the Informal Discovery Conference, which must be within twenty (20) days of the filing of the Request for Informal Discovery Conference.

e. If the conference is not held within twenty (20) days of the filing of the Request for Informal Discovery Conference, unless extended by agreement of the parties and the Court, then the Request for the Informal Discovery Conference shall be deemed to have been denied at that time.

4. If (a) the Court has denied a conference or (b) one of the time deadlines above has expired without the Court having acted or (c) the Informal Discovery Conference is concluded without resolving the dispute, then a party may file a discovery motion to address unresolved issues.

5. The parties hereby further agree that the time for making a motion to compel or other discovery motion is tolled from the date of filing of the Request for Informal Discovery Conference until (a) the request is denied or deemed denied or (b) twenty (20) days after the filing of the Request for Informal Discovery Conference, whichever is earlier, unless extended by Order of the Court.

It is the understanding and intent of the parties that this stipulation shall, for each discovery dispute to which it applies, constitute a writing memorializing a "specific later date to which the propounding [or demanding or requesting] party and the responding party have agreed in writing," within the meaning of Code Civil Procedure sections 2030.300(c), 2031.320(c), and 2033.290(c).

6. Nothing herein will preclude any party from applying *ex parte* for appropriate relief, including an order shortening time for a motion to be heard concerning discovery.

7. Any party may terminate this stipulation by giving twenty-one (21) days notice of intent to terminate the stipulation.

8. References to "days" mean calendar days, unless otherwise noted. If the date for performing any act pursuant to this stipulation falls on a Saturday, Sunday or Court holiday, then the time for performing that act shall be extended to the next Court day.

**STIPULATION – DISCOVERY RESOLUTION**

**Exhibit A**

SHORT TITLE:

CASE NUMBER:

**The following parties stipulate:**

Date:

_____    ➤    _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR PLAINTIFF)

Date:

_____    ➤    _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:

_____    ➤    _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:

_____    ➤    _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR DEFENDANT)

Date:

_____    ➤    _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR _____ )

Date:

_____    ➤    _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR _____ )

Date:

_____    ➤    _____
(TYPE OR PRINT NAME)                        (ATTORNEY FOR _____ )

Exhibit A
22

NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY.

STATE BAR NUMBER

Reserved for Clerk's File Stamp

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):
ATTORNEY FOR (Name):

FAX NO. (Optional):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

## INFORMAL DISCOVERY CONFERENCE
(pursuant to the Discovery Resolution Stipulation of the parties)

CASE NUMBER

1. This document relates to:
   ☐  Request for Informal Discovery Conference
   ☐  Answer to Request for Informal Discovery Conference

2. Deadline for Court to decide on Request: _____ (insert date 10 calendar days following filing of the Request).

3. Deadline for Court to hold Informal Discovery Conference: _____ (insert date 20 calendar days following filing of the Request).

4. For a Request for Informal Discovery Conference, **briefly** describe the nature of the discovery dispute, including the facts and legal arguments at issue. For an Answer to Request for Informal Discovery Conference, **briefly** describe why the Court should deny the requested discovery, including the facts and legal arguments at issue.

**INFORMAL DISCOVERY CONFERENCE**
(pursuant to the Discovery Resolution Stipulation of the parties)

**Exhibit A**
**23**

| NAME AND ADDRESS OF ATTORNEY OR PARTY WITHOUT ATTORNEY: | STATE BAR NUMBER | Reserved for Clerk's File Stamp |
|---|---|---|

TELEPHONE NO.:
E-MAIL ADDRESS (Optional):                    FAX NO. (Optional):
ATTORNEY FOR (Name):

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
COURTHOUSE ADDRESS:

PLAINTIFF:

DEFENDANT:

| STIPULATION AND ORDER – MOTIONS IN LIMINE | CASE NUMBER: |
|---|---|

**This stipulation is intended to provide fast and informal resolution of evidentiary issues through diligent efforts to define and discuss such issues and limit paperwork.**

**The parties agree that:**

1. At least _____ days before the final status conference, each party will provide all other parties with a list containing a one paragraph explanation of each proposed motion in limine. Each one paragraph explanation must identify the substance of a single proposed motion in limine and the grounds for the proposed motion.

2. The parties thereafter will meet and confer, either in person or via teleconference or videoconference, concerning all proposed motions in limine. In that meet and confer, the parties will determine:

   a. Whether the parties can stipulate to any of the proposed motions. If the parties so stipulate, they may file a stipulation and proposed order with the Court.

   b. Whether any of the proposed motions can be briefed and submitted by means of a short joint statement of issues. For each motion which can be addressed by a short joint statement of issues, a short joint statement of issues must be filed with the Court 10 days prior to the final status conference. Each side's portion of the short joint statement of issues may not exceed three pages. The parties will meet and confer to agree on a date and manner for exchanging the parties' respective portions of the short joint statement of issues and the process for filing the short joint statement of issues.

3. All proposed motions in limine that are not either the subject of a stipulation or briefed via a short joint statement of issues will be briefed and filed in accordance with the California Rules of Court and the Los Angeles Superior Court Rules.

Exhibit A
24

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| | |

**The following parties stipulate:**

Date:

Date: _____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR PLAINTIFF)

Date: _____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR DEFENDANT)

Date: _____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR DEFENDANT)

Date: _____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR DEFENDANT)

Date: _____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR _____ )

Date: _____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR _____ )

_____
(TYPE OR PRINT NAME)

> _____
(ATTORNEY FOR _____ )

**THE COURT SO ORDERS.**

Date: _____

_____
JUDICIAL OFFICER

Exhibit A
25

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | |
|---|---|
| ⸺ ALLAN A. SHENOI, ESQ. [CSB # 122566]<br>SHENOI KOES LLP<br>175 S. LAKE AVE. SUITE 202<br>PASADENA, CA 91101 | CONFORMED COPY<br>ORIGINAL FILED<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES |

TELEPHONE NO.: 626-792-2300    FAX NO.: 626-792-2311

MAY 17 2013

ATTORNEY FOR *(Name):* Ruben Don

John A. Clarke, Executive Officer/Clerk

BY *Christina Grijalva* , Deputy

SUPERIOR COURT OF CALIFORNIA, COUNTY OF
STREET ADDRESS: 111 N. HILL ST.
MAILING ADDRESS:
CITY AND ZIP CODE: LOS ANGELES, CA 90012
BRANCH NAME: STANLEY MOSK COURTHOUSE

CASE NAME:
RUBEN DON v. UNUM Life Insurance Company of America

| CIVIL CASE COVER SHEET | | Complex Case Designation | CASE NUMBER |
|---|---|---|---|
| ✓ Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | ☐ Limited<br>(Amount<br>demanded is<br>$25,000 or less) | ☐ Counter    ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | BC 509235<br>JUDGE:<br>DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☐ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ✓ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ✓ is   ☐ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   - a. ☐ Large number of separately represented parties
   - b. ✓ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   - c. ✓ Substantial amount of documentary evidence
   - d. ✓ Large number of witnesses
   - e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   - f. ✓ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. ✓ monetary   b. ✓ nonmonetary; declaratory or injunctive relief   c. ✓ punitive
4. Number of causes of action *(specify):* SIX
5. This case ✓ is   ☐ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: May 17 , 2013

*(TYPE OR PRINT NAME)*                    ▸ *(signature)*  *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |
|---|---|---|

**Exhibit A**

**26**

CM-010

# INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you must complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check one box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the primary cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

## CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) (*if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto*)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
Asbestos (04)
Asbestos Property Damage
Asbestos Personal Injury/Wrongful Death
Product Liability (*not asbestos or toxic/environmental*) (24)
Medical Malpractice (45)
Medical Malpractice–Physicians & Surgeons
Other Professional Health Care Malpractice
Other PI/PD/WD (23)
Premises Liability (e.g., slip and fall)
Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
Intentional Infliction of Emotional Distress
Negligent Infliction of Emotional Distress
Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) (*not civil harassment*) (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
Legal Malpractice
Other Professional Malpractice (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
Breach of Rental/Lease Contract (*not unlawful detainer or wrongful eviction*)
Contract/Warranty Breach–Seller Plaintiff (*not fraud or negligence*)
Negligent Breach of Contract/Warranty
Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
Collection Case–Seller Plaintiff
Other Promissory Note/Collections Case
Insurance Coverage (*not provisionally complex*) (18)
Auto Subrogation
Other Coverage
Other Contract (37)
Contractual Fraud
Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
Writ of Possession of Real Property
Mortgage Foreclosure
Quiet Title
Other Real Property (*not eminent domain, landlord/tenant, or foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
Writ–Administrative Mandamus
Writ–Mandamus on Limited Court Case Matter
Writ–Other Limited Court Case Review
Other Judicial Review (39)
Review of Health Officer Order
Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims (*arising from provisionally complex case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
Abstract of Judgment (Out of County)
Confession of Judgment (*non-domestic relations*)
Sister State Judgment
Administrative Agency Award (*not unpaid taxes*)
Petition/Certification of Entry of Judgment on Unpaid Taxes
Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified above*) (42)
Declaratory Relief Only
Injunctive Relief Only (*non-harassment*)
Mechanics Lien
Other Commercial Complaint Case (*non-tort/non-complex*)
Other Civil Complaint (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition (*not specified above*) (43)
Civil Harassment
Workplace Violence
Elder/Dependent Adult Abuse
Election Contest
Petition for Name Change
Petition for Relief From Late Claim
Other Civil Petition

**Exhibit A**

**27**

| SHORT TITLE: RUEBEN DON V. UNUM Life Insurance Company of America | CASE NUMBER | BC509235 |
| --- | --- | --- |

## CIVIL CASE COVER SHEET ADDENDUM AND
## STATEMENT OF LOCATION
## (CERTIFICATE OF GROUNDS FOR ASSIGNMENT TO COURTHOUSE LOCATION)

**This form is required pursuant to Local Rule 2.0 in all new civil case filings in the Los Angeles Superior Court.**

Item I. Check the types of hearing and fill in the estimated length of hearing expected for this case:

JURY TRIAL? ☐ YES   CLASS ACTION? ☑ YES   LIMITED CASE? ☐ YES   TIME ESTIMATED FOR TRIAL 10   ☐ HOURS/ ☑ DAYS

Item II. Indicate the correct district and courthouse location (4 steps – If you checked "Limited Case", skip to Item III, Pg. 4):

**Step 1:** After first completing the Civil Case Cover Sheet form, find the main Civil Case Cover Sheet heading for your case in the left margin below, and, to the right in Column **A**, the Civil Case Cover Sheet case type you selected.

**Step 2:** Check **one** Superior Court type of action in Column **B** below which best describes the nature of this case.

**Step 3:** In Column **C**, circle the reason for the court location choice that applies to the type of action you have checked. For any exception to the court location, see Local Rule 2.0.

> ### Applicable Reasons for Choosing Courthouse Location (see Column C below)

1. Class actions must be filed in the Stanley Mosk Courthouse, central district.
2. May be filed in central (other county, or no bodily injury/property damage).
3. Location where cause of action arose.
4. Location where bodily injury, death or damage occurred.
5. Location where performance required or defendant resides.
6. Location of property or permanently garaged vehicle.
7. Location where petitioner resides.
8. Location wherein defendant/respondent functions wholly.
9. Location where one or more of the parties reside.
10. Location of Labor Commissioner Office

**Step 4:** Fill in the information requested on page 4 in Item III; complete Item IV.  Sign the declaration.

| | A<br>Civil Case Cover Sheet<br>Category No. | B<br>Type of Action<br>(Check only one) | C<br>Applicable Reasons -<br>See Step 3 Above |
| --- | --- | --- | --- |
| **Auto Tort** | Auto (22) | ☐ A7100  Motor Vehicle - Personal Injury/Property Damage/Wrongful Death | 1., 2., 4. |
| | Uninsured Motorist (46) | ☐ A7110  Personal Injury/Property Damage/Wrongful Death – Uninsured Motorist | 1., 2., 4. |
| **Other Personal Injury/ Property Damage/ Wrongful Death Tort** | Asbestos (04) | ☐ A6070  Asbestos Property Damage | 2. |
| | | ☐ A7221  Asbestos - Personal Injury/Wrongful Death | 2. |
| | Product Liability (24) | ☐ A7260  Product Liability (not asbestos or toxic/environmental) | 1., 2., 3., 4., 8. |
| | Medical Malpractice (45) | ☐ A7210  Medical Malpractice - Physicians & Surgeons | 1., 4. |
| | | ☐ A7240  Other Professional Health Care Malpractice | 1., 4. |
| | Other<br>Personal Injury<br>Property Damage<br>Wrongful Death<br>(23) | ☐ A7250  Premises Liability (e.g., slip and fall) | 1., 4. |
| | | ☐ A7230  Intentional Bodily Injury/Property Damage/Wrongful Death (e.g., assault, vandalism, etc.) | 1., 4. |
| | | ☐ A7270  Intentional Infliction of Emotional Distress | 1., 3. |
| | | ☐ A7220  Other Personal Injury/Property Damage/Wrongful Death | 1., 4. |

