1  SHENOI KOES LLP
   Allan A. Shenoi [CSB # 122566]
2  Daniel J. Koes [CSB # 192513]
   175 South Lake Avenue, Suite 202
3  Pasadena, California  91101
   Telephone:    626-792-2300
4  Facsimile:    626-792-2311

5  Law Offices of Christopher C. Vader
   Christopher Vader [CSB # 192753]
6  82-632 B Highway 111; Suite 3
   Indio, California  92201
7  Telephone: 760-863-3840
   Facsimile:    760-863-3842

8
   Attorneys for Plaintiffs
9
                    **UNITED STATES DISTRICT COURT**
10
                 **CENTRAL DISTRICT OF CALIFORNIA**
11

12
   MICHAEL DON, EXECUTOR OF          **CASE NO.: CV 13-4502-DSF (VBK)**
13 THE ESTATE OF RUBEN DON,
   LEROY LITTLE, by and through his   Assigned to: Hon. Dale S. Fischer
14 Guardian ad Litem TAMARA PELHAM,
   and CAROLYN JAN LITTLE,           Courtroom:  840
15 Individually, and as the Class
   Representatives on behalf of those insured   **CLASS ACTION**
16 similarly situated,

17              Plaintiff,            **THIRD AMENDED COMPLAINT**
                                      **for:**
18     vs.
                                      **1. Breach of Insurance Contract;**
19 UNUM GROUP, a Delaware Corporation;  **2. Insurance Bad Faith;**
   and UNUM LIFE INSURANCE COMPANY   **3. Fraud & Deceit;**
20 OF AMERICA, a Maine Corporation,   **4. Unfair Business Practices In**
                                      **   Violation Of California Business**
21              Defendants.           **   & Professions Code, Section**
                                      **   17200 et seq.; and**
22                                    **5. Declaratory Relief  Seeking**
                                      **   Declaration and Injunction**
23

24
                                      **DEMAND FOR JURY TRIAL**
25

26

27      Plaintiffs  MICHAEL  DON,  EXECUTOR  OF  THE  ESTATE  OF  RUBEN

28

                                 - 1 –

DON, LEROY LITTLE, by and through TAMARA PELHAM (who has contemporaneously petitioned this Court for an order to be appointed as LEROY LITTLE's Guardian ad Litem), and CAROLYN JAN LITTLE, individually, and as the Class Representatives on behalf of those insureds similarly situated, complain of Defendants UNUM GROUP and UNUM LIFE INSURANCE COMPANY OF AMERICA (hereinafter, collectively "Unum"), demand a trial by jury on all of Plaintiffs' claims except for the equitable and Unfair Competition Law ("UCL") claims, and on information and belief allege as follows:

## Jurisdiction & Venue

1.      On June 21, 2013, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Unum removed this case from state court based on the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2).  This case was initially filed in Los Angeles Superior Court.  Venue is proper in any county in California because Unum has not currently filed a statement with the California Secretary of State designating a principal office in California.  At all material times, including the present, Unum conducts business in Los Angeles County, California and Unum's primary operating center on the west coast is located in the City of Glendale, Los Angeles County, California.

## The Parties

2.      Plaintiff MICHAEL DON is the EXECUTOR OF THE ESTATE OF RUBEN DON ("MICHAEL DON").  On December 17, 2009, Ruben Don executed

an 18-page Immediate Durable Power of Attorney of Ruben Don, appointing his son

Michael Don as his Agent which stated:

"**Section 5.01        Power to Commence Court Proceedings**

My Agent may commence any court proceedings necessary to protect my legal rights and interests under this power of attorney including, but not limited to:

Actions for declaratory judgments from any court of competent jurisdiction interpreting the validity of this power of attorney and any of the acts sanctioned by this power of attorney; provided, however, that my Agent need not seek a declaratory judgment to perform any act sanctioned by this power of attorney;

Actions for mandatory injunctions requiring any person or entity to comply with my Agent's directions as authorized by this power of attorney;

Actions for actual and punitive damages and the recovery of costs and expenses of such litigation against any person or entity who negligently or willfully fails or refuses to follow my Agent's directions as authorized by this power of attorney."

3.      MICHAEL DON commenced this lawsuit on Ruben Don's behalf (in part) pursuant to this Power of Attorney, and after Unum regularly and routinely acknowledged throughout the handling of Ruben Don's claim that Plaintiff was Ruben Don's authorized and legally designated representative.  MICHAEL DON has been formally appointed Executor of Ruben Don's Estate.  (See Exhibit H).   On August 28, 2014, this Court issued an Order on the parties' joint stipulation to substitute Ruben Don with MICHAEL DON, EXECUTOR OF THE ESTATE OF RUBEN DON, as Plaintiff pursuant to Federal Rule of Civil Procedure 25(a).

- 3 –

(Exhibit I).

4.      Plaintiff LEROY LITTLE brings this lawsuit by and through TAMARA PELHAM, formerly known as Tamara Jo Niles and Tamara J. Little (who is contemporaneously petitioning this Court for an Order to be appointed as LEROY LITTLE's Guardian ad Litem for purposes of pursuing and prosecuting this litigation).  LEROY LITTLE and Plaintiff CAROLYN JAN LITTLE are husband and wife, and TAMARA PELHAM is their daughter.

5.      TAMARA PELHAM is the proposed class representative for the "in claim" Subclass Members, which consists of those insureds, like her Father LEROY LITTLE, who have claimed benefits under Unum's Long Term Care Policies but are still entitled to future policy benefits (the "in claim" Subclass Members).

6.      CAROLYN JAN LITTLE has yet to make an insurance claim with Unum and is the proposed class representative for the "future claim" Subclass Members which consists of those insureds who have yet to file an insurance claim (the "future claim" Subclass Members).

7.      MICHAEL DON is the proposed class representative for the "accrued damages" Subclass Members which consists of insureds who have an accrued cause of action for breach of contract against Unum (i.e., if and when all accrued damages are paid, the insureds will have received all benefits owed under the policy) (the "accrued damages" Subclass Members).

8.      Defendant Unum Life Insurance Company of America is a Maine

- 4 –

corporation, headquartered in Portland, Maine, and does business as a life and disability insurance company.  Defendant Unum Life Insurance Company of America is an admitted disability and life insurer in the States in which it issues policies and is subject to those State's rules, regulations, statutes and laws governing admitted insurers.  Defendant Unum Life Insurance Company of America is the insurer of Unum's long term care insurance policies.

9.     On December 30, 2014, this Court issued an Order stating Unum Life Insurance Company of America "may be treated as the agent and/or alter ego of Unum Group." (Exhibit J). Defendant Unum Group is the parent corporation of Defendant Unum Life Insurance Company of America.  Ronald L. Lucas, Unum Group's Vice President and actuary of Unum Group's Finance Team, and an employee of Unum Group, filed a declaration with this Court acknowledging that his responsibilities, as an employee of Unum Group, were to price Unum Life's long term care policies that are the subject of this action and perform analysis of premiums paid for those products, and that he uses Defendant Unum Life Insurance Company of America's database of long term care products to assist him "in administering these products."  As such, Defendant Unum Group exercises such control over Unum Life that Unum Life may be treated as the agent of Unum Group, or Unum Group acted as the actual, or ostensible authorized agent, or agent by ratification, or principal, servant, master, partner, alter ego, or joint venture of Defendant Unum Life Insurance Company of America, and in doing the things alleged, was acting within the course

- 5 –

and scope of such agency, employment, partnership or other relationship.  Each of the Defendants acted under the authority or control of the other, and each Defendant ratified the acts of the other.  Together, Unum Group and Unum Life Insurance Company of America are referred to as "Unum."

10.     In Unum's promotional materials given to Ruben Don, Unum stated:

> "You or your designated representative should fully complete the claim form . . . The claim form must be signed by you, or by a legally designated representative (such as someone to whom you have granted Power of Attorney) . . ."

Exh. C, Don 0034.

11.     On September 24, 1996, Ruben Don executed a durable power of attorney for health care which stated:

> "If a conservator of the person is to be appointed for me, I nominate the following individual to serve as conservator of the person: Lita Don [address redacted]."

Exh. F, Unum 0004807.

12.     That same document stated:

> "If Lita Don is not available or becomes ineligible to act as my agent to make health care decisions for me . . ., then I designate the following person to serve as my agent to make my health care decision for me as authorized in this document:   1.   Michael Howard Don [address redacted]…"

Exh. F, Unum 0004809.

13.     Ruben Don was born in 1930 and insured under Unum's Policy attached as Exhibit A ("Unum's Policy" or "the Policy") for seventeen years, and Unum

continues to owe further obligations under Unum's Policy.  To date, Ruben Don is owed very substantial benefits under Unum's Policy notwithstanding Unum's position in its March 24, 2014 Motion to Dismiss ("Motion to Dismiss") that Ruben Don has no existing contractual relationship with Unum because, in Unum's view, Unum's Policy terminated the day after the Lifetime Maximum Benefit Amount was purportedly paid. Put another way, MICHAEL DON contends the maximum benefit amount (frequently referred to as the Lifetime Maximum Benefit Amount) is owed under Unum's Policy but has not yet been paid, Unum continues to not pay it, and Unum refuses to pay it even though Plaintiff demanded Unum do so.

14.     On October 6, 1995, LEROY LITTLE executed a durable power of attorney for health care which stated:

"If it becomes necessary to appoint a conservatorship of my person, I nominate the following persons in the following order to act as my conservator of my person:

FIRST NOMINEE:        CAROLYN JAN LITTLE

****

FIRST ALTERNATE NOMINEE:  TAMARA JO NILES."

(Exhibit K, p. 5 of 8).

15.     Since March 9, 1998, LEROY LITTLE and CAROLYN LITTLE have been insured under Unum Long Term Care Policy numbers LAC603718 and LAC603716, respectfully ("the Littles' policies"), which are attached as Exhibits N

and O, respectively.   When CAROLYN JAN and LEROY LITTLE received the Littles' policies, they read them.

16.   The Littles' policies derive from Unum Long Term Care Policy Form number LTC7392.  LEROY LITTLE is "in claim" with Unum, having submitted a claim on November 25, 2014.  LEROY LITTLE has yet to claim from Unum all of the benefits to which he is entitled under his Unum Long Term Care Policy.

### The Class

17.   The subject matter of this class action lawsuit is Unum's institutional, systematic, uniform, computerized and nationwide improper interpretation and calculation of the amount of policy benefits owed to insureds under Unum's long term care insurance policies.  The specific inflation protection Plaintiffs purchased expressly states that the annual inflation increase will be calculated on the "Policy Date" and that the annual inflation increase will be applied to the "Monthly Benefit" and "Lifetime Maximum Benefit Amount" (i.e., maximum benefit amount) in effect on each Policy Anniversary. Contrary to the Policy's express language, (1) Unum calculates the Policy Anniversary from the wrong date, and/or (2) Unum applies the annual inflation increase to the *original* Monthly Benefit and the *original* Lifetime Maximum Benefit Amount, and/or (3) after an insured or an insured's authorized representative submits a claim for a covered loss and begin receiving benefits, Unum applies the annual inflation increase to the *remaining* Lifetime Maximum Benefit Amount (i.e., maximum benefit amount) after deducting the amount of benefits

already paid out.