**CIVIL CASE COVER SHEET ADDENDUM**
**AND STATEMENT OF LOCATION**

**Exhibit A**
**28**

| SHORT TITLE: RUEBEN DON V. UNUM Life Insurance Company of America | CASE NUMBER | |
|---|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Non-Personal Injury/Property Damage/ Wrongful Death Tort** | Business Tort (07) | ☐ A6029  Other Commercial/Business Tort (not fraud/breach of contract) | 1., 3. |
| | Civil Rights (08) | ☐ A6005  Civil Rights/Discrimination | 1., 2., 3. |
| | Defamation (13) | ☐ A6010  Defamation (slander/libel) | 1., 2., 3. |
| | Fraud (16) | ☐ A6013  Fraud (no contract) | 1., 2., 3. |
| | Professional Negligence (25) | ☐ A6017  Legal Malpractice | 1., 2., 3. |
| | | ☐ A6050  Other Professional Malpractice (not medical or legal) | 1., 2., 3. |
| | Other (35) | ☐ A6025  Other Non-Personal Injury/Property Damage tort | 2., 3. |
| **Employment** | Wrongful Termination (36) | ☐ A6037  Wrongful Termination | 1., 2., 3. |
| | Other Employment (15) | ☐ A6024  Other Employment Complaint Case | 1., 2., 3. |
| | | ☐ A6109  Labor Commissioner Appeals | 10. |
| **Contract** | Breach of Contract/ Warranty (06) (not insurance) | ☐ A6004  Breach of Rental/Lease Contract (not unlawful detainer or wrongful eviction) | 2., 5. |
| | | ☐ A6008  Contract/Warranty Breach -Seller Plaintiff (no fraud/negligence) | 2., 5. |
| | | ☐ A6019  Negligent Breach of Contract/Warranty (no fraud) | 1., 2., 5. |
| | | ☐ A6028  Other Breach of Contract/Warranty (not fraud or negligence) | 1., 2., 5. |
| | Collections (09) | ☐ A6002  Collections Case-Seller Plaintiff | 2., 5., 6. |
| | | ☐ A6012  Other Promissory Note/Collections Case | 2., 5. |
| | Insurance Coverage (18) | ☐ A6015  Insurance Coverage (not complex) | 1., 2., 5., 8. |
| | Other Contract (37) | ☐ A6009  Contractual Fraud | 1., 2., 3., 5. |
| | | ☐ A6031  Tortious Interference | 1., 2., 3., 5. |
| | | ☐ A6027  Other Contract Dispute(not breach/insurance/fraud/negligence) | 1., 2., 3., 8. |
| **Real Property** | Eminent Domain/Inverse Condemnation (14) | ☐ A7300  Eminent Domain/Condemnation        Number of parcels_____ | 2. |
| | Wrongful Eviction (33) | ☐ A6023  Wrongful Eviction Case | 2., 6. |
| | Other Real Property (26) | ☐ A6018  Mortgage Foreclosure | 2., 6. |
| | | ☐ A6032  Quiet Title | 2., 6. |
| | | ☐ A6060  Other Real Property (not eminent domain, landlord/tenant, foreclosure) | 2., 6. |
| **Unlawful Detainer** | Unlawful Detainer-Commercial (31) | ☐ A6021  Unlawful Detainer-Commercial (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Residential (32) | ☐ A6020  Unlawful Detainer-Residential (not drugs or wrongful eviction) | 2., 6. |
| | Unlawful Detainer-Post-Foreclosure (34) | ☐ A6020F Unlawful Detainer-Post-Foreclosure | 2., 6. |
| | Unlawful Detainer-Drugs (38) | ☐ A6022  Unlawful Detainer-Drugs | 2., 6. |

LACIV 109 (Rev. 03/11)
LASC Approved 03-04

**CIVIL CASE COVER SHEET ADDENDUM AND STATEMENT OF LOCATION**

Local Rule 2.0
Page 2 of 4

**Exhibit A**
29

| SHORT TITLE: RUEBEN DON V. UNUM Life Insurance Company of America | CASE NUMBER |
|---|---|

| | A Civil Case Cover Sheet Category No. | B Type of Action (Check only one) | C Applicable Reasons - See Step 3 Above |
|---|---|---|---|
| **Judicial Review** | Asset Forfeiture (05) | ☐ A6108  Asset Forfeiture Case | 2..6. |
| | Petition re Arbitration (11) | ☐ A6115  Petition to Compel/Confirm/Vacate Arbitration | 2..5. |
| | Writ of Mandate (02) | ☐ A6151  Writ - Administrative Mandamus | 2..8. |
| | | ☐ A6152  Writ - Mandamus on Limited Court Case Matter | 2. |
| | | ☐ A6153  Writ - Other Limited Court Case Review | 2. |
| | Other Judicial Review (39) | ☐ A6150  Other Writ /Judicial Review | 2..8. |
| **Provisionally Complex Litigation** | Antitrust/Trade Regulation (03) | ☐ A6003  Antitrust/Trade Regulation | 1.,2.,8. |
| | Construction Defect (10) | ☐ A6007  Construction Defect | 1.,2.,3. |
| | Claims Involving Mass Tort (40) | ☐ A6006  Claims Involving Mass Tort | 1.,2.,8. |
| | Securities Litigation (28) | ☐ A6035  Securities Litigation Case | 1.,2.,8. |
| | Toxic Tort Environmental (30) | ☐ A6036  Toxic Tort/Environmental | 1.,2.,3.,8. |
| | Insurance Coverage Claims from Complex Case (41) | ☑ A6014  Insurance Coverage/Subrogation (complex case only) | ①.2.,5.,8. |
| **Enforcement of Judgment** | Enforcement of Judgment (20) | ☐ A6141  Sister State Judgment | 2.,9. |
| | | ☐ A6160  Abstract of Judgment | 2..6. |
| | | ☐ A6107  Confession of Judgment (non-domestic relations) | 2.,9. |
| | | ☐ A6140  Administrative Agency Award (not unpaid taxes) | 2..8. |
| | | ☐ A6114  Petition/Certificate for Entry of Judgment on Unpaid Tax | 2..8. |
| | | ☐ A6112  Other Enforcement of Judgment Case | 2.,8.,9. |
| **Miscellaneous Civil Complaints** | RICO (27) | ☐ A6033  Racketeering (RICO) Case | 1.,2.,8. |
| | Other Complaints (Not Specified Above) (42) | ☐ A6030  Declaratory Relief Only | 1.,2.,8. |
| | | ☐ A6040  Injunctive Relief Only (not domestic/harassment) | 2.,8. |
| | | ☐ A6011  Other Commercial Complaint Case (non-tort/non-complex) | 1.,2.,8. |
| | | ☐ A6000  Other Civil Complaint (non-tort/non-complex) | 1.,2.,8. |
| **Miscellaneous Civil Petitions** | Partnership Corporation Governance (21) | ☐ A6113  Partnership and Corporate Governance Case | 2.,8. |
| | Other Petitions (Not Specified Above) (43) | ☐ A6121  Civil Harassment | 2.,3.,9. |
| | | ☐ A6123  Workplace Harassment | 2.,3.,9. |
| | | ☐ A6124  Elder/Dependent Adult Abuse Case | 2.,3.,9. |
| | | ☐ A6190  Election Contest | 2. |
| | | ☐ A6110  Petition for Change of Name | 2.,7. |
| | | ☐ A6170  Petition for Relief from Late Claim Law | 2.,3.,4.,8. |
| | | ☐ A6100  Other Civil Petition | 2.,9. |

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

**Exhibit A**

30

| SHORT TITLE: | | CASE NUMBER |
|---|---|---|
| | RUEBEN DON V. UNUM Life Insurance Company of America | |

**Item III.** Statement of Location: Enter the address of the accident, party's residence or place of business, performance, or other circumstance indicated in Item II., **Step 3 on Page 1**, as the proper reason for filing in the court location you selected.

| REASON: Check the appropriate boxes for the numbers shown under Column C for the type of action that you have selected for this case.<br><br>☑1. ☐2. ☐3. ☐4. ☐5. ☐6. ☐7. ☐8. ☐9. ☐10. | ADDRESS:<br>STANLEY MOSK COURTHOUSE<br>CENTRAL DISTRICT<br>111 N HILL ST<br>LOS ANGELES, CA 90012 |
|---|---|
| CITY | STATE | ZIP CODE |

**Item IV.** *Declaration of Assignment:* I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that the above-entitled matter is properly filed for assignment to the STANLEY MOSK courthouse in the CENTRAL District of the Superior Court of California, County of Los Angeles [Code Civ. Proc., § 392 et seq., and Local Rule 2.0, subds (b), (c) and (d)].

Dated: May 17, 2013

_____
(SIGNATURE OF ATTORNEY/FILING PARTY)

**PLEASE HAVE THE FOLLOWING ITEMS COMPLETED AND READY TO BE FILED IN ORDER TO PROPERLY COMMENCE YOUR NEW COURT CASE:**

1. Original Complaint or Petition.

2. If filing a Complaint, a completed Summons form for issuance by the Clerk.

3. Civil Case Cover Sheet, Judicial Council form CM-010.

4. Civil Case Cover Sheet Addendum and Statement of Location form, LACIV 109, LASC Approved 03-04 (Rev. 03/11).

5. Payment in full of the filing fee, unless fees have been waived.

6. A signed order appointing the Guardian ad Litem, Judicial Council form CIV-010, if the plaintiff or petitioner is a minor under 18 years of age will be required by Court in order to issue a summons.

7. Additional copies of documents to be conformed by the Clerk. Copies of the cover sheet and this addendum must be served along with the summons and complaint, or other initiating pleading in the case.

**CIVIL CASE COVER SHEET ADDENDUM
AND STATEMENT OF LOCATION**

SHENOI KOES LLP
Allan A. Shenoi [CSB # 122566]
Daniel J. Koes [CSB # 192513]
175 South Lake Avenue, Suite 202
Pasadena, California 91101
Telephone:    626-792-2300
Facsimile:    626-792-2311

Law Offices of Christopher C. Vader
Christopher Vader [CSB # 192753]
82-632 B Highway 111; Suite 3
Indio, California 92201
Telephone:  760-863-3840
Facsimile:   760-863-3842

Attorneys for Plaintiff RUBEN DON
Individually and as the Class Representative
on behalf of those persons similarly situated

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

MAY 17 2013

John A. Clarke, Executive Officer/Clerk
BY _Cristina Grijalva_ Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| RUBEN DON,<br>Individually, and on behalf of those persons similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA; WEDNER INSURANCE GROUP, INC. dba THE MORTON WEDNER INSURANCE AGENCY, and DOES 1-30,<br><br>      Defendants. | CASE NO.: BC **BC509235**<br><br>Assigned to: Hon.<br><br>Dept.:<br><br>**CLASS ACTION**<br>**[COMPLEX FEE PAID]**<br><br>**COMPLAINT for:**<br><br>1. **Declaratory Relief**<br>2. **Breach of Insurance Contract**<br>3. **Insurance Bad Faith**<br>4. **Fraud & Deceit**<br>5. **Negligence Misrepresentation**<br>6. **Unfair Business Practices In Violation Of California Business & Professions Code, Section 17200 et seq.**<br><br><br><br>**DEMAND FOR JURY TRIAL** |

– 1 –

CLASS ACTION COMPLAINT

Exhibit A
32

Plaintiff RUBEN DON ("Plaintiff" or "DON"), individually and on behalf of those persons similarly situated, complains of Defendants Unum Life Insurance Company of America ("UNUM"), Wedner Insurance Group, Inc. ("WEDNER") and Does 1-30 ("DOES") (collectively referred to as "Defendants"), demands a trial by jury, and on information and belief alleges as follows:

## Nature of Case

1.      The subject matter of this state-wide class action lawsuit is Defendant UNUM's institutional, systematic, uniform and state-wide wrongful denial of benefits owed under UNUM's sixty-seven (67) Long Term Care insurance policies issued in the State of California that contain an optional provision for inflation protection ("UNUM Long Term Care Policies"). UNUM's Long Term Care Policies are standard form policies ("Form Policies") approved under California law and regulations. The exemplar UNUM Long Term Care Policy is Defendant UNUM's Long Term Care Nursing Home And Professional Home Care Policy, Form No. LTC7392 ("the Policy"). A true and correct copy of the Policy is attached as Exhibit A to this Complaint. The UNUM Long Term Care Policies have been revised from time to time. However, for purposes of this dispute, the relevant language is the same today as it was when the UNUM Long Term Care Policies first issued.

2.      Plaintiff and the putative class members (the "Class" or "Class Members") are or were, at all relevant times, insured under the UNUM Long Term Care Policies. Plaintiff and the Class were wrongly denied long term care benefits owed by the UNUM Long Term Care Policies due to Defendant UNUM's unreasonable interpretation of those Form Policies' language. UNUM has applied the same single, and uniform, interpretation of the UNUM Long Term Care Policies' language, which is unreasonable under the substantive law of California (i.e., the State in which the UNUM Long Term Care Policies were issued). As a result, UNUM's uniform and institutional

2

interpretation of the UNUM Long Term Care Policies contradicts the express language of those Form Policies. Therefore, Plaintiff brings this state-wide class action on behalf of himself and all others similarly situated.

3. Specifically, the UNUM Long Term Care Policies provide (in relevant part):

"Your Monthly Benefit will increase each year on the Policy Anniversary . . . .
Increases will be automatic and will occur regardless of your health and whether
or not you have suffered a covered Loss . . . . Your Lifetime Maximum Benefit
Amount will also increase . . . ."

Because it has wrongfully applied its unreasonable and unlawful interpretation to the UNUM Long Term Care Policies issued in California, this state-wide class action is brought to remedy the wrong created by Defendant UNUM's "across-the-board" interpretation.