18.   All Subclass Members nationwide seek rescission based on Unum's illusory contract and damages that flow from Unum's conduct, including (at their election), return of all premiums paid for an illusory contract.

19.   The "accrued damages" and "in claim" Subclass Members nationwide seek breach of contract damages against Unum.

20.   In addition, Plaintiffs and the Subclass Members whose Unum Long Term Care Policies were issued in California allege causes of action and seek damages for insurance bad faith, fraud and unfair business practices in violation of California Business & Professions Code sections 17200 et seq. (the "UCL").

21.   Except for the "accrued damages" Subclass Members, all other Subclass Members (which includes insureds who have yet to file an insurance claim, such as CAROLYN JAN LITTLE and the other "future claim" Subclass Members, as well as insureds who have made an insurance claim under Unum's Long Term Care Policies but are still entitled to future policy benefits, such as LEROY LITTLE and the other "in claim" Subclass Members) also seek declaratory and injunctive relief to prevent Unum's conscious course of conduct, firmly grounded in established company policy and practice, which sacrifices the interests of vulnerable long term care insureds for Unum's financial gain.

22.   Unum's long term care insurance policies are standard form policies ("Form Policies") approved under the laws and regulations of the States in which

THIRD AMENDED COMPLAINT

they are issued.  An exemplar Unum long term care insurance policy is Ruben Don's Unum Long Term Care Nursing Home And Professional Home Care Policy, Form No. LTC7392 ("Unum's Policy" or "the Policy").   A true and correct copy of Unum's Policy is attached as Exhibit A to this Complaint. Unum has confirmed the Policy has no page four.  The Littles' policies are attached as Exhibits N and O to this complaint.   The Unum long term care insurance policies at issue in this lawsuit contain either the same or similar language as the Policy ("Unum's Long Term Care Policies"). Although Unum's Long Term Care Policies have been revised from time to time, for purposes of this dispute, each of the policies Unum issued to insureds in the proposed Subclasses has either the same or similar relevant language as the Policy.

23.    Plaintiffs and the putative class members (the "Class" or "Class Members") are or were, at all relevant times, insured or authorized representatives of insureds under Unum's Long Term Care Policies as defined in the previous paragraph of this Complaint.

24.    This lawsuit pertains to Unum's specific, systematic, computerized, and institutional practices. Plaintiff and the Class Members were (or absent declaratory and injunctive relief, are and will be) denied and/or delayed payment of long term care benefits owed by Unum's Long Term Care Policies as a result of Unum's institutional misinterpretation of the language in those Form Policies' and Unum's institutional practice of miscalculating the amount of benefits owed to its insureds.

Unum has applied the same single and uniform interpretation of the same or similar language in Unum's Long Term Care Policies.

25.     In its Rule 26(f) Statement and Motions to Dismiss, Unum admitted the language in Unum's Policy is unambiguous and therefore Unum's institutional, company-wide policy interpretation and calculation of benefits owed under Unum's Policy is a legal issue for this Court to resolve.   Unum's uniform and institutional misinterpretation of Unum's Long Term Care Policies and miscalculation of benefits owed violates the express and unambiguous language of these Form Policies.

**Unum's Institutional Practice Of Misinterpreting and Miscalculating**

**The Amount of Benefits Owed Under Unum's Long Term Care**

**Policies**

26.     The Policy and Unum's Long Term Care Policies at issue have an optional inflation protection provision. For example, the Policy provides (in relevant part):

> "Your Monthly Benefit **will increase each year on the Policy Anniversary** by 5% of the Monthly Benefit **in effect on that Policy Anniversary**. Increases will be automatic and will occur regardless of your health and whether or not you have suffered a covered Loss . . . . Your premium will not increase due to automatic increases in your Monthly Benefit. In no event will the total Monthly Benefit be more than 200% of your **original** Monthly Benefit. **Your Lifetime Maximum Benefit Amount    will    also increase by 5%.**

Exh. A, Don0009 (bold added).

27.     The Policy Schedule informed the insured that both "[t]he Benefit

- 11 –

Amount and the Maximum Benefit Amount will **increase** each **policy anniversary**" but did not anywhere disclose that either of these amounts--the Benefit Amount (i.e., Monthly Benefit) or the Maximum Benefit Amount (i.e., Lifetime Maximum Benefit Amount) would ever decrease, or if so, when, why, or how.  Exh. A, Don0003 (bold added).

28.     Unum's Policy defined over thirty terms.  "Lifetime Maximum Benefit Amount" was expressly defined to mean:

> "the total dollar amount of benefits that will be paid under the Policy.  The Lifetime Maximum Benefit Amount is shown in the Policy Schedule."

Exh. A, Don0006.

29.     Once again, Unum's Policy never said the Lifetime Maximum Benefit Amount would ever decrease, and if so, why, when, or how (e.g., Unum's Policy did not state if covered benefits were paid out, then, on the subsequent policy anniversaries, the Lifetime Maximum Benefit Amount would be reduced by the amount of benefits already paid out).  To the contrary, Unum's Policy Schedule expressly specified this amount would "increase each policy anniversary."  Exh. A, Don0003.

30.     Unum knew how to limit coverage.  Unum's Policy expressly limited the value of the Monthly Benefit in Ruben Don's Policy:  "In no event will the total Monthly Benefit be more than 200% of your original Monthly Benefit" (i.e., $3,000 X 2 = $6,000).  Exh. A, Don0009.

31.   Unum also knew how to limit the value of the Lifetime Maximum Benefit Amount because in Ruben Don's Policy Unum expressly limited the "Maximum Benefit Amount" to "increase each policy anniversary based on the Benefit Increase Provision" to a "2X Cap" of the "$108,000" "Lifetime Maximum Benefit Amount" (i.e., $108,000 X 2 = $216,000).  Exh. A, Don0003.

32.   Under Unum's Policy definition, "Lifetime Maximum Benefit Amount" "means the total dollar amount of benefits that will be paid under the Policy."  Exh. A, Don0006.   Unum's Policy definition did not reduce this value by (or when) benefits are paid out.  The term "Lifetime Maximum Benefit Amount" encompasses other similar maximum benefit amount terms in Unum's Long Term Care Policies that are defined to mean the total dollar amount of benefits that will be paid under Unum's Long Term Care Policies.  This includes, for example, Form Policies with an inflation protection provision stating: "Your Nursing Home Benefit will increase each year on the Policy Anniversary by 5% of the Nursing Home Benefit in effect on that Policy Anniversary." Exh. G, Unum0000211. In this context, the terms "Lifetime Maximum Benefit Amount" and "Nursing Home Benefit" or any other similar maximum benefit amount terms have the same meaning:  the total dollar amount of benefits that will be paid. Unum's Long Term Care Policies generically refer to these amounts as "the Maximum Benefit Amount."  Exh. A, Don0003.

33.   Contrary to the express, unambiguous language in Unum's Long Term Care Policies, Unum refuses to correctly apply the annual inflation increase to either

THIRD AMENDED COMPLAINT

the "Monthly Benefit Amount"--a capitalized term that Unum defined--or to the "Lifetime Maximum Benefit Amount"--another capitalized term that Unum defined. Exh. A, Don0006 .

34.    Unum takes the unreasonable and extra-contractual position, as it does with Plaintiffs, that neither the annual inflation increase of the Monthly Benefit nor the annual inflation increase of the Lifetime Maximum Benefit Amount "increase each year on the Policy Anniversary by 5% of the Monthly Benefit in effect on that Policy Anniversary" or "will increase each policy anniversary" even though those are the exact words expressly written into Unum's policy. Exh. A, Don0003, 09. First, Unum refuses to apply the annual inflation increase to the "Monthly Benefit in effect on **that** Policy Anniversary" (bolded added), and instead applies the annual inflation increase to the *original* Monthly Benefit specified on the Policy Schedule. Second, Unum refuses to apply the annual inflation increase to the Lifetime Maximum Benefit Amount in effect on each Policy Anniversary, and instead Unum applies the annual inflation increase to the *original* Lifetime Maximum Benefit Amount specified on the Policy Schedule. Third, after a covered claim is made and benefits are paid, Unum refuses to apply the annual inflation increase to the Lifetime Maximum Benefit Amount in effect on each Policy Anniversary or to even the original Lifetime Maximum Benefit Amount, and instead Unum further reduces the Lifetime Maximum Benefit Amount by deducting the amount of benefits already paid out and then applying the annual inflation increase to the *remaining* Lifetime

Maximum Benefit Amount.

35.     Unum knew, when it wrote its Policy, how to limit coverage to the original Monthly Benefit, because Unum used precisely these very words in the second to last sentence of its Benefit Increase Provision in the Policy:  "In no event will the total Monthly Benefit be more than 200% of your *original* Monthly Benefit." Exh. A, Don0009 (emphasis added).  Unum chose not to use the word "original" in the first sentence of that same paragraph, but rather Unum deliberately agreed to a different base for calculating the annual inflation increase:  "5% of the Monthly Benefit in effect on that Policy Anniversary." Exh. A, Don0009.  Unum's use of these defined policy terms is entirely consistent with and flows from Unum's language on the Policy Schedule:  "The Benefit Amount and the Maximum Benefit Amount will increase each policy anniversary."  Exh. A, Don0003.  The Policy Schedule does not envision any decrease on any policy anniversary.

36.     Unum's systematic, nationwide institutional practice of interpreting and calculating the amount of benefits owed violates the same or similar express language in Unum's Long Term Care Policies at issue.  Because Unum applies the same systematic, uniform and institutional interpretation and calculation to each of Unum's Long Term Care Policies with the same or similar language as the Policy, this class action is brought to remedy the wrongs created by Unum's "across-the-board" misinterpretation and miscalculation.

37.     Significantly, Unum knows how to expressly write policy language to

warn insureds of Unum's institutional practice of limiting coverage when it calculates the amount of benefits owed because Unum did so expressly in the Policy itself, by contrasting (in the same paragraph) the *original* value of Monthly Benefits to the value "in effect on [each] Policy Anniversary." Exh. A, Don0009.

38. In its initial disclosures, Unum produced policy language in other Unum long term care policies which--in stark contrast to Unum's Policy--expressly limit the base on which to calculate the annual inflation increase to the "original" monthly benefit and Lifetime Maximum Benefit Amount, and also identify a declining value of the Lifetime Maximum Benefit Amount after a claim is made and benefits are paid by expressly disclosing that the annual inflation increase will apply to the "remaining" Lifetime Maximum Benefit Amount:

> "Your Monthly Benefit will increase each year on the Policy Anniversary **by 5%** of the **original** Monthly Benefit. Your **remaining** Lifetime Maximum Benefit Amount will also increase. Increases will be automatic and will occur regardless of your health and whether or not you are disabled. Your premium will not increase due to automatic increases in your Monthly Benefit."

Exh. B, Unum 0000078-79 (bold added).