4. This dispute arises over the calculation of an insured's benefits because Defendant UNUM refuses to apply the annual increase to the Lifetime Maximum Benefit Amount after an insured suffers a covered loss and begins receiving benefits, as expressly provided for in the language of the UNUM Long Term Care Policies issued in California. After an insured suffers a covered loss and begins receiving benefits, Defendant UNUM takes the unreasonable and extra-contractual position that the annual increase applies to the amount of benefits remaining and not to the Lifetime Maximum Benefit Amount. UNUM's company-wide interpretation contradicts the express language in the UNUM Long Term Care Policies.

5. Plaintiff, on his own behalf and on behalf of all Class Members, contends that Defendant UNUM, at the time it issued the UNUM Long Term Care Policies containing the standard and uniform Form Policy language, knew that it would not reasonably, fairly and truthfully interpret the insurance policy language for insurance claims, but, rather, would tell its insureds, after they suffer a covered loss and begin receiving benefits, that the annual increase

Exhibit A
34

applies to the amount of benefits remaining and not to the Lifetime Maximum Benefit Amount.

### Parties and Venue

6.     Plaintiff is insured under the Policy attached as Exhibit A which was issued in California.

7.     Proposed Subclass I consists of all current and former California insureds who suffered a covered loss and received benefits under the UNUM Long Term Care Policies and the annual increase was applied to the amount of benefits remaining and not to the Lifetime Maximum Benefit Amount.  California insureds that did (or do) not have a provision for inflation protection are exempt from Subclass I.

8.     Proposed Subclass II consists of all current and former California insureds under the UNUM Long Term Care Policies who have not yet suffered a covered loss or received benefits but will be faced with Defendant UNUM's unreasonable and wrongful policy interpretation, as it relates to the application of the annual increase to the amount of benefits remaining, if and when they do make a claim, based on Defendant UNUM's uniform erroneous interpretation to the calculation of benefits.  California insureds that did (or do) not have a provision for inflation protection are exempt from Subclass II.

9.     Plaintiff and the putative members Subclasses I and II are referred to as "Class Members" or "Insureds."

10.     Defendant UNUM Life Insurance Company of America ("UNUM") is a Maine corporation, headquartered in Chattanooga, Tennessee, and does business as a life and disability insurance company.  Defendant UNUM is an admitted disability and life insurer in the State of California and subject to California's rules, regulations, statutes and law governing admitted insurers.  At all material times, including the present, Defendant UNUM conducts business in Los Angeles County, California and UNUM's primary operating center on the west coast is located in

CLASS ACTION COMPLAINT

**Exhibit A**
**35**

Glendale. California.   Defendant UNUM is the insurer and underwriter of the UNUM Long Term Care Policies.  For the purposes of this dispute. the UNUM Long Term Care Policies contain the same relevant policy language set forth in the exemplar Policy attached as Exhibit A.

11.     Defendant Wedner Insurance Group doing business as The Morton Wedner Insurance Agency ("WEDNER") is a California corporation, and at all material times herein. conducted business in Los Angeles County, California.

12.     Venue is proper in any county in California because Defendant UNUM has not currently filed a statement with the California Secretary of State designating a principal office in California.

13.     Plaintiff is ignorant of the true names and capacities of Defendants sued as DOES 1 through 30. inclusive, and therefore Plaintiff sues these Defendants by fictitious names.  Plaintiff will amend this Complaint and allege their true names and capacities when ascertained after discovery.  Each of the fictitiously named Defendants is responsible and liable in some manner for the occurrences alleged.

14.     At all times relevant. each of the Defendants--whether or not named or sued by fictitious names--was the actual or ostensible authorized agent or agent by ratification, or principal. servant. master. employee. employer. insurer. partner. alter ego. or joint venturer of each of the Defendants. and in doing the things alleged. was acting within the course and scope of such agency. employment. partnership or other relationship.  Each of the Defendants acted under the authority or control of the other(s). and each Defendant ratified the acts of the other.

### The UNUM Long Term Care Policies

15.     In California, Defendant UNUM issues the following sixty-seven (67) UNUM Long Term Care Policy Forms:  NH94: LTC94P: LTC94T: NH94Q: LTC94PQ: LTC94TQ: NH94Q2: LTC94PQ2: LTC94TQ2: NH94: LTC94P: LTC94P: LTC94T; NH94Q; LTC94PQ; LTC94TQ:

**Exhibit A**

**36**

NH94Q2: LTC94PQ2: LTC94TQ2: NH5092-93: NH5292-93: NH5392-93: NH5492-93; NH5592-

93: LTC5092: LTC5192: LTC5292: LTC5392: LTC5492: LTC5592: LTC6092: LTC6192:

LTC6292: LTC6392: LTC6492: LTC6592: LTC7092; LTC7192: LTC7292: LTC7392: LTC7492:

LTC7592: NH94: LTC94P: LTC94T: NH94Q: LTC94PQ: LTC94TQ: LTC99: LTC99P: LTC99T:

LTC99Q: LTC99PQ: LTC99TQ: NH94Q2: LTC94PQ2: LTC94TQ2: LTC99Q2: LTC99PQ2:

LTC99TQ2: LTC99Q3: LTC99PQ3: LTC99TQ3: B.LTC: TQB.LTC: GLTC95: and TQGLTC95.

Although there are various types of UNUM Long Term Care Policies (e.g.. Individual. Group.

Partnership) and and categories (e.g.. home care only. comprehensive. nursing and residential care

facility. tax qualified and non-tax qualified). for the purposes of this dispute. the UNUM Long

Term Care Policies contain the same relevant policy language set forth in the exemplar Policy

attached as Exhibit A.

16.     Effective April 7. 1997 and through the present date. Plaintiff applied for and

became. and presently remains. insured under the Policy attached as Exhibit A. Because the Policy

language. terms and conditions that are relevant to this dispute are identical in the UNUM Long

Term Care Policies. references to the Policy also refer to the identical language. terms and

conditions in the UNUM Long Term Care Policies. and vice versa.

17.     The Policy provides an insured with long term care benefits and is approved under

California law and regulations. The Policy provides a Lifetime Maximum Benefit Amount and

allows an insured to purchase an optional inflation protection provision.    Under the Policy.

"**Lifetime Maximum Benefit Amount**" means the total dollar amount of benefits that you will

be paid under the Policy.   The Lifetime Maximum Benefit Amount is shown in the Policy

Schedule." The Policy provides that Defendant UNUM will pay long term care benefits for a

covered loss.  The Lifetime Maximum Benefit Amount language is capitalized throughout the

Policy which denotes a defined term.

- 6 -

**Exhibit A**
**37**

The "**Benefit Increase**" Provision states (in relevant part):

"Your Monthly Benefit will increase each year on the Policy Anniversary . . . .

**Increases will be automatic and will occur regardless of your health and whether**

**or not you have suffered a covered Loss** . . . . **Your Lifetime Maximum Benefit**

**Amount will also increase** . . ." (Emphasis added.)


The "**Termination of Benefits**" Provision states:

"Your benefits will cease on the earliest of:

(a) the day after you cease to suffer a covered Loss . . .;

(b) the day after the Lifetime Maximum Benefit Amount has been paid;

(c) the day after you die."


The "**Conformity with State Statutes**" Provision provides:

"If any provision of this policy conflicts with the statutes of the state where you

reside on the Effective date of that provision, it is amended to conform with

the minimum requirements of those statutes."

**Plaintiff's Insurance Claim**

18.     Plaintiff was born January 10, 1930 and has been insured under the Policy for

sixteen years.  After he suffered a covered loss under the Policy, he submitted a claim and began

receiving benefits in 2009.

19.     On June 4, 2010, UNUM told Plaintiff that he had approximately fifty-nine (59)

days of benefits remaining and Plaintiff requested UNUM's calculations to show why only 59 days

of benefits remained.  UNUM responded:  "It's based on the pool of money" and Plaintiff has

"$10,309 remaining."  In reply, Plaintiff clarified his request to UNUM as follows:  "What I am

- 7 -

Exhibit A
38

asking for is (1) the calculation of the total amount that [Plaintiff] is eligible to receive and (2) the amounts you show have been paid (hopefully by month)."

20.     On July 17, 2012, UNUM sent Plaintiff a letter stating: "As of today, the current monthly benefit amount is $5,250.00 and we have paid $174,510.00. [Plaintiff has] approximately $5,059.09 in benefits [remaining] under this policy." Once again, Plaintiff asked UNUM how the benefits were calculated. UMUM responded: "The calculation is coming from our system."

21.     After he reviewed the Policy, Plaintiff wrote to UMUM again stating that the Policy "language says, 'Increases will be automatic and will incur regardless of your health and whether or not you have suffered a covered loss . . . .' It further states that, 'your Lifetime Maximum Benefit Amount will also increase by 5%.' Again, I see nothing that says it will not go up if you have a covered loss." UNUM responded:   "Your math is correct if [you were] never receiving benefits.  Yes, it does increase . . . monthly/lifetime max, however once [you] started receiving benefits in 2009 the increase was on the remaining amount at that time not the original."

22.     On August 13, 2012, UNUM sent Plaintiff a calculation from UNUM's financial specialist and Plaintiff responded:  "The provisions of the agreement say that the maximum will increase by 5% per year.  There are no provisions that say anything about an offset during pay out periods . . . . Can you please have the person that is reading something more into the contract language of, 'Your Lifetime Maximum Benefit Amount will also increase by 5%' call me?  It is now over two months and no one has been able to show me in the contract where an offset like you are suggesting is warranted."

23.     Less than ten days later (on August 24, 2012), UNUM denied the remaining benefits owed to Plaintiff under the Policy and stated that the "lifetime maximum you calculated is based off the full 36 month duration with inflation.  However, [you] started [your] benefits before the maximum inflation amount was reached.  The calculation is based on the remaining months of

**Exhibit A**
**39**

1    duration."

2    24.    UNUM continues to refuse to pay Plaintiff the remaining benefits owed under the

3    Policy.

4                              **CLASS ALLEGATIONS**

5    25.    This action may be properly maintained as a class action under California

6    procedural law as set forth in California Code of Civil Procedure, section 382.

7

8    26.    First, the members of Subclasses I and II are ascertainable. Plaintiff,    and    each

9    member of Subclasses I and II, is or was an insured under the UNUM Long Term Care Policies

10   that issued in California. The UNUM Long Term Care Policies and the identity of each member of

11   Subclasses I and II can be ascertained.  Plaintiff does not yet know the identity of all members in

12   Subclasses I and II because their names and addresses are in the sole possession of Defendant

13   UNUM. The identity of all members in Subclasses I and II is readily ascertainable by reference to

14   records which are maintained by UNUM.

15

16   27.    The questions of law and fact are common to Plaintiff as well as all Class

17   Members, to wit:

18         a)    The single, predominate and common question of law to be resolved

19   involves the interpretation of certain language in the UNUM Long Term Care Policies,

20   issued to all Class Members, which is applicable to, and applied by Defendant UNUM to all

21   claims submitted by Plaintiff and the Class Members on a statewide basis: to wit:

22

23              After an insured suffers a covered loss and begins receiving benefits, does

24              the annual increase apply to the Lifetime Maximum Benefit Amount, as

25              expressly provided for in the language of the UNUM Long Term Care

26              Policies issued in California?

27

28

- 9 -

**CLASS ACTION COMPLAINT**

**Exhibit A**
**40**

Because the interpretation of the UNUM Long Term Care Policies is governed by California substantive law, the applicable law used to answer this question is the same for all Class Members.

b)　　The following factual questions to be resolved are common to Plaintiff and the Class Members:

1)　　The uniform manner in which Defendant UNUM applies the annual increase to the amount of benefits remaining and not to the Lifetime Maximum Benefit Amount after an insured suffers a covered loss and begins receiving benefits;

2)　　The uniform manner in which Defendant UNUM relies on language which is not contained in the UNUM Long Term Care Policies after an insured suffers a covered loss and begins receiving benefits;

3)　　Whether said conduct breaches the insurance contract and UNUM's covenant of good faith and fair dealing;

4)　　The same damages to each class member (to wit: the denial of benefits);

5)　　The uniform unfair business practice of Defendant UNUM, as prohibited by California Business & Professions Code, section 17200 et seq., and the impact on the insured consumers.

c)　　While the specific amount of Plaintiff's damages and each Class Member will differ somewhat due to the amount of their specific entitlement to improperly withheld long term care benefits, the specific amount of damages suffered by Plaintiff and each Class Member can be calculated by a common formula and/or reference to existing documentation.

- 10 -

CLASS ACTION COMPLAINT

**Exhibit A**
**41**

28.     Accordingly, the issues affecting the Class Members of Subclasses I and II will be more advantageously tried jointly, which will result in advantages to the judicial process and to the litigants.

29.     Plaintiff's claims are also typical of the claims of other similarly situated persons in Subclasses I and II, and there is a well-defined community of interest in the questions of law and fact affecting Plaintiff and all members of the proposed Class. Plaintiff's claim is not only typical, but it is identical to all members of the Class because Plaintiff's claim is that defendant UNUM misinterprets language in the UNUM Long Term Care Policies issued in California which contain the identical language relevant to resolve this dispute over long term care benefits. As the Class Representative, Plaintiff contends defendant UNUM applies the same misinterpretation to all UNUM Long Term Care Policies on a statewide basis. Since the substantive law of one state-- California--contractually applies to the interpretation of the same relevant policy language, regardless of the specific UNUM Long Term Care Policy under which the insured is afforded insurance, the claims of each Class Member are typical of Plaintiff's claims. Furthermore, the Class Representative has no conflict with other Class Members that would disqualify him from adequately serving as Class Representative and vigorously prosecuting this statewide class action. Finally, Plaintiff is represented by able attorneys who are experienced in prosecuting class actions.