39. In these other policies that are not the subject of this action, by adding the word "original" to qualify the phrase "Your Monthly Benefit will increase each year on the Policy Anniversary by 5% of the original Monthly Benefit" as found in the preceding paragraph (38) in this Complaint, Unum expressly limited the annual inflation increase to the dollar amount originally identified on the Schedule Page for

THIRD AMENDED COMPLAINT

the Monthly Benefit Amount and the Lifetime Maximum Benefit Amount, and not to the escalating amount that increased on each Policy Anniversary as Unum set forth in the Policy and in Unum's Long Term Care Policies issued to members of subclasses II, III, IV, V, and VI.  Similarly, in other policies that are not the subject of this action, by adding the word "**remaining**" to qualify and limit the phrase "Your remaining Lifetime Maximum Benefit Amount will also increase," and by having this sentence immediately follow the previous sentence which established the base for the annual inflation increase would be the "original Monthly Benefit," Unum, by its own choice of the structure and content of the paragraph recited in paragraph 38 of this Complaint (i.e., in other policies that are not the subject of this action), expressly disclosed up front to these other insureds that once benefits begin to be paid the annual inflation increase will be applied to the "remaining" Lifetime Maximum Benefit Amount after deducting the amount of benefits already paid out. Unum did not do this for Plaintiffs or the Class Members.

40.    Plaintiffs, on their own behalf and on behalf of all Class Members, contend that at the time Unum issued Unum's Long Term Care Policies containing the same or similar inflation protection provision language as the Policy, Unum knew that it would tell insureds, after Ruben Don and LEROY LITTLE  and other similarly situated insureds suffered a covered loss and began receiving benefits, that the annual inflation increase applied to the *original* Monthly Benefit and Lifetime

- 17 –

Maximum Benefit Amount as quantified on the Schedule Page and/or[1] that the annual inflation increase applied to the *remaining* Lifetime Maximum Benefit Amount after deducting all benefits already paid out in the prior year(s).   Unum concealed this information from Plaintiff and those in Subclasses IV, V and VI when they purchased their policies. Plaintiffs actually and justifiably relied on Unum's representations and concealment by accepting, rather than cancelling, the Policy after Unum told Plaintiffs "you may cancel this Policy for any reason within 30 days after it is delivered to you or your representative." Exh. A., Don0001.

### Unum Incorrectly And Unreasonably Calculates The Proper Anniversary Date

41.    Unum's Policy provides (in relevant part): "Coverage takes effect on the Effective Date . . ."

Exh. A, Don0005.

_____

[1]  For some Form Policies, only the calculation of the maximum benefit amount is at issue.  See, *e.g., supra*, paragraph 32 (explaining Lifetime Maximum Benefit Amount and Nursing Home Benefit have same meaning, i.e., the total dollar amount of benefits that will be paid).

For other Form Policies, only the calculation of the Monthly Benefits is at issue.

By way of example, in its initial disclosures, Unum produced Form Policies with the following inflation protection language:  "Your Monthly Benefit will increase each year on January 1st by 5% of the Monthly Benefit in effect on that January 1st.  Your remaining Lifetime Maximum Benefit Amount will also increase."  Exh. F, Unum 0000189.  By adding the clarifying word "remaining" before the term "Lifetime Maximum Benefit Amount and omitting the word "original" before the term "Monthly Benefit," for these policies, only Unum's interpretation and calculation of monthly benefits is at issue.  In other Form Policies, only Unum's calculation of the Policy Anniversary may be at issue.

THIRD AMENDED COMPLAINT

42.     Unum's Policy, under **"GENERAL PROVISIONS The Contract"** states:

"Unless we tell you something else,[2] years, months and **anniversaries** that we refer to **are calculated from the Policy Date shown on page 3**."

Exh. A, Don0013 (bold added).

43.     The Policy Date on Unum's Policy Schedule Page is January 9, 1997. Exh. A, Don0003.  Yet, Unum unreasonably and extra-contractually calculated each policy anniversary date based on the April 9, 1997 "Effective Date," not the earlier January 9, 1997 "Policy Date."   See Exhibit D (Unum's calculation given to MICHAEL DON).

44.     Unum's institutional practice of calculating the incorrect policy anniversary (1) postpones each policy anniversary which is the trigger date for the annual inflation increase, and (2) delays the upticks in both the Monthly Benefit and the Lifetime Maximum Benefit Amount (i.e., maximum benefit amount) which are triggered each policy anniversary.  By virtue of its improper conduct and reasons for its interpretation that Unum only disclosed in its 2014 Motions to Dismiss, Unum underpays and/or delays the payment of benefits owed to its insureds in the Class and created an illusory contract in which only Unum could change a central material term to the contract at any time for no return of consideration.

---

[2] See, *e.g., supra*, fn.1 ("Your Monthly Benefit will increase each year on January 1st . . .").

- 19 –

45.     On July 18, 2012, Unum wrote MICHAEL DON and admitted the incorrect calculation of the policy anniversary was a company-wide practice, by stating Unum used the April 07, 1997 Effective Date, because "[t]he calculation is coming from our system." *See* Exh. C, Don 0023.

46.     Had Unum calculated the monthly and maximum benefit amounts based on the proper anniversary date, Ruben Don and the Class would have been (or will be) paid more monthly benefits on each policy anniversary after a claim was made.

**Unum Incorrectly And Unreasonably Calculates Monthly Benefits**

47.     Although Ruben Don's Monthly Benefit on the first anniversary correctly increased by 5% of the Monthly Benefit in effect (i.e., from $3,000 to $3,150), the Monthly Benefit on the second anniversary should have been $3,308 (i.e., 5% of $3,150=$157.5+$3,150=$3,308), not $3,300 (i.e., $3,000+$150+150=$3,300) as Unum calculated (see Unum's spreadsheet attached as Exhibit D) because Unum's Policy explicitly required using as the base for calculating the 5% increase the "Monthly Benefit in effect on **that** Policy Anniversary." (Bold added.)  Similarly, on the third anniversary, the Monthly Benefit payable for each month during the next twelve months should not have been $3,450 as Unum calculated (see Exh. D), but rather $3,473. Similarly on the fourth anniversary, the Monthly Benefit should not have been $3,450, but $3,647, and after

the fifth anniversary the Monthly Benefit should have been $3,647 and not $3,600 per month.

48.     Unum paid and continues to pay out Monthly Benefits slower than required, which reduced and delayed the use of these benefits. And, if an insured died before receiving all benefits, Unum benefitted by not paying out what it should have paid out earlier. Each and every delayed and/or underpaid payment accrues interest until paid.

## Unum Incorrectly And Unreasonably Calculates The Maximum Benefit Amount

49.     Unum miscalculated the increase in the Lifetime Maximum Benefit Amount (i.e., the maximum benefit amount) so there was less to disburse than was owed under Unum's Policy.  The maximum benefit amount should have increased by 5% of the Lifetime Maximum Benefit Amount "in effect on **that** Policy Anniversary" (bold added) on each Policy Anniversary, regardless of whether or how many benefits had been paid out in the previous year, and without any reduction of any benefits paid out.  Exh. A, Don0009.  In the very same paragraph (and not in a free-standing paragraph or separate section), Unum identified the procedure or methodology by which it was required to calculate the Monthly Benefit and announced:  "Your Lifetime Maximum Benefit Amount will **also** increase by 5%." Exh. A, Don0009 (bold added).  Had Unum intended to limit the annual inflation increase to the *original* Lifetime Maximum Benefit Amount (which was specified on

- 21 –

the Policy Schedule as $108,000) instead of to the escalating amount of the Lifetime Maximum Benefit Amount *on each policy anniversary*, it was required to expressly do so.  Unum knew how to say so in the immediate preceding sentence with regard to the 200% cap on the "*original* Monthly Benefit."  Exh. A, Don0009. Unum did not limit the annual inflation increase on the Lifetime Maximum Benefit Amount to 5% of the original $108,000.   Yet, Unum admitted to MICHAEL DON that Unum's calculation applied the annual inflation increase each year to the *original* Lifetime Maximum Benefit Amount specified on the Schedule Page as $108,000 (see Exh. D), and not to the amount in effect on each Policy Anniversary date.   Worse, Unum further decreased the value of the maximum benefit amount, arbitrarily concluding Unum "does increase [Plaintiff's] monthly/lifetime max, however **once [Ruben Don] started receiving benefits in 2009 the increase was on the remaining amount at that time not the original.**"  Exh. C, Don 0027 (Unum's August 7, 2012 position) (bold added); see also Exh. D (showing Unum's own calculation on how it implemented its interpretation). In short, Unum *decreased* Ruben Don's Lifetime Maximum Benefit Amount, without any basis or authority or language in Unum's Policy supporting or otherwise authorizing Unum's institutional practice.

50.     Commencing with the second anniversary, a flat 5% of $108,000 (i.e. $5,400) should not have been added to the Lifetime Maximum Benefit Amount each year, as Unum did. Exh. D. (Unum's calculations). As to annual inflation increase to

THIRD AMENDED COMPLAINT

the maximum benefit amount (or in the precise terms of the Policy, "Lifetime Maximum Benefit Amount"), Plaintiffs are in agreement with Unum as to the first policy anniversary only, when the Lifetime Maximum Benefit Amount went from $108,000 to $113,400 ($108,000 + [5% of 108,000=$5,400] which is $113,400). For every single year since then, Unum undervalued the Lifetime Maximum Benefit Amount. For example, on the second policy anniversary, the Lifetime Maximum Benefit Amount should have increased from 5% of $113,400--the value of the Lifetime Maximum Benefit Amount "on that Policy Anniversary"--instead of 5% of the $108,000 which was 5% of the original Lifetime Maximum Benefit Amount. This meant the Lifetime Maximum Benefit Amount on the third anniversary was $119,070 instead of $118,800 as Unum calculated (see Exh. D), on the fourth policy anniversary it was $125,024 instead of $124,200, and on the fifth policy anniversary it was $131,275 instead of $129,600 which Unum calculated (see Exh. D). On information and belief, and subject to confirmation by an expert in due course, Unum's miscalculation reduced Plaintiff's benefits by $36,430.91 (i.e., the $216,000 cap less the $179,569.09 Unum paid).

**Unum Unreasonably Contends That An Insured's Selection of a Benefit Period Modified The Policy Terms, or Required Unum To Make Only a Fixed Number of Monthly Payments**

51.     Unum's Policy's "**Termination of Benefits**" Provision states:

"Your benefits will cease on the earliest of:
(a) the day after you cease to suffer a covered Loss . . .;
(b) the day after the Lifetime Maximum Benefit Amount has been paid;
(c) the day after you die."

Exh. A, Don0011.

52.     There was no expectation that there would be only 36 months of benefits, or that benefits would only occur monthly during a three year period, even though on the Application to the Policy Ruben Don  checked off item number "3" in response to Unum's Question 2c entitled "Benefit Period (Years)." Exh. A, Don0017.