## FIRST CAUSE OF ACTION: DECLARATORY RELIEF
### (By Plaintiff and Subclasses I and II against Defendant UNUM and DOES 1-30)

30.     Plaintiff and Subclasses I and II reallege and incorporate herein all other paragraphs of the complaint in their entirety as if set forth at length herein.

31.     The UNUM Long Term Care Policies constitute contracts that exist between Plaintiff and the Class Members, on one hand, and Defendant UNUM, on the other hand.

32.     The UNUM Long Term Care Policies provide long term care benefits to Plaintiff and the Class Members after they suffer a covered loss.

- 11 -

CLASS ACTION COMPLAINT

33.     The UNUM Long Term Care Policies provide (in relevant part):

"Your Monthly Benefit will increase each year on the Policy Anniversary . . . .

Increases will be automatic and will occur regardless of your health and whether

or not you have suffered a covered Loss . . . . Your Lifetime Maximum Benefit

Amount will also increase . . ."

34.     An actual controversy exists between Plaintiff and the Class Members, on the one hand, and Defendant UNUM, on the other hand.

35.     Based on the express language of the UNUM Long Term Care Policies, Plaintiff and the Class Members reasonably believe that the annual increase applies to the Lifetime Maximum Benefit Amount after an insured suffers a covered loss and begins receiving benefits.

36.     To deny Plaintiff and the Class long term care benefits, Defendant UNUM's company-wide interpretation relies on language outside the UNUM Long Term Care Policies after an insured suffers a covered loss and begins receiving benefits by applying the annual increase to the amount of benefits remaining and not to the Lifetime Maximum Benefit Amount.

37.     If defendant UNUM intended to apply the annual increase to the amount of benefits remaining, it was required to say so in the UNUM Long Term Care Policies, clearly and unambiguously. Rather than do so, the UNUM Long Term Care Policies clearly and unambiguously state just the opposite: "Your Lifetime Maximum Benefit Amount will . . . increase."

38.     Because UNUM's interpretation is erroneous, as a matter of law, and in fact unreasonable, under California law, Plaintiff, on his own behalf, and on behalf of all Class Members, seeks a judicial determination that the annual increase applies to the Lifetime Maximum Benefit Amount after an insured suffers a covered loss and begins receiving benefits, as expressly provided for in language of the UNUM Long Term Care Policies issued in California.

- 12 -

**Exhibit A**
**43**

39.     Upon such a finding by this Court, Plaintiff on behalf of the Class Members will seek an injunction against Defendant UNUM enjoining it from applying the annual increase to the amount of benefits remaining and not to the Lifetime Maximum Benefit Amount after an insured suffers a covered loss and begins receiving benefits

### SECOND CAUSE OF ACTION:  BREACH OF INSURANCE CONTRACT
#### (By Plaintiff and Subclass I against Defendant UNUM and DOES 1-30)

40.     Plaintiff and Subclass I reallege and incorporate herein all other paragraphs of the complaint in their entirety as if set forth at length herein.

41.     The UNUM Long Term Care Policies constitute contracts that exist between Plaintiff and the Class Members, on one hand, and Defendant UNUM, on the other hand.  Plaintiff and members of Subclass I paid their premiums and complied with all terms necessary to obtain benefits under the UNUM Long Term Care Policies and have performed all their obligations under the contracts of insurance, unless excused.

42.     While the UNUM Long Term Care Policies were in full force and effect, Plaintiff and members of Subclass I suffered a covered loss as defined in the UNUM Long Term Care Policies.

43.     Pursuant to, and consistent with, the terms and conditions set forth in the UNUM Long Term Care Policies, Plaintiff and members of Subclass I submitted claims for benefits.

44.     Defendant UNUM breached the contracts by failing to pay to Plaintiff and the members of Subclass I benefits to which they are entitled.

45.     As a direct result of defendant UNUM's breach of the insurance contracts, Plaintiff and the members of Subclass I have been damaged in an amount not yet fully ascertained, but which damages include the loss of the contractual benefits under the UNUM Long Term Care Policies.

CLASS ACTION COMPLAINT

**Exhibit A**
**44**

### THIRD CAUSE OF ACTION: INSURANCE BAD FAITH
**(By Plaintiff and Subclass I against Defendant UNUM and Does 1-30)**

46.    Plaintiff and Subclass I reallege and incorporate herein all other paragraphs of the complaint in their entirety as if set forth at length herein.

47.    Included in the UNUM Long Term Care Policies between Defendant UNUM, on the one hand, and Plaintiff and the members of Subclass I, on the other hand, are covenants of good faith and fair dealing. The manner in which Defendant UNUM handled the claims of Plaintiff and the members of Subclass I, in calculating benefits under the UNUM Long Term Care Policies, constituted more than just a breach of contract. It was also an unreasonable interpretation that constituted a breach of the covenant of good faith and fair dealing.

48.    Defendant UNUM breached the covenant of good faith and fair dealing in the following particulars:

a)    Delivering a policy of insurance with express terms and then, upon presentation of a covered claim, taking an unreasonable and improper position with respect to the interpretation knowing that the position it was taking would deny Plaintiff and the members of Subclass I benefits purchased under the UNUM Long Term Care Policies;

b)    Delivering a policy of insurance with express terms and then, upon presentation of a covered claim, taking a position contrary to the well settled law of California, the state in which the UMUM Long Term Care Policies were issued, with respect to the interpretation of the Benefit Increase Provision. At the time Defendant UNUM took its unreasonable position, it knew that the position it was taking would deny Plaintiff and the members of Subclass I (its insureds) benefits purchased under the UNUM Long Term Care Policies;

c)    Engaging in a continuous course of wrongful conduct, even after being informed of the impropriety of its interpretation of the policy language, by denying and refusing to pay benefits according to the terms of the UNUM Long Term Care Policies;

- 14 -

Exhibit A
45

d)      Knowing that if it took an unreasonable and unlawful position regarding the Benefit Increase Provision as used to determine the amount of benefits owed under the UNUM Long Term Care Policies, it would undercut the very purpose of the insurance that was purchased by Plaintiff and the members of Subclass I;

e)      Continually denying the full amount of covered claims owed under the UNUM Long Term Care Policies knowing that if it held fast to its position, the insureds would rely on, and place their trust in, the accuracy and truthfulness of the insurer's representations as to the extent of coverage, and the basis for denial; and

f)      Engaging in the practice of taking an unreasonable and unlawful position with respect to the calculation of benefits owed under the UNUM Long Term Care Policies knowing that the only way it would properly calculate benefits was if it was ordered to do so by a court, thereby foreseeing the damages that would flow to Plaintiff and the members of Subclass I in having to retain counsel to obtain benefits owed.

49.      As a direct result of the repetitive and intentional wrongful conduct, which UNUM knew would deprive Plaintiff and the members of Subclass I of the full amount of benefits owed under the UNUM Long Term Care Policies, Plaintiff and the members of Subclass I are entitled to receive not only the contractual damages but also consequential damages, in order to make them whole and to insure they receive the full amount of benefits to which they are entitled. These consequential damages include, but are not limited to, attorneys' fees and costs, all of which are and were foreseeable in light of UNUM's wrongful breach of the contract.

50.      With full knowledge of the consequences and damages to Plaintiff and the Class Members, Defendant UNUM continues to represent to Plaintiff and the Class Members that the annual increase applies to the amount of benefits remaining and not to the Lifetime Maximum Benefit Amount after an insured suffers a covered loss and begins receiving benefits. Accordingly,

- 15 -

Exhibit A
46

an award of punitive damages is warranted and appropriate in order to punish Defendant UNUM for engaging in this conduct and to deter it from engaging in this practice and continuing to engage in this practice of depriving insureds of benefits owed under the express terms of the UNUM Long Term Care Policies.

### FOURTH CAUSE OF ACTION:
### FRAUD BY INTENTIONAL MISREPRESENTATION
#### (By Subclass II against Defendant UNUM and DOES 1-30)

51.     Plaintiff and Subclass II reallege and incorporate herein all other paragraphs of the complaint in their entirety as if set forth at length herein.

52.     At the time the UNUM Long Term Care Policies were issued to Plaintiff and the Members of Subclass II, Defendant UNUM explicitly represented that it would apply the annual increase to the Lifetime Maximum Benefit Amount after an insured suffers a covered loss and begins receiving benefits.

53.     At the time Defendant UNUM made these written representations in the UNUM Long Term Care Policies, they were known to be false by Defendant UNUM.

54.     The true facts are Defendant UNUM did not intend to apply the annual increase to the Lifetime Maximum Benefit Amount after an insured suffers a covered loss and begins receiving benefits. Rather, Defendant UNUM intended, at the time the UNUM Long Term Care Policies were issued, to apply the annual increase to the amount of benefits remaining and not to the Lifetime Maximum Benefit Amount. This intent is evidenced by Defendant UNUM's company-wide interpretation which contradicts the express language in the UNUM Long Term Care Policies.

55.     At the time Plaintiff and the members of Subclass II received this written representation in the UNUM Long Term Care Policies, they relied on the ordinary meaning of the language set forth therein. Their reliance was reasonable in light of the fact that Defendant UNUM

- 16 -

expressly stated in the UNUM Long Term Care Policies that the annual increase would apply to the Lifetime Maximum Benefit Amount and nowhere stated that the annual increase would apply to amount of benefits remaining after an insured suffers a loss and begins receiving benefits.

56.     Reliance by the Plaintiff and the members of Subclass II is further justified in light of the relationship between an insurer and an insured, and the fact that a contracting party does not anticipate as a risk of the contracting process or of the contract itself that the other contracting party will lie and make intentional misrepresentations of material facts.  Had they known the true facts, they would not have purchased this insurance, but would have purchased different insurance.

57.     Plaintiff, who was insured with Defendant UNUM since 1997, did not learn this was a misrepresentation until 2012 when Defendant UNUM advised him that the annual increase applies to the amount of benefits remaining after an insured suffers a covered loss and begins receiving benefits.  In actuality, the Policy language explicitly states that the annual increase applies to the Lifetime Maximum Benefit Amount.

58.     The members of Subclass II have been damaged because UNUM's misrepresentations will continue to reduce the benefits promised and not provide the Class Members with the bargained for benefits.  Accordingly, the members of Subclass II are entitled to rescind the contract and receive a full repayment of their past paid premium, plus interest.

59.     Had Plaintiff and the members of Subclass II known the true facts, they would not have purchased this insurance, but would have purchased different insurance.

60.     The conduct of Defendant UNUM, which is continuing, is not only fraudulent, it is also malicious, oppressive, extreme, outrageous and despicable.  Defendant UNUM knows that the specific benefit purchased is for the annual increase to be applied to the Lifetime Maximum Benefit Amount.  By applying the annual increase to the amount of benefits remaining, UNUM causes foreseeable hardship to the insured, particularly given the benefits are for "long term care"

Exhibit A
48

benefits.

61.     Furthermore, the conduct of Defendant UNUM is and was extreme, outrageous, fraudulent, malicious and despicable since UNUM has knowledge of the California law that governs its insurance policies, and knows and knew that its interpretation of the UNUM Long Term Care Policies in the manner set forth above, is in violation of settled California law, nonetheless UNUM lied to its insureds about the UNUM Long Term Care Policies' language in order to deprive its insureds benefits owed.

62.     With full knowledge of the consequences and damages to Plaintiff and the Class Members, Defendant UNUM continues to represent to Plaintiff and the Class Members that the annual increase applies to the amount of benefits remaining and not to the Lifetime Maximum Benefit Amount after an insured suffers a covered loss and begins receiving benefits. Accordingly, an award of punitive damages is warranted and appropriate in order to punish Defendant UNUM for engaging in this conduct and to deter it from engaging in this practice and continuing to engage in this practice of depriving insureds of benefits owed under the express terms of the UNUM Long Term Care Policies.

**FIFTH CAUSE OF ACTION: NEGLIGENCE AND NEGLIGENT CONCEALMENT/MISREPRESENTATION**
**(By Plaintiff against Defendant WEDNER and Does 1-30)**

63.     Plaintiff realleges and incorporates herein all other paragraphs of the complaint in their entirety as if set forth at length herein.

64.     When Plaintiff applied for insurance he requested the optional provision for inflation protection marked "5% Simple 2x." (Exh. A at p. 18.) Defendant WEDNER signed Plaintiff's application as a broker. (*Id.* at p. 19.) Defendant WEDNER knew Plaintiff sought a long term care policy with inflation protection that applied the annual increase to the Lifetime Maximum Benefit Amount and WEDNER agreed to obtain that insurance for Plaintiff. WEDNER

- 18 -

Exhibit A
49

had a duty to exercise reasonable care in obtaining the coverage that Plaintiff requested and that WEDNER held itself out as an expert to and agreed to obtain, and to use reasonable care in selecting an insurer that had a record of reasonable claims handling. Furthermore, WEDNER knew or should have known that if the Plaintiff was likely to be affected by UNUM's interpretation of particular language in the Policy, it owed Plaintiff a duty to inform him of that language and its effect, before the Policy was purchased, especially if its effect was different from that for which Plaintiff contracted.