53.     The words "Benefit Period" on the Application is an undefined term, generically used, which Unum deliberately did not define in Unum's Application or in Unum's Policy--which defined at least 30 other terms.  See Exh. A., Don0004-08. For example, the Policy defines the meaning of other benefit terms, such as "Nursing Home Benefit" and "Professional Home Care Benefit" (see Exh. A, Don 007) and "Monthly Benefit" and  "Respite Care Benefit" all of which are capitalized and included under the bolded caption "**TERMS YOU SHOULD KNOW**" which warned insureds these benefit terms "have special meanings." Exh. A, Don0004. But Unum never defined the words Benefit Period--which words appear on the Application to the Policy only.  Nor did Unum intend the generic undefined words Benefit Period in its Application to define when benefits would terminate, because Unum's Policy under the separate Heading "**Termination of Benefits**" has a specific provision that supersedes any general provision which addressed this issue.  Exh. A.,

Don0011. Unum's "Termination of Benefits" provision expressly spelled out that benefits will terminate on "the day after" the earliest of three different but clearly specified events, and nowhere does Unum's own "Termination of Benefits" provision say benefits will terminate on the last month of any period (such as 36 months) pre-selected as a guide by the insured on the Application before the insured has received Unum's Policy.  The last "day after" could be beyond any 36 month period, such as "(b) the *day* after the Lifetime Maximum Benefit Amount has been paid." Exh. A, Don0011 (italics added).

54.     Moreover, Unum's policy, in multiple places, acknowledges that there may be partial payments for a period of less than a month, confirming that Unum itself never expected payments to be made for a full month.  For example, Unum says:

> "We will send the benefit payments to you each month. **If you are eligible for benefits for a period that is less than one month, we will pay 1/30th of the net monthly payment for each day you suffer a covered Loss**…. Benefit payments will cease as provided in the "Termination of Benefits" section of this policy. In no event will the benefits paid under this policy exceed the Maximum Benefit Amount shown in the Policy Schedule on Page 3."

Exh. A, Don0009 (bold added).

55.     Further down on the same page, in the "Respite Care Benefit" section, Unum's policy says:

> "we will make payments to you for each day you receive Respite Care for **up to 15 days** each calendar year.  The amount of **your**

**daily payment will equal 1/30th of your Monthly** Professional Home Care Benefit Amount."

Exh. A., Don0009 (bold added).

56.    Unum's limitation on these payments for Respite Care Benefits is not that they must be paid out in 36 monthly payments or in a 36 month period, but rather they "will end when the Lifetime Maximum Benefit Amount has been reached." Exh. A, Don0009.

57.    Under the heading "**When Claims are Paid,**" Unum again noted "benefits payable under the policy will be paid before the end of the month **for each day** for which you are entitled to benefits during the prior month." Exh. A, Don 0010 (bold added).  While Unum created a finite date of each payment to occur per month, it expressly envisioned any payment, even the last payment, could be for only some days in the prior month (i.e., any payment would not necessarily be a full monthly amount for each and every month that benefits were paid).

58.    In subsection (f) of the section entitled "**Plan Exclusions,**" Unum does not provide benefits if an insured leaves the United States "for longer than 30 days." Exh. A, Don0011.  This provision expressly stops and starts benefits, which only confirms the benefits could not have been understood by Unum to have been limited to any fixed period, such as only a 36 month period, or a fixed number of monthly payments.

59.     Unum itself envisioned returning waived premium "on a pro rata basis." Exh. A, Don0011: "The pro rata refund will be calculated **on the number of days** in your Elimination Period" (bold added), again confirming that the counting of periods is not by months, or a specific period such as 36 months, but can increase or decrease by days.

60.     Consistent with Unum's Policy terms, in a June 4, 2012 e-mail, Unum itself announced to Plaintiff who was his Father's legally designated representative: "Normally, it stated that [Ruben Don] has a 3 year benefit period, however, it goes by the pool of money he has an[d] **because he has inflation it tends to be a little longer**…" Exh. C., Don0020 (bold added). Simply put, Unum knew all along that the number of monthly benefits could be greater than 36 months, and Unum even calculated how many more days of coverage remained, which is why Plaintiff who was his Father's legally designated representative on June 4, 2012 acknowledged Unum's communication that "your dad has about 59 days remaining." Exh. C, Don0019.

61.     If there was any doubt about Unum's own awareness that the insured's choice of the Benefit Period in the Application was merely a rough guide, not a Policy term, Unum's July 17, 2012 letter told MICHAEL DON: "As you are aware, the amount of monthly benefits paid and the Lifetime Maximum Benefit Amount

THIRD AMENDED COMPLAINT

remaining may be impacted by changes in the… frequency of care and **periods of time** when covered care is not received."  Exh. C, Don0026 (bold added).

### The Integration Clause Prevents Unum From Relying On What Brokers Or Agents Said, Or From Relying On Anything Outside Unum's Policies

62.	While the integration clause of Unum's Policy expressly includes the attached Application as part of the entire contract, the same integration clause entitled **"GENERAL PROVISIONS The Contract"** states:

> "Only an executive officer of this Company can approve a change in this policy. The approval must be in writing and be endorsed on or attached to this policy. No one else can change this policy or waive any provisions."

Exh. A, Don0013.

63.	Unum cannot rely on the representations of brokers or agents or undercut Ruben Don's or other Class Members' claims by asking what they subjectively thought when purchasing Unum's Policies, because Unum's Policy, in the section entitled **"GENERAL PROVISIONS The Contract"** states:  "Statements by agents or brokers are not part of our contract."  Exh. A, Don0013.  Section V of the Application confirms: "No agent, broker, medical examiner or other person except an authorized employee of Unum may change ..." the Policy.  Exh. A, Don0018.

THIRD AMENDED COMPLAINT

**Unum's Interpretation Cannot Trump the Terms Of Unum's Policies**

64.     Unum claims Ruben Don's  responses on the Application--which, by the integration clause are part of the Policy--trumps the defined terms of Unum's Policy, but Unum's Application does not place insureds, such as Ruben Don, on notice that their responses to general undefined questions on Unum's Application trump the defined terms of Unum's Policy, or that the Application's answers will be treated as specific provisions that will override the defined terms and express provisions in Unum's Policy, such that Unum can claim that the insured's response to question 2c (the Benefits Period) modifies Unum's Policy and confines benefits to only a 36 month period.

**The Subclasses**

65.     Proposed Subclass I consists of all current and former insureds nationwide whose Unum Long Term Care Policies state that anniversaries are calculated from a certain date (e.g., the "Policy Date") and Unum takes the position it can calculate the policy anniversary based on a different date (e.g., the "Effective Date").  MICHAEL DON is a Class Representative for Subclass I.

66.     Proposed Subclass II consists of all current and former insureds nationwide whose Unum Long Term Care Policies contain an optional provision for inflation protection which states the annual inflation increase will be applied to the monthly benefit in effect on the policy anniversary and Unum applied (or is applying)

THIRD AMENDED COMPLAINT

the annual inflation increase to the original monthly benefit. MICHAEL DON and TAMARA PELHAM, as the Guardian ad Litem for LEROY LITTLE, are Class Representatives for Subclass II.

67.    Proposed Subclass III consists of all current and former insureds nationwide whose Unum Long Term Care Policies contain an optional provision for inflation protection which states the annual inflation increase will be applied to the maximum benefit amount (e.g., Lifetime Maximum Benefit Amount) in effect on the policy anniversary and Unum applied the annual inflation increase to the original maximum benefit amount. MICHAEL DON and TAMARA PELHAM, as the Guardian ad Litem for LEROY LITTLE, are Class Representatives for Subclass III.

68.    Proposed Subclass IV consists of all current and former insureds nationwide whose  Unum Long Term Care Policies contain an optional provision for inflation protection which states the annual inflation increase will be applied to the maximum benefit amount (e.g., Lifetime Maximum Benefit Amount) and Unum applied (or Unum is applying) the annual inflation increase to the **remaining** maximum benefit amount (e.g., Lifetime Maximum Benefit Amount) after an insured suffers a covered loss and begins receiving policy benefits. MICHAEL DON and TAMARA PELHAM, as the Guardian ad Litem for LEROY LITTLE, are Class Representatives for Subclass IV.

69.    Proposed Subclass V consists of all members of Subclasses I, II, III and IV whose Unum Long Term Care Policies issued in the State of California.

MICHAEL DON and TAMARA PELHAM, as the Guardian ad Litem for LEROY LITTLE, are Class Representatives for Subclass V.

70.    Proposed Subclass VI consists of all current and former insureds under Unum's Long Term Care Policies nationwide who are entitled to declaratory and/or injunctive relief.  The "accrued damages" Subclass members are excluded from Subclass VI.  Subclass VI includes all insureds to which Unum will apply the practices identified in Subclasses II, III, or IV.  CAROLYN JAN LITTLE and TAMARA PELHAM, as the Guardian ad Litem for LEROY LITTLE, are Class Representatives for Subclass VI.

71.    Proposed Subclass VII consists of all current and former insureds under Unum's Long Term Care Policies nationwide, who were issued one policy at inception but then sent a materially different policy Unum represented was a duplicate of the original policy when they asked Unum for a duplicate copy of the policy. CAROLYN JAN LITTLE and TAMARA PELHAM as the Guardian ad Litem for LEROY LITTLE, are the class representatives for Subclass VII.

72.    Plaintiffs and the putative members of the subclasses are collectively referred to as "Class Members" or "Insureds."

### Ruben Don's Insurance Claim

73.    After Ruben Don suffered a covered loss under Unum's Policy, MICHAEL DON as his Father's legally designated representative submitted a claim and his Father began receiving benefits in 2009.

74.     On May 14, 2009, MICHAEL DON, as his Father's legally designated representative, completed Unum's Long Term Care Claim Form on behalf of his father as his "son" and as his "legal representative" under a "power of attorney." Exh. F, Unum 0004783. Unum accepted MICHAEL DON acting as his Father's legally designated representative.

75.     On May 18, 2009, MICHAEL DON  as his Father's legally designated representative   listed himself as the primary contact for his Father's claim as his "legal representative" under a "power of attorney."  Exh. F, Unum 0004784. Again, Unum accepted MICHAEL DON as his Father's legally designated representative.

76.     On July 2, 2009, Unum wrote to MICHAEL DON, as his Father's legally designated representative (in relevant part):

> "I am writing to confirm that we have approved the above referenced Long Term Care Claim . . . . [¶¶]  [B]enefits will begin on July 23, 2009. The first payment will be issued August 23, 2009, for all care received from July 23, 2009 to August 1, 2009.  An amount of 1/30[th] of the monthly benefit amount will be paid for each day covered services are received within each month.  Because benefits are paid on an accrual basis; payments are processed after the month has been completed.  All future payments will be processed on the closest business day to the 23[rd] of each month."

Exh. C, Don 0035-37.

77.     On December 17, 2009, Ruben Don executed an 18-page document entitled "Immediate Durable Power of Attorney of Ruben Don" which appointed his son (MICHAEL DON) as his agent and legally designated representative.  Exh. F, Unum 0004788-806.  Unum continued to accept MICHEL DON as his Father's

THIRD AMENDED COMPLAINT

authorized and legally designated representative.

78.    On October 15, 2010, Unum summarized the conclusion of a telephone call with MICHAEL as follows:

> "Since his parents are moving [to Ohio] he would like to have their checks sent directly to him so that he can deposit it into their account. His address is [redacted].  He states he is the Power of Attorney.  I told him if he is the power of attorney I can change the address to his address."