65.    In securing the Policy, WEDNER was negligent in that its conduct and acts alleged herein were something a reasonably prudent person in the same situation and possessed with the same knowledge and superior position vis-à-vis Plaintiff, would not do, or were omissions or failures which a reasonably prudent person would do, under the circumstances as alleged herein. WENDER's conduct constituted a failure to use ordinary or reasonable care. The failure to deliver to Plaintiff the agreed upon coverage was negligence on the part of WEDNER.

66.    Defendant WEDNER never told Plaintiff that the annual increase would be applied to the amount of benefits remaining and not to the Lifetime Maximum Benefit Amount once Plaintiff suffers a covered loss and begins receiving payments.  Furthermore, WEDNER negligently misrepresented the nature and scope of coverage in violation of Insurance Code, section 780 which imposes on insurance agents and brokers the duty to fully and accurately represent the terms of a policy.

67.    WEDNER further violated Insurance Code, section 781 which, in part, proscribes any person from making any misrepresentation to induce another to take out a policy of insurance. WEDNER's breach of these statutory provisions constitutes negligence per se.

68.    Moreover, WEDNER had a duty to select coverage on a Policy which comported with the agreement of Plaintiff, and failed to inform Plaintiff of this omission and instead

- 19 -

**Exhibit A**
**50**

misrepresented to Plaintiff and caused Plaintiff to believe that the annual increase would apply to the Lifetime Maximum Benefit Amount even if Plaintiff had a covered loss under the Policy.

69.     Plaintiff reasonably relied on the representations of WEDNER, and was reasonably unaware of the facts not disclosed by or concealed by Defendants.

70.     WEDNER did not secure for Plaintiff a Policy that accurately memorialized the agreement of the parties, and did not select an insurer that would fairly and reasonably calculate benefits, and WEDNER's conduct proximately caused Plaintiff to retain a lawyer and lose a substantial amount of Plaintiff's time which was diverted to prosecuting this lawsuit.

71.     If Plaintiff had known the true facts, i.e., the facts which were not disclosed, were misrepresented and/or were concealed by WEDNER (e.g., that the annual increase would be applied to the amount of benefits remaining and not to the Lifetime Maximum Benefit Amount once Plaintiff suffers a covered loss and begins receiving payments), Plaintiff would not have transacted to purchase the Policy, would not have retained WEDNER, but instead would have proceeded through another broker to purchase Plaintiff's desired long term care insurance coverage, that was readily available from another insurer in February 1997.

72.     As a proximate result of WEDNER's negligent conduct, Plaintiff has suffered damages that were foreseeable or anticipated by Defendants, in an amount presently unknown but subject to proof at trial. Separately and independently, WEDNER is liable for all damages Plaintiff suffered, whether foreseeable or not, under a negligent misrepresentation theory, according to proof at trial.

### SIXTH CAUSE OF ACTION:
### UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET SEQ.
### (By Plaintiff and All Class Members Against Defendants UNUM, WEDNER and DOES 1-30)

73.     Plaintiff and the Class reallege and incorporate herein all other paragraphs of the complaint in their entirety as if set forth at length herein.

- 20 -

Exhibit A
51

74.     Defendants' acts violated California's Unfair Competition Law, Business and Professions Code section 17200 et seq. ("UCL") by engaging in unlawful, and/or unfair and/or fraudulent conduct.   The UCL provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice," including acts of intentional misrepresentation or concealment of material facts.

75.     Defendant UNUM's conduct violated the unlawful prong of the UCL because UNUM's conduct violated California Civil Code, Sections 1709, 2223, 2224 (California's Fraudulent Business Practices Statute, California Civil Code, Section 1710 (same)); California Penal Code, Section 484 (Same).  Defendant UNUM also engaged in the fraudulent and unfair practices by issuing to insureds coverage under the UNUM Long Term Care Policies that provided for benefits after each insured suffers a covered loss.  By its language, the UNUM Long Term Care Policies apply the annual increase to the Lifetime Maximum Benefit Amount.  After an insured suffers a loss and begins receiving payments, however, the annual increase applies to the amount of benefits remaining and not to the Lifetime Maximum Benefit Amount.

76.     Defendant WEDNER's conduct violated the unlawful prong of the UCL because its conduct violated Insurance Code, section 780 which imposes on insurance agents the duty to fully and accurately represent the terms of a policy and violated Insurance Code, section 781 which, in part, proscribes any person from making any misrepresentation to induce another to take out a policy of insurance.

77.     As a result, Plaintiff and others similarly situated were denied vested Property rights by each of the Defendants.  Each of the Defendants generated--and continue to generate--gains as a direct result of its unfair, unlawful and/or fraudulent business practices.  Plaintiff and others similarly situated are therefore entitled to (1) restitution and/or restitutionary disgorgement of any and ill-gotten gains obtained by each of the Defendants as a result of their UCL violations, (2)

Exhibit A
52

preliminary and permanent injunctive relief under California Business and Professions Code. section 17200 et seq.; and (3) reasonable attorney fees under Code of Civil Procedure. section 1021.5. and any other applicable statutory provision.

WHEREFORE. Plaintiff. on his own behalf and as the representative of the Class Members. prays for relief from this Court, and seeks damages. equitable relief and other remedies as follows:

A.    For an Order from this Court certifying this action as a class action;

B.    For a declaration that Defendant UNUM's interpretation of language in the UNUM Long Term Care Policies is contrary to contract language and in violation of California law. which is the controlling substantive law;

C.    For a declaration that--after an insured suffers a covered loss and begins receiving benefits, the annual increase applies to the Lifetime Maximum Benefit Amount as set forth in the express language of the Policy;

D.    For preliminary and permanent injunctions enjoining UNUM from applying the annual increase to the amount of benefits remaining after an insured suffers a loss and begins receiving benefits;

E.    For all general and special damages;

F.    For all foreseeable consequential damages. including but not limited to attorney fees. arising out of UNUM's breach of the implied covenant of good faith and fair dealing;

G.    For punitive damages

H.    For statutory attorney fees;

I.    For pre-judgment and post-judgment interest;

J.    For costs of this lawsuit; and

K.    For any other relief as this Court deems just and proper.

- 22 -

CLASS ACTION COMPLAINT

1   PLAINTIFF AND THE CLASS MEMBERS DEMAND A JURY TRIAL AS TO ALL
2   CAUSES OF ACTION.

3

4

5   Dated: May 17, 2013                          SHENOI KOES LLP

6                                          By: _____

7                                              Allan A. Shenoi
                                            Attorneys for Plaintiff RUBEN DON Individually and
8                                           as Class Representative on behalf of those persons
                                            similarly situated
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 23 -

CLASS ACTION COMPLAINT

**Exhibit A**
**54**

 **UNUM.**

### LONG TERM CARE
### NURSING HOME AND PROFESSIONAL HOME CARE POLICY

UNUM Life Insurance Company of America (referred to as "we", "our" and "us") is pleased to issue this insurance policy to you. This policy provides long term care benefits under stated conditions. Please refer to the policy provisions where we tell you when and how we will pay benefits. You will find an index of these provisions on Page 2.

**Notice to buyer:** This policy may not cover all of the costs associated with long term care incurred by the buyer during the period of coverage. The buyer is advised to review carefully all policy limitations.

## THIS POLICY IS GUARANTEED RENEWABLE
## WE HAVE A LIMITED RIGHT TO CHANGE PREMIUMS

You may renew this policy on each Policy Anniversary by paying each premium before its Grace Period ends. We reserve the right to change premiums for this policy. To do so, we must change the premiums for all similar policies issued in your state on this policy form. Any change in premium will be effective on your Policy Anniversary Date. We will send you written notice at least 31 days in advance.

## 30 DAY RIGHT TO EXAMINE YOUR POLICY

You may cancel this policy for any reason within 30 days after it is delivered to you or your representative. Simply return the policy, within 30 days of its receipt, to us at our Home Office. If this is done, the policy will be canceled from the beginning and all of the premium paid will be refunded within 10 days after the policy is returned to us.

## IMPORTANT CAUTION ABOUT YOUR APPLICATION

We issued this policy based upon medical and other questions you answered in your application. A copy of your application is attached. If, for any reason, any of your answers are incorrect or untrue, contact us immediately at the address stated below, to the attention of the Long Term Care Division.

If your answers on this application are misstated or untrue, we may have the right to deny benefits or rescind your coverage. The best time to clear up any questions is now, before a claim arises!

**THIS POLICY IS NOT A MEDICARE SUPPLEMENT POLICY.** If you are eligible for Medicare, review the Medicare Supplement Buyer's Guide available from us.

> **THIS POLICY IS AN APPROVED LONG-TERM CARE INSURANCE POLICY UNDER CALIFORNIA LAW AND REGULATIONS. HOWEVER, THE BENEFITS PAYABLE BY THIS POLICY WILL NOT QUALIFY FOR MEDI-CAL ASSET PROTECTION UNDER THE CALIFORNIA PARTNERSHIP FOR LONG-TERM CARE. FOR INFORMATION ABOUT POLICIES AND CERTIFICATES QUALIFYING UNDER THE CALIFORNIA PARTNERSHIP FOR LONG-TERM CARE, CALL THE HEALTH INSURANCE COUNSELING AND ADVOCACY PROGRAM AT THE TOLL-FREE NUMBER, 1-800-434-0222.**

This policy becomes effective on the Effective Date shown on Page 3, provided the first modal premium is paid.

*Kevin J. Tierney*
Secretary

*E. Rosen*
President

UNUM Life Insurance Company of America
Portland, Maine 04122

LTC7392

1042 95(1/97)

Ex. A
P. 1

# INDEX OF POLICY PROVISIONS

| | |
|---|---|
| 1 | Renewal |
| 1 | Thirty Day Right to Examine Policy |
| 3 | Policy Schedule |
| 4 | THERE IS NO PAGE 4 IN THIS POLICY |
| 5 | Terms You Should Know |
| 9 | Benefits |
| | Monthly Benefit |
| 10 | Bed Reservation Provision |
| | Respite Care Benefit |
| | Benefit Increase Provision |
| 11 | How To File a Claim |
| | When Claims Are Paid |
| | To Whom Claims Are Paid |
| 12 | Claim Overpayment |
| | Termination of Benefits |
| | Plan Exclusions |

| | |
|---|---|
| 13 | Premiums |
| | Waiver of Premium |
| | Grace Period |
| | Reinstatement |
| 14 | Refund of Premium After Death |
| 14 | General Provisions |
| | The Contract |
| | Statements |
| | Legal Actions |
| | Incontestable |
| | Conformity with State Statutes |
| | Misstatement of Age |
| 15 | Pre-Existing Conditions |
| | Nonparticipating |
| | Owner |
| | Loss Payee |
| | Assignment |

LIFE   ·   HEALTH   ·   GROUP   ·   BUSINESS

# THE MORTON WEDNER ——
## —— INSURANCE AGENCY

17612 Beach Blvd , Suite 18
P.O. Box 1332 · Huntington Beach, CA 92647

MORTON WEDNER          (714) 842-1234

*p. 2*

## POLICY SCHEOULE

| | | | |
|---|---|---|---|
| INSUREO | Ruben S Oon | POLICY OATE | 01/09/97 |
| POLICY NUMBER | LAC540428 | EFFECTIVE OATE | 04/07/97 |

### SUMMARY OF PREMIUM

Premiums are payable as follows:

| Beginning | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|
| 01/09/97 | $1.188.54 | $606.16 | $309.02 | $106.97 |

### SUMMARY OF COVERAGE



| Form | LTC7392 |
|---|---|
| Effective Oate | 04/07/97 |
| Annual Premium | $1.188.54 |

| | |
|---|---|
| Elimination Period | 90 Cumulative Oays |
| Elimination Accumulation Period | 270 Oays |
| *Benefit Amount | Nursing Horne Benefit - $3.000 Per Month |
| | Professional Home Care Benefit - 100% of Nursing Home Benefit |
| Lifetime Maximum Benefit Amount | $108.000 ⋯ ⋯ ⋯ |
| Benefit Increase Provision | 5% Simple   2X Cap |

* The Benefit Amount and the Maximum Benefit Amount will increase each policy anniversary based on the Benefit Increase Provision purchased.

* Residential Care Facility Benefit will be 60% of the Nursing Home Benefit; or the Home Care Benefit if the percentage is greater.

SPOUSAL DISCOUNT APPLIED

$\rho$ . 3

**Exhibit A**

57

# TERMS YOU SHOULD KNOW

Many terms used in your policy have special meanings. A list of these terms and meanings follows:

"Activities of Daily Living" (ADLs) are:

(a) bathing: the ability to wash yourself either in the tub or shower or by sponge bath, with or without equipment or adaptive devices without stand-by assistance of another person.

(b) dressing: the ability to put on and take off all garments, and medically necessary braces or artificial limbs usually worn, and to fasten or unfasten them, without the stand-by assistance of another person.

(c) transferring: the ability to move in and out of a chair or bed with or without equipment such as canes, quad canes, walkers, crutches or grab bars or other support devices including mechanical or motorized devices without the stand-by assistance of another person.

(d) ambulating: the ability to walk from one location to another, indoors or outdoors, with or without the use of supportive equipment such as a walker, crutches, or artificial limbs without the stand-by assistance of another person.