Exh. F, Unum 0004972.   Unum subsequently changed the address on the benefit checks to MICHAEL DON's  address.

79.    On October 19, 2010, MICHAEL DON sent Unum a copy of his Father's  Power of Attorney. Exh. F, Unum0004788.

80.    Unum accepted this authorization and dealt with MICHAEL DON only regarding his Father's claim.

81.    On April 5, 2011, MICHAEL DON completed an authorization to disclose information on behalf of Ruben Don  as his "son" and under a "power of attorney."  Exh. F, Unum 0004785. Again, Unum accepted MICHAEL DON  acting as his Father's  legally designated representative.

82.    On June 4, 2012, Unum wrote to MICHAEL DON:  "Looks like your dad has about 59 days [of policy benefits] remaining."  Exh. C, Don 0019.

83.    In response, MICHAEL DON asked:  "Can you please send me the calculations that result in Dad having 59 days remaining?  I want to check it against the policy and see if I come up with the same calculation."  Exh. C, Don 0019.

84.     On June 4, 2012, Unum replied:  "It's based on the pool of money. Normally it stated that your father has a 3 year benefit period, however it goes by the pool of money he has an[d] because he has inflation it tends to be a little longer.  He has [$]10,309 remaining."  Exh. C, Don 0020.

85.     In response, MICHAEL DON stated:

> "I understand the process. Someone in your organization did a calculation for the total amount to be paid (calculated as the face amount of the policy plus an escalating %) and then compared that to what he has been paid.  What I am asking for is (1) the calculation of the total amount that he is eligible to receive and (2) the amounts you show have been paid (hopefully by month).  I can then check both to confirm I agree."

Exh. C, Don 0020.

86.     On July 17, 2012, Unum sent MICHAEL DON a letter stating:  "[T]he simple inflation option . . . increases the amount of his monthly benefits as well as the Lifetime Maximum Benefit Amount each year on April 07.  As of today, the current monthly benefit amount is $5,250.00 and we have paid $174,510.00.  [Your Father has] approximately $5,059.09 in benefits [remaining] under this policy."  Exh. C, Don 0025.

87.     Once again, MICHAEL DON asked Unum how the benefits were calculated.  Unum responded:  "The calculation is coming from our system."  Exh. C, Don 0023.

88.     MICHAEL DON wrote to Unum again stating that Unum's Policy:

> "language says, 'Increases will be automatic and will occur regardless of

– 34 –

your health and whether or not you have suffered a covered loss . . . .'  It further states that, 'your Lifetime Maximum Benefit Amount will **also** increase by 5%.'  Again, I see nothing that says it will not go up if you have a covered loss."

Exh. C, Don 0027 (original emphasis).

89.    Unum responded:

"Your math is correct if your father was never receiving benefits.  Yes, it does increase . . . monthly/lifetime max, however once your father started receiving benefits in 2009 the increase was on the remaining amount at that time not the original."

Exh. C, Don 0027.

90.    On August 6, 2012, MICHAEL DON wrote to Unum:

"Since I have not seen anything after 2 months of asking, I am attaching a computation that I did.  **As you can see, the maximum calculated is $216,000.**  Absent any information to the contrary, please continue payments until the maximum is reached.  I remain willing to discuss the calculations, but I have not been provided anything, as you know, as to how you calculated the max of $174,510."

Exh. C, Don 0038 (bold added).

91.    On August 7, 2012, Unum wrote to MICHAEL DON:

"I took a look at your calculations and discovered you are taking the max benefit and adding the 5% to that, that amount is based on if we did not pay benefits during the year.  The inflation your father has is simple inflation which we take 5% and add to the monthly benefit with [sic] likely was increase of $150 per month each year.  Does this help at all?"

Exh. C, Don 0038-39.

92.    Later that same day, Unum wrote:

THIRD AMENDED COMPLAINT

"I will send you a copy of the contract.  If your father did not have any benefits th[e]n your calculation would be true.  It inflates at 5% on the remaining amount after benefits that we had paid out.  So up until your father went on claim you[r] calc[ulation] is correct once he started receiving benefits it brought the remaining amount down and then the next year it inflated based on that remaining amount.  I will email you the cont[r]act page maybe that will help."

Exh. C, Don 0039.

93.    On August 13, 2012, Unum sent MICHAEL DON a calculation from Unum's financial specialist.  Exh. C, Don 0030, 32-33.

94.    MICHAEL DON responded:

"The provisions of the agreement say that the maximum will increase by 5% per year.  There are no provisions that say anything about an offset during pay out periods.  As such, if the maximum was increased by 5% per year, the lowest that could be suggested for a maximum payout would be $189,000 . . . . As you know, I can support a calculation that is even higher than that amount. [¶]  Can you please have the person that is reading something more into the contract language of, 'Your Lifetime Maximum Benefit Amount will also increase by 5%' call me?  It is now over two months and no one has been able to show me in the contract where an offset like you are suggesting is warranted."

Exh. C, Don 0030.

95.    Less than ten days later (on August 24, 2012), Unum denied the remaining benefits owed to his Father under Unum's Policy and stated to MICHAEL DON that the "lifetime maximum you calculated is based off the full 36 month duration with inflation.  However, [you] started [your Dad's] benefits before the maximum inflation amount was reached.  The calculation is based on the remaining months of duration."  Exh. C, Don 0040-42.

- 36 –

96.     On September 11, 2012, MICHAEL DON wrote to Unum (in relevant part):

> "As you know, I have a power of attorney for all matters properly executed by my father . . . . I have asked you to show me where in the contract the lifetime maximum is not calculated as the agreement states.  UNUM has not once referenced to a section in the agreement that modifies the specific language in the agreement.  As we discussed, the 'Lifetime Maximum Benefit Amount' is a capitalized (defined) term in the agreement.  I have asked where is this language modified to allow for a different calculation when benefits are being paid.  UNUM has responded that, 'this is the way we do it' without one indication of where in the contract this is permitted."  [¶]  When we spoke on the phone with your supervisor (I believe), John Noble, the Director of Long Term Claims was also on the line.  You both stated that you had checked with all departments within the Company, including those people to whom an appeal would go, and that everyone was in agreement with your calculation.  Accordingly, your supervisor suggested that an appeal based on the arguments I had made would likely not give rise to a different answer.  Never the less, I would like you to appeal my request based on the facts above and the calculations I have previously provided."

Exh. C, Don 0040; Exh. F, Unum 0005410.

97.     Unum summarily denied the appeal by MICHAEL DON because an "Appeal cannot be sent via email."  Exh. F, Unum 0005411.

98.     UNUM continues to refuse to pay the remaining benefits owed under Unum's Policy.

99.     On May 17, 2013, this lawsuit was filed in state court and Unum subsequently removed it under CAFA.  Throughout these proceedings, MICHAEL

DON has been actively involved with drafting the pleadings, responding to discovery and otherwise mediating and litigating this case.

100.   During the March 10, 2014 Scheduling Conference (which was the first court hearing held in this case), Plaintiffs' counsel explained that Ruben Don had "degenerated to the point where he doesn't recall much."

101.   On April 11, 2014, the First Amended Complaint filed by and through MICHAEL DON as Ruben Don's Power of Attorney, Son and Authorized and Legally Designated Representative.   MICHAEL DON subsequently retained a probate attorney to become his father's Guardian ad Litem (which, in Ohio, is the equivalent to a conservator in California).   MICHAEL DON personally flew from California to Ohio for a background check as required by Ohio law to become a Guardian ad Litem.

102.   On August 6, 2014, Ruben Don died.   On August 11, 2014 (the day of decedent's funeral), MICHAEL DON's counsel alerted Unum's counsel that Ruben Don had passed away.   The very next day, Unum filed with the Court a notice of Ruben Don's death.   One week later (on August 18, 2014), MICHAEL DON was appointed the Executor of Ruben Don's Estate. (See Exhibit H).

103.   On August 25, 2014, the parties filed a Joint Stipulation to substitute Ruben Don with Michael Don, Executor of the Estate of Ruben Don, as Plaintiff. On

August 28, 2014, this Court issued an Order on the parties' joint stipulation to substitute Ruben Don with MICHAEL DON, Executor of the Estate of Ruben Don, as Plaintiff pursuant to Federal Rule of Civil Procedure 25(a). Exhibit I.

### LEROY LITTLE's Insurance Claim

104.   In 2012, LEROY LITTLE was diagnosed with Alzheimer's disease. On October 7, 2014, LEROY LITTLE had a stroke. On November 25, 2014, LEROY LITTLE, by and through his authorized representative and power of attorney, CAROLYN JAN LITTLE, made an insurance claim under his Unum Long Term Care Policy and subsequently began receiving benefits.  LEROY LITTLE has not yet claimed all of the benefits to which he is entitled under his policy, as he is still "in claim."

105.   CAROLYN JAN LITTLE has never made an insurance claim under her Unum Long Term Care Policy.

### UNUM Re-Writes the LITTLES' Insurance Policies

106.   Unable to find their original Unum Long Term Care policies, the LITTLEs asked Unum to send duplicate copies.   The benefit increase provisions contained in the purported duplicate copies Unum sent the LITTLEs stated:  "Your Nursing Home Benefit will increase each year on the Policy Anniversary by 5% of your **original** Nursing Home Benefit Amount."  Exhibit L, p. 14 of 27; Exh. M, p. 14 of 28, bold added. When the LITTLEs subsequently located their original policies in March 2015, they discovered their benefit increase provisions actually stated:  "Your

Monthly Benefit will increase each year on the Policy Anniversary by 5% of your Monthly Benefit."  Exh. N, p. 10 of 19; Exh. O, p. 10 of 19.  Unbeknownst to the LITTLEs, Unum had deceived them by sending altered policies that added the word "original," rather than calculating monthly and lifetime benefits based on the benefit amount in effect on each policy anniversary--as Unum had promised in the LITTLEs' actual policies, which did not include the word "original."

**Class Allegations**

107.   This action may be properly maintained as a class action under Federal Rules of Civil Procedure 23 and Central District Local Rule 23-3 on the ground that this action satisfies all of the requirements under F.R.C.P. 23.

108.   The primary purpose and thrust of Plaintiffs' complaint seeks declaratory and injunctive relief for all Subclass Members except the "accrued damages" Subclass Members.

109.   This lawsuit was commenced to make sure Unum was stopped forever from misinterpreting and miscalculating Unum's Long Term Care Policies provisions governing the Policy Anniversary and inflation protection in such a way as to deny (or will deny) insureds--like MICHAEL DON's and TAMARA PELHAM's Fathers, or CAROLYN JAN LITTLE--benefits when they need them most (i.e., for long term disability care expenses).  The long-standing future impact of the declaratory and injunctive relief sought by the entire Class, except for the "accrued damages" Subclass Members, unquestionably overshadows the claim for monetary damages.

Certification is therefore appropriate under F.R.C.P. 23(b)(2)

110.   Plaintiffs' action also satisfies all the requirement to be certified under F.R.C.P. 23(b)(3) as follows:

● F.R.C.P. 23 (a)'s numerosity requirement is satisfied because Unum admits that there are currently approximately 49,639 class members in the State of California alone.