(e) toileting: the ability to get to and from and on and off the toilet, to maintain a reasonable level of personal hygiene, and to care for clothing, without the stand-by assistance of another person.

(f) continence: the ability to voluntarily control bowel and bladder function, or, in the event of incontinence, the ability to maintain a reasonable level of personal hygiene without the stand-by assistance of another person.

(g) eating: the ability to get nourishment into the body by any means once it has been prepared and made available to you, without the stand-by assistance of another person.

"Adult Day Care" means care provided by an Adult Day Care Facility.

"Adult Day Care Facility" is a facility that provides a community-based group program offering health, social and related support services for impaired adults; operates under state licensing laws and any other laws that apply.

"Assessment" means an interview of you done by us or our representative to assist in the determination of your insurability at the time of application, or the determination of Loss of Functional Capacity or Cognitive Impairment at the time of your claim.

"Cognitive Impairment" means that you have suffered a deterioration or loss in your intellectual capacity which requires another person's assistance or verbal cueing to protect yourself or others as measured by clinical evidence and standardized tests which reliably measure your impairment in the following areas:

· Your short or long term memory;

· Your orientation as to person (such as who You are), place (such as Your location), and time (such as day, date, and year);

· Your deductive or abstract reasoning.

5

Such loss in intellectual capacity can result from Alzheimer's disease or similar forms of senility, irreversible dementia or Advanced Age.

"Effective Date" is the date shown in the Policy Schedule on page 3. Coverage takes effect on the Effective Date provided the first Modal Premium is paid.

"Elimination Accumulation Period". We do not require that an Elimination Period longer than 30 days be consecutive days. However, we do require that an Elimination Period longer than 30 days occur entirely during a limited time span, called the Elimination Accumulation Period. The Elimination Accumulation Period is equal to 3 times the Elimination Period. The number of days in the Elimination Accumulation Period is shown in the Policy Schedule.

"Elimination Period" means a period of either:

(a) 30 or less consecutive days during which you suffer a covered Loss of Functional Capacity or covered Cognitive Impairment and you are receiving services in a Nursing Facility or Residential Care Facility for which no benefit is payable, or 30 consecutive days during which you suffer a covered Loss of Functional Capacity or covered Cognitive Impairment and you are receiving Professional Home Care and no benefit is payable. Each calendar week that you receive at least one day of Professional Home Care will be counted as seven days towards completing the Elimination Period. If you continue to remain at home or another similar place and do not receive Professional Home Care for at least one day within a calendar week, the Elimination Period will begin again.

A separate Elimination Period will apply to each covered loss. However, each covered loss that is separated from the other by less than 6 months will be considered to be the same covered loss and not subject to a new Elimination Period; or

(b) greater than 30 cumulative days during which you suffer a covered Loss of Functional Capacity or covered Cognitive Impairment and you are receiving services in a Nursing Facility or Residential Care Facility and for which no benefit is payable, or during which you suffer a covered Loss of Functional Capacity or covered Cognitive Impairment and you are receiving Professional Home Care and no benefit is payable. Each calendar week that you receive at least one day of Professional Home Care will be counted as seven days towards completing the Elimination Period. An Elimination Period longer than 30 days must be satisfied by you only once during your Lifetime.

The number of days in the Elimination Period is shown in the Policy Schedule.

"Home Care Provider" is:

(a) an organization that, or a nurse or other professional who, is licensed or certified by the appropriate licensing agency of the state where Professional Home Care will be provided; or certified as a home health care organization as defined under Medicare;

(b) any other organization that meets all of the following tests:

   • primarily provides nursing care and other therapeutic services;

6

- has standards, policies and rules established by a professional group which is associated with the organization;

- includes at least one doctor and one registered nurse;

- maintains a written record of care on each patient; and

- includes a plan of care and record of services provided;

(c) a skilled or unskilled person appropriately licensed by the state, if required, to provide services under a Plan of Care developed by a Physician or a multi-disciplinary team under medical direction; or

(d) a similar organization approved by us.

"Home Office" means the UNUM Life Insurance Company of America, 2211 Congress Street, Portland, Maine 04122.

"Homemaker Services" means assistance necessary to or consistent with your ability to remain living in your home.

"Hospice Facility" is a facility that provides a formal program of care for terminally ill patients whose life expectancy is less than 6 months, provided on an inpatient or outpatient basis and directed by a physician or multi-disciplinary team under medical direction. It must be licensed, certified or registered in accordance with state law.

"Lifetime Maximum Benefit Amount" means the total dollar amount of benefits that will be paid under the Policy. The Lifetime Maximum Benefit Amount is shown in the Policy Schedule.

"Loss of Functional Capacity" means that you are unable to perform 2 or more ADLs because of Sickness, Injury or Advanced Age.

"Monthly Benefit Amount" means your monthly Nursing Home, Residential Care Facility or Professional Home Care Benefit Amount shown in the Policy Schedule.

"Nursing Facility" means:

(a) a facility, or a distinctly separate part of a hospital, that provides skilled or intermediate nursing care and custodial care and operates under state licensing laws and any other laws that apply; or

(b) any other facility that meets all of the following tests:

(1) is operated as a health care facility under applicable state licensing laws and any other laws;

(2) primarily provides nursing care under the orders of a Physician;

(3) operates under the supervision of a registered nurse or a licensed vocational nurse;

(4) is regularly engaged in providing room and board and continuously provides 24-hour-per-day nursing care of sick and injured persons;

(5) maintains a daily medical record of each patient who must be under the care of a Physician;

(6) is authorized to administer medication to patients on the order of a Physician; and

7

(7) is not, other than incidentally, a home for the mentally retarded, the mentally ill, the blind or the deaf, a hotel, a domiciliary care home, a residence, or a home for alcoholics or drug abusers; or

(c) a similar facility approved by us.

"Nursing Home Benefit" means your monthly Nursing Home Benefit Amount shown in the Policy Schedule.

"Personal Care" means assistance with ADLs, including the instrumental ADLs, provided by a skilled or unskilled person under a Plan of Care. The instrumental ADLs include using the telephone, managing medications, moving about outside, shopping for essentials, preparing meals, laundry and light housekeeping.

"Plan of Care" means a program of treatment or care. It must be developed by your physician or multi-disciplinary team and approved in writing by your physician before the start of home care services. The Plan of Care is subject to updating in writing no more often than every 60 days. The insured will be responsible for submitting:

(a) the physician approved Plan of Care; and

(b) the updates of such plan.

"Professional Home Care" means services provided under a Plan of Care and include:

(a) occupational, physical, respiratory or speech therapy;

(b) nursing care services provided by a registered nurse or a licensed vocational nurse;

(c) services provided by a medical social worker or home health aide;

(d) Homemaker Services;

(e) Personal Care; or

(f) Hospice services.

Professional Home Care does not include services performed by your family members either directly to you or through a Home Care Provider or an Adult Day Care Facility. Your family members include your spouse, children, parents, sisters, brothers, grandparents or grandchildren, or persons related to you by marriage.

Professional Home Care services do not include services by providers that are not licensed or certified, when such services require licensing or certification under the laws of the states where the services are provided.

"Professional Home Care Benefit" means your monthly Professional Home Care Benefit Amount shown in the Policy Schedule.

"Residential Care Facility" means:

(a) A facility that is primarily engaged in providing ongoing care and services in one location and meets all of the following tests:

(1) provides 24 hour a day care; and

(2) provides custodial services and personal care assistance to support needs as a result of the Loss of Functional Capacity or Cognitive Impairment; and

(3) has night supervision to the extent required by law; and

8

(4) provides 3 meals a day, including special dietary requirements; and

(5) operates under state licensing laws and any other laws that apply; and

(6) is not, other than incidentally, a home for alcoholics or drug abusers, or a hotel; or

(b) a similar facility approved by us.

NOTE: These requirements are typically met by Residential Care Facilities that are either free standing facilities or part of a life care community. In general, they are not met by individual residences, boarding homes, or independent living units.

"Respite Care" means short-term or periodic care which is required to maintain your health or safety and to give temporary relief to your primary informal caregiver from his or her caregiving duties.   Respite Care can be provided in your home, a Nursing Facility, a Residential Care Facility, an Adult Day Care Facility, or a similar facility approved by us.

"Stand-by Assistance" means you require the presence of another human being to ensure that all or part of an ADL may be completed or to ensure your safety. Stand-by assistance may also mean that in order to accomplish an ADL, you need verbal cueing.

"You" and "Your" refer to the Insured named on Page 3. It is the person whom we are insuring. The Insured cannot be changed.

## BENEFITS

Monthly Benefit

After you satisfy the Elimination Period, we will pay you:

(a) the Nursing Home Benefit Amount if you suffer a covered Loss of Functional Capacity or covered Cognitive Impairment and are receiving services in a Nursing Facility, or

(b) the Residential Care Facility Benefit Amount if you suffer a covered Loss of Functional Capacity or covered Cognitive impairment and are receiving services in a Residential Care Facility.

The Residential Care Facility Benefit Amount will be the greater of:

(1) 60% of the Nursing Home Benefit Amount; or

(2) the Professional Home Care Benefit percentage shown on the Policy Schedule.

(c) the Monthly Professional Home Care Benefit if you choose to receive care anywhere other than a Nursing Facility or Residential Care Facility and are receiving Professional Home Care Services. This care can be provided at any type of facility, such as an Adult Day Care Facility, a Hospice Facility, or your home by a Home Care Provider. You must give us proof indicating days of Professional Home Care services provided to you before a benefit will be paid.

9

We will send the benefit payments to you each month. If you are eligible for benefits for a period that is less than one month, we will pay 1/30th of the net monthly payment for each day that you suffer a covered Loss of Functional Capacity or covered Cognitive Impairment and are receiving services. Benefit payments will cease as provided in the "Termination of Benefits" section of this policy In no event will the benefits paid under this policy exceed the Maximum Benefit Amount shown in the Policy Schedule on Page 3.

### Bed Reservation Provision

If your stay in a Nursing Facility or Residential Care Facility is interrupted because you are hospitalized and you are receiving a benefit, we will continue to pay you the Monthly Benefit Amount if a charge is made to reserve your Nursing Facility or Residential Care Facility accommodations. Such benefit will count toward the Lifetime Maximum Benefit Amount.

If your stay is interrupted while you are completing your Elimination Period, such days will be used to help satisfy this period.

Covered Bed Reservation days will be limited to 31 days per calendar year.

### Respite Care Benefit

If you suffer a covered Loss of Functional Capacity or covered Cognitive Impairment but Professional Home Care Benefits have not yet become payable, we will make payments to you for each day you receive Respite Care for up to 15 days each calendar year. The amount of your daily payment will equal 1/30th of your Monthly Professional Home Care Benefit Amount. You do not have to complete an Elimination Period for Respite Care

payments to become payable. Care can be provided to you by:

(a) a formal caregiver, such as a Home Care Provider, a registered nurse, a licensed vocational nurse in:

- your home,
- nursing home,
- Residential Care Facility,
- Adult Day Care Facility,
- a similar facility approved by us; or

(b) an informal caregiver, such as your friends or relatives.

Other than for premium waived during the Elimination Period according to the terms of the policy, premium will not be waived while you are receiving a payment for Respite Care.

Respite Care Benefits will count toward the Maximum Benefit Amount, and will end when the Lifetime Maximum Benefit Amount has been reached.

### Benefit Increase Provision - 5% Simple Inflation Protection

Your Monthly Benefit will increase each year on the Policy Anniversary by 5% of the Monthly Benefit in effect on that Policy Anniversary. Increases will be automatic and will occur regardless of your health and whether or not you have suffered a covered Loss of Functional Capacity or covered Cognitive Impairment. Your premium will not increase due to automatic increases in your Monthly Benefit  In no event will the total Monthly Benefit be more than 200% of your original Monthly Benefit.  Your Lifetime Maximum Benefit Amount will also increase by 5%.

10

**Exhibit A**

**63**

## How To File a Claim

You must give us written <u>notice</u> of claim within 30 days of the date of Loss of Functional Capacity or Cognitive Impairment. If it is not possible for you to give us notice within this time limit, it must be given as soon as reasonably possible.

We will send you our initial claim forms when we receive your written notice of claim. If you do not receive our claim forms within 15 days after written notice of claim is sent, you can send us written proof of claim without waiting for the forms.

You must give us initial <u>proof</u> of claim no later than 90 days after the date of Loss of Functional Capacity or Cognitive Impairment.

You must give proof of continued Loss of Functional Capacity or Cognitive Impairment:

(a) at intervals requested by us; and

(b) within 90 days of our request.

If it is not possible for you to give proof within these time limits, it must be given as soon as reasonably possible. However, proof of claim must be given no later than one year after the time proof is otherwise required.

In addition to claim forms, we may, at our expense and from time to time during the continuance of your loss, require one or more of the following as proof of claim:

(a) an Assessment;

(b) a Physician's statement and/or copies of relevant medical records from any Physician or health care provider involved in your care;

(c) an independent medical examination.

We reserve the right to select the Physician to perform the independent medical examination, and to request additional information necessary to our claim determination from you, your Physician, or other health care providers.

The proof must cover:

(a) the date the Loss of Functional Capacity or Cognitive Impairment occurred;

(b) the cause of the Loss of Functional Capacity or Cognitive Impairment;

(c) the extent of the Loss of Functional Capacity or Cognitive Impairment; and

(d) such other proof as we may deem necessary.