● F.R.C.P. 23(a)'s commonality requirement is satisfied due to Unum's institutional, systematic, uniform and wrongful denial of benefits owed under Unum's Long Term Care insurance policies issued nationwide when Unum miscalculates the Policy Anniversary and/or Monthly Benefits and/or Maximum Benefit Amounts based on the express and unambiguous language of an optional provision for inflation protection.  There is a common issue of law based on undisputed facts because the underlying legal issue for each cause of action involves a simple application of uniform contract law to interpret the same unambiguous insurance policy language and to Unum's systematic and institutional practice.

● F.R.C.P. 23(a)'s typicality requirement is satisfied.  As the Executor of Ruben Don's Estate, Plaintiff is a real party in interest under Federal Rule of Civil Procedure 17(a).  Under Federal and California law, MICHAEL DON is permitted to litigate claims for the protection of the Estate because MICHAEL DON steps into the shoes of his Father and because the claims of Ruben Don

THIRD AMENDED COMPLAINT

and each class member are "so interrelated" as to eliminate any doubt that the interests of all subclasses will be fairly and adequately protected in their absence. MICHAEL DON's claims (as Executor of the Estate of Ruben Don) are typical of the "accrued damages" Subclass Members.  LEROY LITTLE's claims are typical of the "in claim" Subclass Members.   CAROLYN JAN LITTLE's claims are typical of the "future claim" Subclass Members. The single issue of law common to Ruben Don, LEROY LITTLE and CAROLYN JAN LITTLE and each class member arises from the same course of conduct because the claims of Plaintiffs and the Subclasses are based on the same institutional practice of Unum when interpreting the same or substantial similar language in Unum's Long Term Care Policies. Because Unum utilizes the same institutional practice and the same or substantially similar language contained in the provisions governing calculation and interpretation of the Policy Anniversary and inflation protection provisions in Unum's Long Term Care Policies, the declaration and injunction sought by the entire Class, except for the "accrued damages" Subclass Members, applies equally to all similarly situated persons.

- F.R.C.P. 23(a)'s adequacy of representation requirement is satisfied because MICHAEL DON  has personally handled his Father's  insurance claim for long term care benefits and Unum has regularly dealt with MICHAEL DON throughout the claims handling process and accepted him at all times as

authorized to act on behalf of his Father Ruben Don.  MICHAEL DON and his Father's Estate (including all beneficiaries and the Administrator) have no interests that are antagonistic to--or are in conflict with--the members of the subclasses who have accrued damages for breach of contract against Unum. LEROY LITTLE and his Guardian ad Litem TAMARA PELHAM have no interests that are antagonistic to--or are in conflict with--the members of the subclasses who have made  insurance claims under Unum's Long Term Care Policies and are entitled to future policy benefits. CAROLYN JAN LITTLE has no interests that are antagonistic to--or are in conflict with--the members who have yet to make an insurance claim under Unum's Long Term Care Policies. Plaintiffs' and the subclasses' interests are completely aligned, and each "future claim" and "in claim" Subclass Member will benefit from the declaratory and injunctive relief being sought on their behalf.   Moreover, MICHAEL DON, as the Executor of his Father's Estate; TAMARA PELHAM, as her Father LEROY LITTLE's Guardian ad Litem; and CAROLYN JAN LITTLE are legally authorized to and are fully committed to prosecuting this class action on behalf of the subclasses. Plaintiffs and the Class Members are represented by experienced class action attorneys, who have both the experience and resources to prosecute this case on behalf of the Class.

- F.R.C.P. 23(b)'s requirement that common questions of fact and law

predominate is satisfied because the relevant facts are common to Class Members in each of the Subclasses. Each class member in each of the subclasses is subjected to--and aggrieved by--Unum's universal practice of relying on language outside the Unum Long Term Care Policies to calculate the wrong Policy Anniversary date and/or to apply the annual inflation increase to the original Monthly Benefit and/or original Lifetime Maximum Benefit Amount and/or apply the annual inflation increase to the amount of benefits remaining after an insured suffers a covered loss and begins receiving benefits. Resolution of these issues is governed by uniform substantive law governing contract interpretation of Form Policies.

- F.R.C.P. 23(b)'s class superiority requirement is satisfied because this class action will not be difficult to manage. There are already discrete subclasses. The predominant issue can be easily adjudicated on a class wide and uniform basis, rather than by hundreds of individual actions across the Country and State of California.

111. The members of the subclasses are ascertainable. Ruben Don, LEROY LITTLE, CAROLYN JAN LITTLE and each member of the subclasses, are or were insured under Unum's Long Term Care Policies. Unum's Long Term Care Policies and the identity of each member of the subclasses can be easily ascertained, and Unum has identified representative samples of Subclass I, IV and V already in discovery, and identified six members in Subclasses II and III from reviewing

- 44 –

approximately 25 percent of Unum's Long Term Care Policies.  Plaintiff does not yet know the identity of all members in the subclasses because their names and addresses are in the sole possession of Unum.  The identity of all members in the subclasses is readily ascertainable by reference to records which are maintained by Unum as reflected by the Lucas Declaration attached to Unum's removal papers. In that June 2013 declaration, Mr. Lucas testified he "was asked to review Unum's business records and identify the total number of individuals likely meeting [the original] Complaint's definition of Subclass I, Subclass II, and the putative Class" as alleged in the original complaint and "[i]n order to accomplish this task, [he] began by searching Unum's proprietary database of all active or terminated insureds nationwide. [He] then narrowed that search to individuals that are or previously were covered by one or more of the Unum long term care products listed in ... plaintiff's [original] Complaint where the product was sitused to the State of California.  Next, [he] excluded individuals who did not purchase inflation protection, as such individuals did not meet the [original] Complaint's definition of the Class.  [H]e then excluded individuals who purchased an unlimited benefit option, as such individuals would not have suffered any injury under plaintiff's theory.  Finally, [he] excluded individuals who reached their 2x Lifetime Maximum Benefit inflation growth cap as stated in their policy before suffering a covered loss or receiving benefits, as such individuals also would not have suffered an injury under plaintiff's theory" and after completing other steps as set out in paragraphs 6 and 7 of his declaration, he

- 45 –

"determined that there are approximately 104 individuals in Subclass I and approximately 49,535 individuals in Subclass II [of Plaintiff's original complaint], for a total of 49,639 individuals in the purported Class" in California alone.  While Plaintiffs do not agree with Unum's steps that Mr. Lucas took to arrive at his numbers, and those numbers reflected just insureds in California and not nationwide, it is already clear from Unum's discovery responses that each of Subclass I through V is numerous, is ascertainable from Unum's own records, and members of Subclasses VI and VII are ascertainable by a review of Unum's records.

112.   All causes of action involve the interpretation and calculation of benefits owed under standard form contracts and the questions of law and fact are common to Plaintiffs' claims as well as the Class Members, to wit:

a)      The single, predominate and common question of law to be resolved involves the interpretation of certain language in Unum's Long Term Care Policies, issued to all members of the subclasses, which is applicable to, and applied by Unum to all policies held by any insured in any of  the subclasses.  The interpretation of Unum's Long Term Care Policies is governed by general rules of contract interpretation that do not materially differ from one jurisdiction to the next.  As the Supreme Court stated, "contract law is not at its core diverse, nonuniform, and confusing." *American Airlines v. Wolens*, 513 U.S. 219, 223 (1995).

b)      The following factual questions to be resolved are common to Plaintiffs and the Class Members:

THIRD AMENDED COMPLAINT

1) For Subclass IV, the uniform manner in which Unum nationwide applies the annual inflation increase to the amount of benefits *remaining* and not to the Lifetime Maximum Benefit Amount after an insured suffers a covered loss and begins receiving benefits;

2) For Subclasses II and III, the uniform manner in which Unum nationwide applies the annual inflation increase to the amount of the **original** Monthly Benefit and/or **original** Lifetime Maximum Benefit Amount and not to the Monthly Benefit and/or Lifetime Maximum Benefit Amount **in effect on each Policy Anniversary**;

3) For Subclass I, the uniform manner in which Unum nationwide calculates the policy anniversary from the wrong date (e.g., Effective Date, not the Policy Date);

4) For members of all subclasses, whether said conduct breaches the insurance contract;

5) For Subclass V, whether said conduct breaches Unum's covenant of good faith and fair dealing;

6) For Subclass V, the uniform unfair business practice of Defendant Unum, as prohibited by California Business & Professions Code section 17200 et seq., and the impact on the insured consumers in California;

7) For Subclass VI, declaratory and injunctive relief; and

8) For Subclasses V and VII, whether Unum's conduct constitutes fraud.

c)      While the specific amount of Plaintiffs' damages and of each Class Member in the subclasses will differ somewhat, the specific amount of damages suffered by Plaintiffs and each Class Member can be calculated by a common formula and/or reference to existing documentation.

113.   The issues affecting the Class Members of the subclasses will be more advantageously tried jointly, which will result in advantages to the judicial process and to the litigants.

114.   Plaintiffs' claims are also typical of the claims of other similarly situated persons in the subclasses, and there is a well-defined community of interest in the questions of law and fact affecting Plaintiffs and all members of the proposed subclasses.   Plaintiffs' claims are not only typical, but they are identical to all members of the subclasses because Plaintiffs' claims are that Unum misinterprets language in Unum's Long Term Care Policies issued which contain the identical or similar language relevant to this dispute over long term care benefits.

115.   As the Class Representatives, Plaintiffs  contend Unum applies the same misinterpretation to Unum's Long Term Care Policies at issue on a nationwide basis. Since the substantive law on contract interpretation throughout the nation is substantially similar--and contractually applies to the interpretation of the same or similar relevant policy language, regardless of the specific Unum Long Term Care Policy under which the insured is afforded insurance--the claims of each Class Member in each of the subclasses are typical of Plaintiffs' claims.   Furthermore,

MICHAEL DON and his Father's Estate (including all beneficiaries and the Administrator), TAMARA PELHAM, as the Guardian ad Litem for LEROY LITTLE, and CAROLYN JAN LITTLE have no conflicts with other Class Members that would disqualify Plaintiffs from adequately serving as Class Representatives and vigorously prosecuting this class action.  Finally, Plaintiffs are represented by able attorneys who are experienced in prosecuting class actions.

### FIRST CAUSE OF ACTION:  BREACH OF INSURANCE CONTRACT
**(By all Plaintiffs and all Subclass Members against all Defendants)**

116.   Plaintiffs and all Subclass Members reallege and incorporate herein all other paragraphs of the complaint in their entirety as if set forth at length herein.

117.   Unum's Long Term Care Policies constitute contracts that exist between Plaintiffs and the Subclass Members, on one hand, and Unum, on the other hand. Plaintiffs and the Subclass Members paid their premiums and complied with all terms necessary to obtain benefits under Unum's Long Term Care Policies and have performed all their obligations under the contracts of insurance, unless excused.