## When Claims are Paid

When we receive proof of claim, benefits payable under the policy will be paid before the end of the month for each day for which you were entitled to benefits during the prior month.

## To Whom Claims Are Paid

All benefits are payable directly to you unless you have requested in writing that payment be made otherwise.

If you die while you are eligible to receive benefits, we will pay any accrued benefit to your estate. At our option, any remaining benefit of $1,000 or less may be paid to an alternative payee if either of the following is true:

11

(a)  such benefit is payable to your estate, or

(b)  such benefit is payable to any person who is a minor or otherwise not competent to give a valid release.

The alternative payee must be a person who we feel is entitled to receive the benefit. Also, the alternative payee must be related to you by blood or marriage.  Any such payments made in good faith will fully discharge us to the extent of such payment.

## Claim Overpayment

If for any reason, benefits have been paid for a period for which you were not entitled to benefits, repayment of the overpayment must be made to us within 45 days of notice to you. Any amounts not repaid may be recovered by us by offsetting against any amounts otherwise payable to you under this Policy, or by other reasonable means.

## Termination of Benefits

Your benefits will cease on the earliest of:

(a)  the day after you cease to suffer a covered Loss of Functional Capacity or covered Cognitive Impairment;

(b)  the day after the Lifetime Maximum Benefit Amount has been paid;

(c)  the day after you die.

Termination of coverage under any condition will not prejudice any payable claim which begins prior to termination.

## Plan Exclusions

We will not provide benefits for:

(a)  a loss which is caused by a war or any act of war, whether declared or undeclared, that occurs while your insurance is in force;

(b)  a loss which is caused by intentionally self-inflicted injuries or attempted suicide;

(c)  a loss which is caused by or results from the commission or attempted commission of a felony by you;

(d)  a loss you sustain or contract in consequence of being intoxicated or under the influence of any narcotic unless administered on the advice of a physician;

(e)  a loss which is caused by a psychological, psychiatric, or mental condition including depression, generalized anxiety disorders, personality disorders, schizophrenia or manic depressive disorders whether treated by drugs, counseling, or other forms of therapy, and irrespective of cause.

This policy does cover losses from conditions that are physical in nature, such as Parkinson's disease, Alzheimer's disease, multi-infarct dementia, brain injury, brain tumors, or other conditions not listed in the first sentence of this paragraph (e), involving structural alterations of the brain;

(f)  a period during which you are outside of Hawaii, Alaska, and the continental United States for longer than 30 days;

(g) a period in which you are confined in a hospital, other than if you are confined to a Nursing Facility that is a distinctly separate part of a hospital.

## PREMIUMS

### Waiver of Premium

After you have satisfied your Elimination Period, we will waive premium payment during any period for which benefits are payable. Any premium which you had paid to us during your Elimination Period will be refunded to you on a pro rata basis.

The pro rata refund will be calculated based on the number of days in your Elimination Period.

If the Monthly Benefit is no longer payable, or if you do not receive Professional Home Care for a period of 30 consecutive days, you must resume premium payments. We will notify you of the amount of your next premium payment and the date it is due.

### Grace Period

The Grace Period is the 31 consecutive days that begin with the day a premium is due. We will keep this policy in effect and continue coverage during that time. If the premium is not paid during those 31 days, this policy will lapse. However, lapse of the policy will not prejudice any payable claim for a covered loss which begins prior to policy lapse.

The first premium is due and payable on the Effective Date of the policy. There is no Grace Period for the first premium.

### Reinstatement

If this policy terminates because a premium is not paid by the end of the Grace Period, you may apply to reinstate this policy at any time until the first unpaid premium is six months overdue.

In order to reinstate this policy, three requirements must be met. They are:

(a) you must complete a reinstatement application;

(b) we must approve that reinstatement application; and

(c) you must pay all unpaid premium.

If we approve the reinstatement application, we will reinstate this policy on the approval date. If we issue a conditional receipt/prepayment agreement and do not approve or disapprove the reinstatement application within 45 days from the date of the prepayment agreement, we will reinstate this policy on that 45th day.

If we accept premium without a rein-statement application, this policy will be reinstated.

If this policy is reinstated, it will only cover loss resulting from:

(a) Injury that occurs on or after the date this policy is reinstated; or

(b) Sickness which begins more than 10 days after this policy is reinstated.

It WILL NOT cover any Injury or Sickness which is excluded by name or description in this policy.

13

**Exhibit A**

**66**

## Refund of Premium After Death

If you die while insured under this policy, we will refund any pro rata portion of your premium paid covering the period after your death. We will make the refund within 30 days after we receive written notice of your death. Payment will be made to your estate.

# GENERAL PROVISIONS

## The Contract

This policy, including your attached application and any attached papers, represents the entire contract between you and us. Statements by agents or brokers are not part of our contract. Only an executive officer of this Company can approve a change in this policy. The approval must be in writing and be endorsed on or attached to this policy. No one else can change this policy or waive any of its provisions.

Unless we tell you something else, years, months and anniversaries that we refer to are calculated from the Policy Date shown on Page 3.

## Statements

In the absence of fraud, all statements you make in applying for this coverage are considered representations and not warranties (absolute guarantees).

No statements by you will be used to deny a claim unless a copy of your statements has been given to you.

## Legal Actions

No one may start legal actions to recover on this policy until 60 days after written Proof of Loss has been given to us. Legal action must be started within three years after the written Proof of Loss is required to be furnished.

## Incontestable

After two years from the policy's Effective Date, only fraudulent misstatements in your application may be used to contest this policy. If this policy is reinstated, the contestable period will be two years from the reinstatement date or the date of the last application if no application is received at the time of reinstatement.

"Contest" means that we question the validity of coverage under this policy by letter to you. This contest is effective on the date we mail the letter and refund the premium to you.

There is no time limit to contest this policy for fraudulent misstatements.

## Conformity with State Statutes

If any provision of this policy conflicts with the statutes of the state where you reside on the Effective Date of that provision, it is amended to conform with the minimum requirements of those statutes. Premiums may be changed to reflect these policy requirements.

## Misstatement of Age

If your age has been misstated, any benefit payable will be changed to the amount which the premium paid would have bought for the correct age.

If we accept premium for coverage which we would not have issued or which would have

14

ceased according to the correct age, our only liability is to refund the premium for the period not covered.

## Pre-Existing Conditions

We will not reduce or deny any claim under this policy because a Sickness or Injury had existed before the policy's Effective Date.

## Nonparticipating; Dividends Not Payable

This policy does not participate in our profits or surplus earnings; and no dividends will be paid at any time.

## Owner

You own this policy. You have all the rights and privileges granted by this policy while it is in effect. Some of your ownership rights are:

(a) the right to continue or terminate this policy;

(b) the right to name someone else (a Loss Payee) to receive the benefits of this policy;

(c) the right to suspend this policy while you are in military service; and

(d) the right to assign any or all rights under this policy.

## Loss Payee

If you decide to have someone else receive policy benefits, you must notify us in writing on a form satisfactory to us. The notice will be effective when we receive it at our Home Office.

## Assignment

You may assign any or all ownership rights to someone else. The assignment must be in writing and must specify the rights which are assigned and for how long. The Loss Payee is not changed by an assignment unless the assignment specifically names a new Loss Payee. When an assignment is in effect, "you" and "your" refer to the assignee in provisions which describe ownership rights.

No assignment is binding on us until the original or an acceptable copy is received at our Home Office. We are not responsible for the validity or effect of any assignment.

15

## I.   Personal Profile

Applicant's Name (Please Print Last, F__ Middle)   _Don Rubens S.___

Occupation   _Retired_

Address (Street, Apartment No., City, State, Zip)   _Palm Desert, CA 92211___

Telephone (Include Area Code)   ■■■■

| Social Security No. | Date of Birth | Height | | Weight | |
|---|---|---|---|---|---|
| | _/30_ | _5_ Ft. _8½_ Ins. | | _155_ Lbs. | |

☑ Male   ☐ Female   ☐ Single   ☑ Married

| Yes | No | If married, is your spouse: |
|---|---|---|
| ☑ | ☐ | Applying for Long Term Care coverage at this time? or |
| ☐ | ☑ | Currently covered by UNUM for Long Term Care coverage? |

If yes, please list policy number: _N/A_

## II.   Insurance Information

| Yes | No | (Please check Yes or No) |
|---|---|---|
| 1. ☐ | ☑ | Are you currently covered by Medicaid? |
| 2. ☐ | ☑ | Are you currently receiving disability income benefits or long term care benefits? |
| 3. ☐ | ☑ | Do you have another long term care insurance policy or certificate in force, including coverage under a health care service contract or health maintenance organization contract? |

If yes, provide policy number: _N/A_

| 4. ☐ | ☑ | Have you had another long term care insurance policy or certificate in force during the last 12 months? |

If yes, with which insurance company? _N/A_

If the policy lapsed, when did it lapse? _N/A_

| 5. ☐ | ☑ | Do you intend to replace any of your medical health coverage with this UNUM policy? |

If yes, name of insurance company: _____

Policy Number: _N/A_   Type of Plan: _N/A_

## III.   Medical History (Part A)

Primary Physician   (Name and Title)   _Dr. Alan Kisselstein_
_Eisenhower Medical Center_

Telephone (Include Area Code)   _(619) 346-7872_

Address (Street, City, State, Zip)
_39000 Bob Hope Drive - Wright Bldg_
_Rancho Mirage, CA 92270_

_1/97 Routine Annual Exam_
_Labs - Blood - X-Ray, All O.F._

_Dr. Peter Schulze_   _(619) 346-8771_
_Eisenhower Medical Center_
_39000 Bob Hope Drive - Wright Bldg_
_Rancho Mirage, CA 92270_

_Inguinal_
_2/10/97 L/Hernia_
_Full Recovery Expected_

1220-93                     1 6                (4/95)      **LAB 034386**

**Exhibit A**
**69**

## III.   Medical History   (Part C)

Please answer all questions. Do not change any of the wording or this application will be void.

Yes / No   *Please check yes or no for each question*

1.  ☑ ☐ Have you gained or lost more than ten pounds in the last 12 months?
2.  ☐ ☑ Have you used tobacco in the last 12 months?
3.  ☐ ☑ Do you need human assistance of any kind to perform everyday activities such as bathing, continence, dressing, eating, using the toilet or transferring (for example from a chair to your bed)?
4.  ☐ ☑ Do you use any special medical equipment or appliances such as a walker, cane, wheelchair, catheter, oxygen tank or artificial limb?
5.  ☐ ☑ Have you ever been advised to discontinue the use of alcohol because of health reasons; been arrested in connection with the use of alcohol or drugs; or been advised to seek counseling for alcoholism or drug abuse?
6.  ☐ ☑ Have you ever been denied coverage for medical insurance, disability insurance, long term care insurance, nursing home insurance, or life insurance? If yes, please explain.

In the past 5 years, have you ever had, been told you had, or been treated for

Yes   No   *Please check yes or no*

7.  ☐ ☑ A disorder of the heart or circulatory system, heart attack, high blood pressure, or chest pain;
8.  ☐ ☑ A psychological, psychiatric or mental disorder, mental illness, anxiety, or depression;
9.  ☐ ☑ A disorder of the stomach, liver, pancreas, gallbladder, intestines or rectum; cirrhosis, ulcers or significant weight loss) — SEE #1
10. ☐ ☑ A neurological disorder including Parkinson's disease, multiple sclerosis, Alzheimer's disease, stroke/TIA, paralysis, fainting, mental retardation, convulsions or epilepsy;
11. ☐ ☑ A disorder of the urinary or reproductive systems, kidney disease, cystitis or prostate problems;
12. ☐ ☑ Glandular problems, diabetes, or thyroid problems;
13. ☐ ☑ Any conditions of the lungs or respiratory tract, emphysema, chronic cough, shortness of breath, tuberculosis, spitting up blood;
14. ☐ ☑ Cancers, tumors, leukemia, Hodgkin's disease, lymphoma;
15. ☐ ☑ Bone or joint disorder, arthritis, gout, osteoporosis, amputation, sciatica, slipped disc;
16. ☐ ☑ Any recurrent infections, skin diseases, pressure sores or skin ulcers;
17. ☐ ☑ AIDS or the AIDS-related Complex(ARC);
18. ☐ ☑ A disorder or disease of the eyes or ears including blindness, balance disturbance, cataracts, glaucoma or hearing loss;
19. ☐ ☑ Any injuries due to falls or other trauma.