118.   While Unum's Long Term Care Policies were in full force and effect, MICHAEL DON's Father, and LEROY LITTLE, and the "accrued damages" and "in claim" Subclass Members suffered a covered loss as defined in Unum's Long Term Care Policies.

119.   Pursuant to, and consistent with, the terms and conditions set forth in Unum's Long Term Care Policies, MICHAEL Don's Father, LEROY LITTLE, and

- 49 –

the "accrued damages" and "in claim" Subclass Members submitted claims for benefits.

120.   Unum breached the Form Policies by failing to pay to MICHAEL DON's Father, LEROY LITTLE, and the "accrued damages" and "in claim" Subclass Members benefits to which they were or are entitled, and by adopting an interpretation of the contract's provisions that renders its contracts illusory to all Plaintiffs and all Subclass Members.

121.   As a direct result of Unum's breaches of its Form Contracts, MICHAEL DON's Father, LEROY LITTLE, and the "accrued damages" and "in   claim" Subclass Members have been damaged in an amount not yet fully ascertained, but which damages include the loss of the contractual benefits under Unum's Long Term Care Policies, and due to Unum's interpretation of the Form Contracts, all Plaintiffs and all Subclass Members have the right (at their election) to rescind the contracts on the ground no contract came into being, and (at their election) obtain a refund of all premiums paid.

**SECOND CAUSE OF ACTION:  INSURANCE BAD FAITH**
**(By Plaintiffs MICHAEL DON, TAMARA PELHAM, as the Guardian ad Litem of LEROY LITTLE, Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum, against all Defendants)**

122.   MICHAEL DON, TAMARA PELHAM, as the Guardian ad Litem of LEROY LITTLE, Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum reallege and incorporate herein all other

paragraphs of the complaint in their entirety as if set forth at length herein.

123. Included in Unum's Long Term Care Policies between Unum, on the one hand, and MICHAEL DON's Father, and LEROY LITTLE, Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum, on the other hand, are covenants of good faith and fair dealing. The manner in which Unum calculated benefits under Unum's Long Term Care Policies constituted more than just a breach of contract. It was also an unreasonable interpretation that constituted a breach of the covenant of good faith and fair dealing.

124. Unum breached the covenant of good faith and fair dealing in the following particulars:

a) Delivering a policy of insurance with express terms and then, upon presentation of a covered claim, taking an unreasonable and improper position with respect to the interpretation knowing that the position it was taking would deny MICHAEL DON's Father, and LEROY LITTLE, and members of Subclass V benefits purchased under Unum's Long Term Care Policies;

b) Delivering a policy of insurance with express terms and then, upon presentation of a covered claim, taking a position contrary to Unum's Policy's terms and contrary to well settled law of California, the state in which Unum's Long Term Care Policies were issued to the members of Subclass V, with respect to the calculation of the Policy Anniversary and/or interpretation of the inflation protection provision. At the time Unum took its unreasonable position, Unum knew it would

- 51 –

deny MICHAEL DON's Father, and LEROY LITTLE, and the members of Subclass V (Unum's insureds) benefits purchased under Unum's Long Term Care Policies;

c)      Engaging in a continuous course of wrongful conduct, even after being informed by MICHAEL DON of the impropriety of its interpretation of the policy language, by denying and refusing to pay benefits according to the terms of Unum's Long Term Care Policies;

d)      Knowing that if it took an unreasonable and unlawful position regarding the inflation protection provision and/or Policy Anniversary as used to determine the amount of benefits owed under Unum's Long Term Care Policies, it would undercut the very purpose of the insurance that was purchased by MICHAEL DON's Father, and LEROY LITTLE, and  the members of Subclass V;

e)      Continually denying the full amount owed under Unum's Long Term Care Policies knowing that if it held fast to its position, the insureds would rely on, and place their trust in, the accuracy and truthfulness of Unum's representations as to the extent of coverage, and the basis for denial;

f)      Engaging in the practice of taking an unreasonable and unlawful position with respect to the calculation of benefits owed under Unum's Long Term Care Policies, knowing that the only way it would properly calculate benefits was if it was ordered to do so by a court, thereby foreseeing the damages that would flow to MICHAEL DON's Father, and LEROY LITTLE, and the members of Subclass V in having to retain counsel to obtain benefits owed; and

- 52 –

g)      Issuing members of Subclass VII one policy at inception but then sending a materially different policy represented as a "duplicate" copy of the original

125.   As a direct result of the repetitive and intentional wrongful conduct, which Unum knew would deprive (1) MICHAEL DON's Father, (2) LEROY LITTLE, (3)Subclass V, and (4) the members of Subclass VII whose policies were mailed to them in California by Unum, of the full amount of benefits owed under Unum's Long Term Care Policies, these Plaintiffs and these members of Subclasses V and VII are entitled to receive not only contractual damages but also consequential damages in order to make them whole and to insure they receive the full amount of benefits to which they are entitled. These consequential damages include, but are not limited to, attorneys' fees and costs, all of which are and were foreseeable in light of Unum's unreasonable breach of the contract.

126.   Unum's conduct was not simply the unfortunate result of poor business judgment. With full knowledge of the consequences and damages to MICHAEL DON's Father, LEROY LITTLE, and  the Class Members in Subclass V, Unum continues to (1) improperly calculate the Policy Anniversary under Unum's Long Term Care Policies issued to MICHAEL DON's Father, and the members of Subclass I who are in Subclass V; and/or (2) misrepresent to MICHAEL DON, LEROY LITTLE, and the members of Subclasses II and III who are in Subclass V that the annual inflation increase applies to the original Monthly Benefit and/or the

original Lifetime Maximum Benefit Amount even though Unum's Policy express states it applies to "the Monthly Benefit [and/or Lifetime Maximum Benefit Amount] in effect on [each] Policy Anniversary;" and/or (3) misrepresent to insureds or the authorized representatives of insureds  who are in Subclass V that, after benefits begin to be paid, the annual inflation increase applies to the amount of benefits remaining even though Unum's Policy expressly states it applies to the "Lifetime Maximum Benefit Amount," and/or deliberately fool insureds in Subclass VII into thinking a materially different policy is a duplicate of the original policy that the insured purchased. Accordingly, an award of punitive damages is warranted and appropriate in order to punish Unum for engaging in this conduct and to deter it from engaging in this practice and continuing to engage in this practice of depriving insureds of benefits owed under the express terms of Unum's Long Term Care Policies.

### THIRD CAUSE OF ACTION:
### FRAUD BY INTENTIONAL MISREPRESENTATION
### (By all Plaintiffs, Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum, against all Defendants)

127.   Plaintiffs, Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum, reallege and incorporate herein all other paragraphs of the complaint in their entirety as if set forth at length herein.

128.   At the time Unum's Long Term Care Policies were issued to MICHAEL DON's Father, LEROY LITTLE, and CAROLYN JAN LITTLE, Subclass V, and the

members of Subclass VII whose policies were mailed to them in California by Unum, Unum explicitly represented that Unum would calculate policy anniversaries from a specific date (e.g., the "Policy Date"); and/or Unum would apply the annual inflation increase to the Monthly Benefit and/or to the Lifetime Maximum Benefit Amount in effect on the Policy Anniversary; and/or Unum would apply the annual inflation increase to the Lifetime Maximum Benefit Amount regardless of whether or not the insured suffered a covered loss.

129.   Each and every time Unum made these written representations in Unum's Long Term Care Policies that Unum issued to Plaintiffs, Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum, they were known to be false by Unum because Unum knew it would calculate policy anniversaries from a different date (e.g., the "Effective Date"); and/or Unum knew it would apply the annual inflation increase to the *original* Monthly Benefit and/or to the *original* Lifetime Maximum Benefit Amount as quantified on the Schedule Page; and/or Unum knew that--after an insured suffered a covered loss and began receiving benefits--Unum would apply the annual inflation increase to the *remaining* Lifetime Maximum Benefit Amount after deducting all benefits already paid out in the prior year(s), and/or Unum knew it was fooling insureds that the duplicate copy it mailed them was the same as the original policy.  Unum did not disclose this highly material information to MICHAEL DON's Father, LEROY LITTLE, CAROLYN JAN LITTLE, Subclass V, and the members of Subclass VII whose policies were mailed

to them in California by Unum, when Unum issued Unum's Long Term Care Policies to them, but instead concealed this critical information from these Plaintiffs and these Members of Subclasses V and VII when they purchased Unum's Long Term Care Policies.

130.   At the time Unum issued Unum's Long Term Care Policies containing the same or similar inflation protection provision language as the Policy, Unum intended to defraud Plaintiffs, Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum, for the purpose of inducing them to rely and to act or refrain from acting because Unum's insureds would place their trust in the accuracy and truthfulness of Unum's representations as to the extent of coverage, and the amount Unum would owe under Unum's Long Term Care Policies

131.   Unum intended to defraud because Plaintiffs and other similarly situated insureds were less likely and less able to pursue remedies on their own because they would not discover Unum's fraud and deceit until after they had become seriously disabled, were no longer about to care for themselves, and likely entered into commitments with care providers based on the express terms of the policies.

132.   On January 9, 1997, Unum issued the Policy to MICHAEL DON's Father, which stated "you may cancel this Policy for any reason within 30 days after it is delivered to you or your representative." Exh. A., Don0001.  On March 9, 1998, Unum issued two Unum Long Term Care Policies to LEROY LITTLE and

THIRD AMENDED COMPLAINT

CAROLYN JAN LITTLE which stated: "You may cancel this Policy for any reason within 30 days after it is delivered to you or your representative." Exh. N, p. 1 of 19; Exh. O, p. 1 of 19. Plaintiffs and the members of Subclass V, actually, detrimentally and justifiably relied on Unum's concealments and representations as set forth in Unum's Long Term Care Policies because Plaintiffs, Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum did not cancel Unum's Policies but rather accepted them and relied on Unum to honor the express terms of in Unum's Policies.

133. The true facts--which Unum deliberately concealed from Plaintiffs, Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum, at the time Unum sent each of them Unum's Long Term Care Policies for acceptance--are that in the event a covered loss occurred (1) Unum did not calculate the Policy Anniversary from the specific date identified in the Policy; and/or (2) Unum did not apply the annual inflation increase to the Monthly Benefit or to the Lifetime Maximum Benefit Amount in effect on each Policy Anniversary; and/or (3) after an insured suffered a covered loss and began receiving policy benefits, Unum did not apply the annual inflation increase to the Lifetime Maximum Benefit Amount. Rather, at the time each of Unum's Long Term Care Policies issued to Plaintiffs and to the members of Subclass V, Unum had a company-wide system in place to calculate the Policy Anniversary from a different date (e.g., the Effective Date), and/or to apply the annual inflation increase to the original Monthly Benefit

and/or to the original maximum benefit amount (e.g., the original Lifetime Maximum Benefit Amount), and/or (after an insured suffered a covered loss and began receiving policy benefits) Unum applied the annual inflation increase to the remaining Lifetime Maximum Benefit Amount after deducting for benefits already paid out.

134. The actual reliance of Plaintiffs Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum--in accepting and not cancelling Unum's Policies after Unum gave each of these insureds a right to examine their Policies, and Unum agreed if they did not cancel their Policies within a designated amount of time that both the insured and Unum would be bound by the express terms therein--was reasonable in light of the fact that Unum expressly stated in Unum's Long Term Care Policies that (1) the Policy Anniversary would be calculated from a specific date (e.g., the "Policy Date," not the "Effective Date"); and/or (2) the annual inflation increase would apply to the Monthly Benefit and/or to the Lifetime Maximum Benefit Amount in effect on each Policy Anniversary (not the original Monthly Benefit and/or the original Lifetime Maximum Benefit Amount); and/or (3) the annual inflation increase would continue to occur regardless of the insured's health and whether or not the insured suffered a covered loss, and/or (4) issuing members of Subclass VII one policy at inception but then sending a materially different policy represented as a "duplicate" copy of the original policy when those Subclass members asked Unum for a duplicate copy of the policy

135.   Reliance by Plaintiffs Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum is further justified in light of the special relationship between an insurer and an insured, and furthermore, because Plaintiffs Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum, each a contracting party, did not anticipate as a risk of the contracting process or of the contract itself that Unum, the other contracting party, will lie and make intentional misrepresentations and concealments of material facts.

136.   MICHAEL DON's Father, who was insured with Unum since 1997, did not learn of Unum's misrepresentations until around August 2012 when Unum advised MICHAEL DON, who was his Father's authorized and legally designated representative, that (1) the Policy Anniversary was being calculated from a different date (i.e., the Effective Date) contrary to the express language stating it would be calculated from a specific date (i.e., the Policy Date); (2) the annual inflation increase was being applied to the original Monthly Benefit and to the original Lifetime Maximum Benefit Amount, contrary to the express language stating it would be applied to the Monthly Benefit and to the Lifetime Maximum Benefit Amount in effect on each Policy Anniversary; and (3) after an insured suffers a covered loss and begins receiving benefits, the annual inflation increase applies to the amount of benefits remaining, contrary to the express language stating it would be applied to the Lifetime Maximum Benefit Amount.   LEROY LITTLE and CAROLYN JAN

LITTLE did not learn of Unum's misrepresentations until March 2015.

137.   Plaintiffs, Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum have been and will continue to be damaged because Unum's misrepresentations continue to reduce the benefits due and/or make the insurance contracts illusory. Plaintiffs, Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum are entitled a choice to rescind Unum's Policies and receive a full repayment of their past paid premiums, plus interest.

138.   Unum's continuing conduct constitutes malice, fraud or oppression as those terms are defined in California Civil Code § 3294.

139.   Unum knows that the specific benefit purchased is for the annual inflation increase to be calculated on a specific date (e.g., the Policy Date) and to be applied to the Monthly Benefit and Lifetime Maximum Benefit Amount in effect on each Policy Anniversary and to occur regardless of the insured's health and whether or not the insured has suffered a covered loss.  Moreover, by calculating the Policy Anniversary from the incorrect date (e.g., Effective Date) and/or applying the annual inflation increase to the original Monthly Benefit and/or to the original Lifetime Maximum Benefit Amount and/or applying the annual inflation increase to the amount of benefits remaining after an insured suffers a covered loss and begins receiving benefits, Unum causes foreseeable hardship to Unum's insureds, particularly given Unum knows that the insurance benefits are for insureds to

- 60 –

purchase necessary, long-term care benefits which are immediately needed at the time of the covered loss for the well-being, health and care of its insureds.

140.   Knowing the purpose of the benefits only highlights Unum's conduct as constituting malice, fraud or oppression as those terms are defined in California Civil Code § 3294, since Unum has knowledge of the California law which governs its insurance policies issued to Subclass V and the members of Subclass VII whose policies were mailed to them in California by Unum, and Unum knew and knows that its interpretation of Unum's Long Term Care Policies in the manner set forth above is in violation of the express terms of Unum's Policies and settled California law. Nonetheless, Unum misled and continues to mislead its insureds about Unum's Long Term Care Policies' language in order to deprive its insureds of desperately needed benefits owed to them.

141.   With full knowledge of the severe consequences and predictable damages to the health and well-being of Plaintiffs, Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum, Unum continues to represent to Plaintiffs, Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum that the Policy Anniversary is calculated from a different date (e.g., the Effective Date, not the Policy Date) and/or that the annual inflation increase applies to the original Monthly Benefit and/or to the original Lifetime Maximum Benefit Amount and/or to the amount of benefits remaining after an insured suffers a covered loss, and/or issuing

members of Subclass VII one policy at inception but then sending a materially different policy represented as a "duplicate" copy of the original policy when those Subclass members asked Unum for a duplicate copy of the policy. Accordingly, an award of punitive damages is warranted and appropriate in order to punish Unum for engaging in this conduct and to deter it from continuing to engage in this practice of depriving insureds of long term care benefits owed under the express terms of Unum's Long Term Care Policies.

**FOURTH CAUSE OF ACTION:**
**UNFAIR BUSINESS PRACTICES IN VIOLATION OF CALIFORNIA
BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET SEQ.**
**(By all Plaintiffs, Subclass V, and the members of Subclass VII whose policies
were mailed to them in California by Unum, Against all Defendants)**

142.   Plaintiffs, Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum, reallege and incorporate herein all other paragraphs of the complaint in their entirety as if set forth at length herein.

143.   Unum's institutional practice violated California's Unfair Competition Law, Business and Professions Code section 17200 et seq. (the "UCL") by engaging in unlawful, unfair and fraudulent conduct. The UCL provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice," including acts of intentional misrepresentation or concealment of material facts.

144.   Unum's conduct violated the unlawful prong of the UCL because Unum's conduct violated California Civil Code sections 1709, 2223, 2224

(California's Fraudulent Business Practices Statute, California Civil Code, Section 1710 (same)); California Penal Code, Section 484 (Same). Unum also engaged in the fraudulent and unfair practices by issuing to insureds coverage under Unum's Long Term Care Policies that provided for benefits after each insured suffers a covered loss, yet Unum knew when it issued these Policies that it would be paying a different set of benefits under a different set of rules and calculations of which only Unum knew.

145.   As a result, Plaintiffs, others similarly situated in Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum were and will be denied vested Property rights by Unum.  Each of the Defendants generated--and continues to generate--gains as a direct result of its aforementioned unfair, unlawful and/or fraudulent business practices.

146.   Plaintiffs, others similarly situated in Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum are entitled to: (1) restitution and/or restitutionary disgorgement of any ill-gotten gains obtained by each of the Defendants as a result of their UCL violations, and (2) reasonable attorneys' fees under Code of Civil Procedure section 1021.5 and any other applicable statutory provision.

**FIFTH CAUSE OF ACTION:  DECLARATORY RELIEF SEEKING A DECLARATION AND INJUNCTION**
**(By Plaintiffs TAMARA PELHAM, as the Guardian ad Litem for LEROY LITTLE, CAROLYN JAN LITTLE, and all members of Subclass VI and VII, except "accrued damages" Subclass Members, against all Defendants)**

147.   Plaintiff TAMARA PELHAM, as the Guardian ad Litem for LEROY LITTLE, Plaintiff CAROLYN JAN LITTLE, and all members of Subclasses VI and VII, except "accrued damages" Subclass Members, reallege and incorporate herein all other paragraphs of the complaint in their entirety as if set forth at length herein.

148.   Unum's Long Term Care Policies are standard Form Policies and constitute contracts that exist between LEROY LITTLE, CAROLYN LITTLE and the members of Subclasses VI and VII (except "accrued damages" Subclass Members), on one hand, and Unum, on the other hand.

149.   Unum's Long Term Care Policies agree to provide certain specified long term care benefits to these Plaintiffs and these members of Subclasses VI and VII based on certain specified calculations after they suffer a covered loss.

150.   An actual controversy exists between these Plaintiffs and these members of the Subclasses VI and VII, on the one hand, and Unum, on the other hand.

151.   Unum's company-wide unreasonable interpretation of various terms of Unum's Long Term Care Policies denies and/or postpones the payment of benefits to these Plaintiffs and these members of Subclasses VI and VII.

152.   Because Unum's interpretation is erroneous, as a matter of law, these

Plaintiffs, on their own behalf, and on behalf of these members of Subclasses VI and VII, seek a judicial determination that Unum's institutional practices violate the standard Form Policies.

153. A declaration is necessary to determine the parties' rights and obligations under Unum's Long Term Care Policies.  Upon such a finding by this Court, these Plaintiffs on behalf of these members of Subclasses VI and VII will seek an injunction against Unum to enjoin Unum from engaging in and/or continuing its offending institutional practices as are set forth in this Complaint, including but not limited to, Unum's practice of changing the language in duplicate copies of Unum's Long Term Care Policies.  Unless enjoined by this Court, Unum will continue to engage in the above-described acts and practices. Unum's acts and practices have caused and will continue to cause great and irreparable harm to these members of Subclasses VI and VII, given the unique nature of the benefits purchased, which are long term care insurance benefits, and because any money damages eventually awarded long after an insured seeks and needs long-term care, but is denied them, is no substitute to providing benefits on time and in the proper amounts. As a result, these Plaintiffs and these members of Subclasses VI and VII have no other adequate remedy at law, and injunctive relief is necessary in order for these class members to secure care for themselves at the moment they learn they are desperately in need of it. An award of money damages long after Unum's breaches its contracts cannot undo the irreparable harm that will be suffered by these members of Subclasses VI and VII

forced to forego essential care necessary at a particular moment in time for their well-being and health.

WHEREFORE, Plaintiffs, Individually, and as the representatives of the Class Members, pray for relief from this Court, and seek damages, equitable relief and other remedies as follows:

A.  For an Order from this Court certifying this action as a class action and Plaintiffs as the Class Representatives, and appoint Plaintiffs' counsel as class counsel;

B.  For all Subclasses, the right to rescind the contract as illusory and (at the election of each insured) to obtain a refund of all premiums paid;

C.  For all subclasses (except Subclass VI), general and special damages;

D.  For Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum, all foreseeable consequential damages, including but not limited to attorneys' fees, arising out of Unum's breach of the implied covenant of good faith and fair dealing;

E.  For Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum, punitive damages

THIRD AMENDED COMPLAINT

F.     For Subclass V, and the members of Subclass VII whose policies were mailed to them in California by Unum, statutory attorney fees and *Brandt* attorney fees;

G.     For pre-judgment and post-judgment interest;

H.     For costs of this lawsuit;

I.     For the members of Subclass VI and VII, except "accrued damages" Subclass Members, declaratory and injunctive relief; and

J.     For any other relief including equitable relief under the UCL as this Court deems just and proper.


Dated:  March 26, 2015                          SHENOI KOES LLP

                                                By:
                                                _____/S/_____
                                                     Allan A. Shenoi
                                                Attorneys for Plaintiffs and the
                                                Proposed Subclasses

1

## DEMAND FOR JURY TRIAL

2

3
            Plaintiffs and the members of the Class hereby request a jury trial on all

4
claims so triable.

5

6

7
Dated: March 26, 2015                    SHENOI KOES LLP

8

9
                                    By: _____/S/_____

10
                                         Allan A. Shenoi

11
                                         For Plaintiffs and the Proposed
                                         Subclasses

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28