*If you answered yes to any of the previous questions, please provide the name of any prescribed medications you have taken and the name of the name, address and telephone number of the prescribing physician:*

| Question Number | Name of Medication | Name, Address & Phone No. of Prescribing Physician |
|---|---|---|
| 1 | Controlled Intentional Weight Loss | 15 LBS lost over a 12 mo period — No Physician or Rx for better health — |

NO PRESCRIBED Medications

17

LAB 034386

Exhibit A

70

## IV.    Coverage (Check applicable boxes for each option.)

| | Advantage I | Advantage II |
|---|---|---|
| 1.  Coverage Type: | ☐ Nursing Home Only<br>☑ Nursing Home w/Professional Home Care<br>☐ Nursing Home w/Home Care | ☐ Nursing Home Only<br>☐ Nursing Home w/Professional Home Care<br>☐ Nursing Home w/Home Care |
| 2a.  Benefit Amount:<br>(minimum of $1,500 amounts are available in increments of $100) | Nursing Home   $ 3000<br>Home Care %   ☐ 50 %<br>                    ☐ 75 %   ☑ 100% | Nursing Home   $ _____<br>Home Care      $ _____<br>Home Care Benefit Amount cannot exceed Nursing Home Benefit Amount |
| 2b.  Elimination Period (Days) | ☐ 30   ☐ 60   ☑ 90   ☐ 180   ☐ 365 | ☐ 20          ☐ 100 |
| 2c.  Benefit Period (Years) | ☐ 2   ☑ 3   ☐ 6   ☐ Life | Nursing Home ☐ 1  ☐ 2  ☐ 4  ☐ 6  ☐ Life<br>Home Care     ☐ 1  ☐ 3  ☐ 5 |
| 3a.  Optional Provisions | Inflation Protection:<br>None            ☐<br>5% Simple    ☑ 2x   ☐ No Cap<br>5% Compound ☐ 2x   ☐ No Cap<br>Paid Up   ☑ No   ☐ Yes | Inflation Protection:<br>None            ☐<br>5% Simple    ☐ No Cap<br>5% Compound ☐ No Cap<br>Paid Up          Not Available |
| 3b.  Special Request | ☑ Date to Save Age:<br>☐ Special Policy Date:<br>☐ Other | ☐ Date to Save Age:<br>☐ Special Policy Date:<br>☐ Other |

### 4.    Payment/Billing:

a)   Who Will Pay Premiums?
☑ Proposed Insured      ☐ Employer      ☐ Other

b)   Send Bills To
☑ Proposed Insured      ☐ Employer      ☐ Other
If Employer or Other:
Name: _____
Street: _____ Apt/Suite: _____
City: _____ State: _____ Zip: _____

c)   How Often Do You Want To Be Billed?
☑ Annually   ☐ Semi-Annually   ☐ Quarterly   ☐ Monthly (flexbill or A.P.P. only)
*If A.P.P., complete an Authorization and Agreement for Automatic Payments form

d)   If Ownership Beneficiary Other Than Proposed Insured, Provide Name & Address
Name: _____
Street: _____ Apt/Suite: _____
City: _____ State: _____ Zip: _____

e)   Add to existing LTC Bill?
☐ Yes   ☐ No
If yes, details: _____

વ8

LAB 034386

**Exhibit A**
**71**

## V.       Agreement

I have read this application and I understand that:

UNUM Life Insurance Company of America (UNUM) will rely on the information provided in this application and any supplemental applications, medical exams or tests and other questionnaires to determine whether to provide the coverage I have requested. All these documents shall form a part of my contract of insurance.

No agent, broker, medical examiner or other person except an authorized employee of UNUM may
* change or waive questions asked or answers given in this application or in my medical examination;
* determine if I am eligible for coverage;
* promise that I will be issued coverage;
* change or waive any rights or requirements of UNUM.

I agree that:

Payment of premium is my responsibility. If any other person collects, pays or forwards any part of the premium for this coverage, they act as my agent and not an agent for UNUM. If UNUM does not receive premium as due, the policy will lapse in accordance with the provisions of the policy. No coverage will be effective until UNUM has approved my application and received the required premium.

All the statements I have made in this application are true, complete and correctly recorded to the best of my knowledge and belief. Any false statement or misrepresentation in this application may result in loss of coverage under this policy.

Signed at __Palm Desert, Ca__    on __February 19__ , 19 __97__
      City         State

X _____      N/A
Signature of Proposed Insured      Signature of Applicant if other than Proposed Insured

_____
Signature of Broker

## VI. Authorization

I authorize any hospital, physician, medical practitioner, clinic, other medical or medically related facility, the Medical Information Bureau, pharmacy, insurance company or government agency to disclose or furnish to UNUM Life Insurance Company of America (UNUM), its subsidiaries or representatives, any information with respect to any illness (including mental illness, drug or alcohol abuse or injury), medical history, consultations, prescriptions, treatments or benefits; and I authorize them to provide copies of all applicable records that may be requested

The Information provided to UNUM, its subsidiaries or representatives is to be used to determine my eligibility for insurance coverage and to evaluate a claim for benefits during the time this authorization is valid.

I agree that this authorization shall be valid for 2 1/2 years from the date it is signed. I have read this authorization and understand that I may receive a copy and that a photocopy of this shall be as valid as the original. I have also read and received a copy of the Notice of Information.

Caution:  If your answers on this application are misstated or untrue, UNUM may have the right to deny benefits or rescind your policy.

X _____      2/19/97
Signature of Applicant           Date

19

LAB 034386

**Exhibit A**

_72

# Exhibit B

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN DON,<br>Individually, and on behalf of those persons similarly situated,<br><br>        Plaintiff,<br><br>vs.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA; WEDNER INSURANCE GROUP, INC. dba THE MORTON WEDNER INSURANCE AGENCY, and DOES 1-30,<br><br>        Defendants. | Case No. _____<br><br><br>**AFFIDAVIT OF RONALD L. LUCAS IN SUPPORT OF DEFENDANT UNUM LIFE INSURANCE COMPANY OF AMERICA'S NOTICE OF REMOVAL** |

COUNTY OF CUMBERLAND    )
                            )
STATE OF MAINE             )

I, Ronald L. Lucas, being first duly sworn, depose and state as follows:

      1.      This affidavit is based on my personal knowledge, and my review of business records of defendant Unum Life Insurance Company of American ("Unum"), and is submitted in support of Unum's Notice of Removal in the above-referenced case (the "Case"). I am over the age of 21 and otherwise competent to testify to the statements set forth in this affidavit.

      2.      I am a Vice President and actuary on the Finance team and have been employed by Unum Group, the parent corporation of defendant Unum, for approximately 11 years. I am a Fellow of the Society of Actuaries and a Member of the American Academy of

**Exhibit B**
**73**

Actuaries. I meet the Academy's qualification standards for making this statement of actuarial opinion. My responsibilities include pricing of Unum's group and individual long term care products, including analysis of premiums paid for those products. I am familiar with the Unum long term care products listed in Paragraph 15 of plaintiff's Complaint in this Case and the database we use to assist us in administering these products.

3.     At the time the Complaint in this Case was filed, at the time of removal, and at all intervening times, defendant Unum was, and is, a corporation organized under the laws of the State of Maine with its principal place of business in Portland, Maine.

4.     I have reviewed plaintiffs' Complaint in this Case and understand that the plaintiff purports to represent a putative class consisting of: (1) "all current and former California insureds who suffered a covered loss and received benefits under the UNUM Long Term Care Policies and the annual increase was applied to the amount of the benefits remaining and not to the Lifetime Maximum Benefit Amount" ("Subclass I"); and (2) "all current and former California insureds under the UNUM Long Term Care Policies who have not yet suffered a covered loss or received benefits but will be faced with Defendant UNUM's unreasonable and wrongful policy interpretation, as it relates to the application of the annual increase to the amount of benefits remaining, if and when they do make a claim, based on Defendant UNUM's uniform erroneous interpretation to the calculation of benefits" ("Subclass II" and, together with Subclass I, the "Class"). Compl. ¶¶ 7-8.

5.     I was asked to review Unum's business records and identify the total number of individuals likely meeting the Complaint's definitions of Subclass I, Subclass II, and the putative Class (disregarding for these purposes any and all of Unum's defenses). In order to accomplish this task, I began by searching Unum's proprietary database of all active or terminated insureds nationwide. I then narrowed that search to individuals that are or previously were covered by one or more of the Unum long term care products listed in Paragraph 15 of plaintiff's Complaint where the product was sitused to the State of California. Next, I excluded individuals who did not purchase inflation protection, as such individuals would not meet the Complaint's definition of the Class. I then excluded individuals who purchased an unlimited benefit option, as such individuals would not have suffered an injury under plaintiff's theory.

2

Finally, I excluded individuals who reached their 2x Lifetime Maximum Benefit inflation growth cap as stated in their policy before suffering a covered loss or receiving benefits, as such individuals also would not have suffered an injury under plaintiff's theory.

6.      In order to identify individuals meeting the definition of Subclass II, I took the results of my search described in Paragraph 5 and further limited my search to individuals who have not yet incurred a covered loss or received benefits.

7.      In order to identify individuals meeting the definition of Subclass I, I took the results of my search described in Paragraph 5 and further limited my search to individuals who incurred a covered loss and received less in actual benefits from Unum than they would have received under plaintiff's interpretation of the long term care products, as described in the Complaint.

8.      As a result of the my analysis described in Paragraphs 5-7 above, I have determined that there are approximately 104 individuals in Subclass I and approximately 49,535 individuals in Subclass II, for a total of approximately 49,639 individuals in the purported putative Class.

9.      I have reviewed plaintiffs' Complaint in this Case and understand that, on behalf of Subclass II, plaintiff seeks, among other relief, a full repayment of all of the premiums paid by the members of Subclass II.

10.      I was asked to calculate the total amount of premiums paid by the members of Subclass II. To accomplish this task, I took the individuals meeting the definition of Subclass II (identified as described in Paragraphs 5-6 above) and multiplied the total length of coverage (reflected in years and fractional years) by the annual premium amount. To determine the total length of coverage, I determined, for each member of Subclass II, the difference (reflected in years and fractional years) between the date coverage began, or the "insured date," and the date coverage terminated (if coverage had terminated) or June 1, 2013 (if coverage has not been terminated). To determine the annual premium amount, I used the minimum annual premium amount paid by each individual over the life of their policy. This approach is conservative because, over time, premiums have increased with respect to several of the long

3

term care products at issue in this case.  Based on the foregoing analysis, I determined that the individuals meeting the Complaint's definition of Subclass II paid a total of $304,251,090 in premiums.

11.     I have reviewed plaintiffs' Complaint in this Case and understand that, on behalf of Subclass I, plaintiff seeks, among other relief, damages measured as the difference between (a) the amount that the members of Subclass I actually received in benefits from Unum, and (b) the amount that the members of Subclass I would have received if, after such individuals suffered covered losses under their policies or began receiving benefits, Unum had applied the 5% "Benefit Increase Provision" to the "Lifetime Maximum Benefit Amount" (as defined and stated in the policy) rather than the amount of benefit remaining under the policy.

12.     I was asked to compute damages to Subclass I under plaintiff's theory.  To accomplish this task, I began with the individuals meeting the definition of Subclass I (identified as described in Paragraphs 5 and 7 above).  Next, for each such individual, I computed the difference between what the individual actually received in benefits from Unum and what the individual would have received in benefits from Unum under plaintiff's interpretation of the policy.  I then summed the resulting amounts for all of the members of Subclass I.  Based on the foregoing analysis, I determined that the individuals meeting the Complaint's definition of Subclass I suffered a total of $1,731,587 in damages under plaintiff's theory.

FURTHER AFFIANT SAYETH NOT.

*Ronald L. Lucas*

Ronald L. Lucas

Sworn to and subscribed
before me this _21st_ day
of June, 2013, by Ronald
L. Lucas, who is personally
known to me and who did
take an oath.

*Susan A. Carter*

Notary Public

SUSAN A. CARTER
NOTARY PUBLIC, MAINE
MY COMMISSION EXPIRES OCTOBER 20, 2016

4

**Exhibit B**
**76**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Dale S. Fischer and the assigned discovery Magistrate Judge is Victor B. Kenton.

The case number on all documents filed with the Court should read as follows:

## CV13- 4502 DSF (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=================================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [✓] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

**CIVIL COVER SHEET**

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

Ruben Don, Individually, and on behalf of those persons similarly situated

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

Unum Life Insurance Company of America; Wedner Insurance Group, Inc. dba The Morton Wedner Insurance Agency; and Does 1-30

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Allan A. Shenoi, Daniel J. Koes
Shenoi Koes LLP
175 South Lake Ave, Suite 202
Pasadena, CA 911010 (Tel. 626-792-2300)

Christopher Vader
Law Offices of Christopher C. Vader
83-632 B Highway 111; Suite 3
Indio, CA 92201 (Tel. 760-863-3840)

**(b) Attorneys** (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

Joshua E. Anderson
Sidley Austin LLP
555 West Street
Los Angeles, CA 90013 (Tel. 312-896-6000)

Joel S. Feldman, Lisa E. Schwartz
Sidley Austin LLP
1 S. Dearborn St.
Chicago, IL 60603 (Tel. 312-853 - 7000)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 2. U.S. Government Defendant

☐ 3. Federal Question (U.S. Government Not a Party)

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1. Original Proceeding

☒ 2. Removed from State Court

☐ 3. Remanded from Appellate Court

☐ 4. Reinstated or Reopened

☐ 5. Transferred from Another District (Specify)

☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☒ Yes ☐ No ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

28 U.S.C. §§ 1332, 1441, 1446 and 1453

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☒ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY: Case Number:** CV 13-4502-DSF(VBKx)

AFTER COMPLETING PAGE 1 OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED ON PAGE 2.

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County, California (Ruben Don) | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Orange County, California (Wedner Insurance Group, Inc) Tennessee and Maine (Unum Life Insurance Company of America) |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
**NOTE: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Riverside County, California (each of named Plaintiff's claims) | |

**\*Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
**Note:** In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR SELF-REPRESENTED LITIGANT):** _Joshua E. Anderson_   DATE: 6/21/13

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

**Key to Statistical codes relating to Social Security Cases:**

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |