# EXHIBIT A

*Full Copy of Policy*

 UNUM.

## LONG TERM CARE
## NURSING HOME AND PROFESSIONAL HOME CARE POLICY

UNUM Life Insurance Company of America (referred to as "we", "our" and "us") is pleased to issue this insurance policy to you. This policy provides long term care benefits under stated conditions. Please refer to the policy provisions where we tell you when and how we will pay benefits. You will find an index of these provisions on Page 2.

**Notice to buyer:** This policy may not cover all of the costs associated with long term care incurred by the buyer during the period of coverage. The buyer is advised to review carefully all policy limitations.

## THIS POLICY IS GUARANTEED RENEWABLE
## WE HAVE A LIMITED RIGHT TO CHANGE PREMIUMS

You may renew this policy on each Policy Anniversary by paying each premium before its Grace Period ends. We reserve the right to change premiums for this policy. To do so, we must change the premiums for all similar policies issued in your state on this policy form. Any change in premium will be effective on your Policy Anniversary Date. We will send you written notice at least 31 days in advance.

## 30 DAY RIGHT TO EXAMINE YOUR POLICY

You may cancel this policy for any reason within 30 days after it is delivered to you or your representative. Simply return the policy, within 30 days of its receipt, to us at our Home Office. If this is done, the policy will be canceled from the beginning and all of the premium paid will be refunded within 10 days after the policy is returned to us.

## IMPORTANT CAUTION ABOUT YOUR APPLICATION

We issued this policy based upon medical and other questions you answered in your application. A copy of your application is attached. If, for any reason, any of your answers are incorrect or untrue, contact us immediately at the address stated below, to the attention of the Long Term Care Division.

**If your answers on this application are misstated or untrue, we may have the right to deny benefits or rescind your coverage.** The best time to clear up any questions is now, before a claim arises!

## THIS POLICY IS NOT A MEDICARE SUPPLEMENT POLICY. If you are eligible for Medicare, review the Medicare Supplement Buyer's Guide available from us.

> THIS POLICY IS AN APPROVED LONG-TERM CARE INSURANCE POLICY UNDER CALIFORNIA LAW AND REGULATIONS. HOWEVER, THE BENEFITS PAYABLE BY THIS POLICY WILL NOT QUALIFY FOR MEDI-CAL ASSET PROTECTION UNDER THE CALIFORNIA PARTNERSHIP FOR LONG-TERM CARE. FOR INFORMATION ABOUT POLICIES AND CERTIFICATES QUALIFYING UNDER THE CALIFORNIA PARTNERSHIP FOR LONG-TERM CARE, CALL THE HEALTH INSURANCE COUNSELING AND ADVOCACY PROGRAM AT THE TOLL-FREE NUMBER, 1-800-434-0222.

This policy becomes effective on the Effective Date shown on Page 3, provided the first modal premium is paid.

Kevin J. Tierney
Secretary

Rosen
President

UNUM Life Insurance Company of America
Portland, Maine 04122

LTC7392

1042-95(1/97)

# INDEX OF POLICY PROVISIONS

| | | | |
|---|---|---|---|
| 1 | Renewal | 13 | Premiums |
| 1 | Thirty Day Right to Examine Policy | | Waiver of Premium |
| | | | Grace Period |
| 3 | Policy Schedule | | Reinstatement |
| | | 14 | Refund of Premium After Death |
| 4 | THERE IS NO PAGE 4 IN THIS POLICY | 14 | General Provisions |
| 5 | Terms You Should Know | | The Contract |
| | | | Statements |
| 9 | Benefits | | Legal Actions |
| | Monthly Benefit | | Incontestable |
| 10 | Bed Reservation Provision | | Conformity with State Statutes |
| | Respite Care Benefit | | Misstatement of Age |
| | Benefit Increase Provision | 15 | Pre-Existing Conditions |
| 11 | How To File a Claim | | Nonparticipating |
| | When Claims Are Paid | | Owner |
| | To Whom Claims Are Paid | | Loss Payee |
| 12 | Claim Overpayment | | Assignment |
| | Termination of Benefits | | |
| | Plan Exclusions | | |

LIFE  •  HEALTH  •  GROUP  •  BUSINESS

## THE MORTON WEDNER
## INSURANCE AGENCY

17612 Beach Blvd., Suite 18
P.O. Box 1332 • Huntington Beach, CA 92647

MORTON WEDNER                    (714) 842-1234

2

DON0002

## POLICY SCHEDULE

| | | | |
|---|---|---|---|
| **INSURED** | Ruben S Don | **POLICY DATE** | 01/09/97 |
| **POLICY NUMBER** | LAC540428 | **EFFECTIVE DATE** | 04/07/97 |

### SUMMARY OF PREMIUM

Premiums are payable as follows:

| Beginning | Annual | Semi-Annual | Quarterly | Monthly |
|---|---|---|---|---|
| 01/09/97 | $1,188.54 | $606.16 | $309.02 | $106.97 |

### SUMMARY OF COVERAGE

| | |
|---|---|
| Form | LTC7392 |
| Effective Date | 04/07/97 |
| Annual Premium | $1,188.54 |

| | |
|---|---|
| Elimination Period | 90 Cumulative Days |
| Elimination Accumulation Period | 270 Days |
| *Benefit Amount | Nursing Home Benefit - $3,000 Per Month |
| | Professional Home Care Benefit - 100% of Nursing Home Benefit |
| Lifetime Maximum Benefit Amount | $108,000 |
| Benefit Increase Provision | 5% Simple   2X Cap |

* The Benefit Amount and the Maximum Benefit Amount will increase each policy anniversary based on the Benefit Increase Provision purchased.

* Residential Care Facility Benefit will be 60% of the Nursing Home Benefit; or the Home Care Benefit if the percentage is greater.

SPOUSAL DISCOUNT APPLIED

3

DON0003

## TERMS YOU SHOULD KNOW

Many terms used in your policy have special meanings. A list of these terms and meanings follows:

**"Activities of Daily Living" (ADLs) are:**

(a) **bathing:** the ability to wash yourself either in the tub or shower or by sponge bath, with or without equipment or adaptive devices without stand-by assistance of another person.

(b) **dressing:** the ability to put on and take off all garments, and medically necessary braces or artificial limbs usually worn, and to fasten or unfasten them, without the stand-by assistance of another person.

(c) **transferring:** the ability to move in and out of a chair or bed with or without equipment such as canes, quad canes, walkers, crutches or grab bars or other support devices including mechanical or motorized devices without the stand-by assistance of another person.

(d) **ambulating:** the ability to walk from one location to another, indoors or outdoors, with or without the use of supportive equipment such as a walker, crutches, or artificial limbs without the stand-by assistance of another person.

(e) **toileting:** the ability to get to and from and on and off the toilet, to maintain a reasonable level of personal hygiene, and to care for clothing, without the stand-by assistance of another person.

(f) **continence:** the ability to voluntarily control bowel and bladder function, or, in the event of incontinence, the ability to maintain a reasonable level of personal hygiene without the stand-by assistance of another person.

(g) **eating:** the ability to get nourishment into the body by any means once it has been prepared and made available to you, without the stand-by assistance of another person.

**"Adult Day Care"** means care provided by an Adult Day Care Facility.

**"Adult Day Care Facility"** is a facility that provides a community-based group program offering health, social and related support services for impaired adults; operates under state licensing laws and any other laws that apply.

**"Assessment"** means an interview of you done by us or our representative to assist in the determination of your insurability at the time of application, or the determination of Loss of Functional Capacity or Cognitive Impairment at the time of your claim.

**"Cognitive Impairment"** means that you have suffered a deterioration or loss in your intellectual capacity which requires another person's assistance or verbal cueing to protect yourself or others as measured by clinical evidence and standardized tests which reliably measure your impairment in the following areas:

. Your short or long term memory;

. Your orientation as to person (such as who You are), place (such as Your location), and time (such as day, date, and year);

. Your deductive or abstract reasoning.

DON0004

Such loss in intellectual capacity can result from Alzheimer's disease or similar forms of senility, irreversible dementia or Advanced Age.

"**Effective Date**" is the date shown in the Policy Schedule on page 3. Coverage takes effect on the Effective Date provided the first Modal Premium is paid.

"**Elimination Accumulation Period**". We do not require that an Elimination Period longer than 30 days be consecutive days. However, we do require that an Elimination Period longer than 30 days occur entirely during a limited time span, called the Elimination Accumulation Period. The Elimination Accumulation Period is equal to 3 times the Elimination Period. The number of days in the Elimination Accumulation Period is shown in the Policy Schedule.

"**Elimination Period**" means a period of either:

(a) 30 or less consecutive days during which you suffer a covered Loss of Functional Capacity or covered Cognitive Impairment and you are receiving services in a Nursing Facility or Residential Care Facility for which no benefit is payable, or 30 consecutive days during which you suffer a covered Loss of Functional Capacity or covered Cognitive Impairment and you are receiving Professional Home Care and no benefit is payable. Each calendar week that you receive at least one day of Professional Home Care will be counted as seven days towards completing the Elimination Period. If you continue to remain at home or another similar place and do not receive Professional Home Care for at least one day within a calendar week, the Elimination Period will begin again.

A separate Elimination Period will apply to each covered loss. However, each covered loss that is separated from the other by less than 6 months will be considered to be the same covered loss and not subject to a new Elimination Period; or

(b) greater than 30 cumulative days during which you suffer a covered Loss of Functional Capacity or covered Cognitive Impairment and you are receiving services in a Nursing Facility or Residential Care Facility and for which no benefit is payable, or during which you suffer a covered Loss of Functional Capacity or covered Cognitive Impairment and you are receiving Professional Home Care and no benefit is payable. Each calendar week that you receive at least one day of Professional Home Care will be counted as seven days towards completing the Elimination Period. An Elimination Period longer than 30 days must be satisfied by you only once during your Lifetime.

The number of days in the Elimination Period is shown in the Policy Schedule.

"**Home Care Provider**" is:

(a) an organization that, or a nurse or other professional who, is licensed or certified by the appropriate licensing agency of the state where Professional Home Care will be provided; or certified as a home health care organization as defined under Medicare;

(b) any other organization that meets all of the following tests:

- primarily provides nursing care and other therapeutic services;

6

DON0005

- has standards, policies and rules established by a professional group which is associated with the organization;

- includes at least one doctor and one registered nurse;

- maintains a written record of care on each patient; and

- includes a plan of care and record of services provided;

(c) a skilled or unskilled person appropriately licensed by the state, if required, to provide services under a Plan of Care developed by a Physician or a multi-disciplinary team under medical direction; or

(d) a similar organization approved by us.

**"Home Office"** means the UNUM Life Insurance Company of America, 2211 Congress Street, Portland, Maine 04122.

**"Homemaker Services"** means assistance necessary to or consistent with your ability to remain living in your home.

**"Hospice Facility"** is a facility that provides a formal program of care for terminally ill patients whose life expectancy is less than 6 months, provided on an inpatient or outpatient basis and directed by a physician or multi-disciplinary team under medical direction. It must be licensed, certified or registered in accordance with state law.

**"Lifetime Maximum Benefit Amount"** means the total dollar amount of benefits that will be paid under the Policy. The Lifetime Maximum Benefit Amount is shown in the Policy Schedule.

**"Loss of Functional Capacity"** means that you are unable to perform 2 or more ADLs because of Sickness, Injury or Advanced Age.

**"Monthly Benefit Amount"** means your monthly Nursing Home, Residential Care Facility or Professional Home Care Benefit Amount shown in the Policy Schedule.

**"Nursing Facility"** means:

(a) a facility, or a distinctly separate part of a hospital, that provides skilled or intermediate nursing care and custodial care and operates under state licensing laws and any other laws that apply; or

(b) any other facility that meets all of the following tests:

   (1) is operated as a health care facility under applicable state licensing laws and any other laws;

   (2) primarily provides nursing care under the orders of a Physician;

   (3) operates under the supervision of a registered nurse or a licensed vocational nurse;

   (4) is regularly engaged in providing room and board and continuously provides 24-hour-per-day nursing care of sick and injured persons;

   (5) maintains a daily medical record of each patient who must be under the care of a Physician;

   (6) is authorized to administer medication to patients on the order of a Physician; and

7

DON0006

(7) is not, other than incidentally, a home for the mentally retarded, the mentally ill, the blind or the deaf, a hotel, a domiciliary care home, a residence, or a home for alcoholics or drug abusers; or

(c) a similar facility approved by us.

**"Nursing Home Benefit"** means your monthly Nursing Home Benefit Amount shown in the Policy Schedule.

**"Personal Care"** means assistance with ADLs, including the instrumental ADLs, provided by a skilled or unskilled person under a Plan of Care. The instrumental ADLs include using the telephone, managing medications, moving about outside, shopping for essentials, preparing meals, laundry and light housekeeping.

**"Plan of Care"** means a program of treatment or care. It must be developed by your physician or multi-disciplinary team and approved in writing by your physician before the start of home care services. The Plan of Care is subject to updating in writing no more often than every 60 days. The insured will be responsible for submitting:

(a) the physician approved Plan of Care; and

(b) the updates of such plan.

**"Professional Home Care"** means services provided under a Plan of Care and include:

(a) occupational, physical, respiratory or speech therapy;

(b) nursing care services provided by a registered nurse or a licensed vocational nurse;

(c) services provided by a medical social worker or home health aide;

(d) Homemaker Services;

(e) Personal Care; or

(f) Hospice services.

Professional Home Care does not include services performed by your family members either directly to you or through a Home Care Provider or an Adult Day Care Facility. Your family members include your spouse, children, parents, sisters, brothers, grandparents or grandchildren, or persons related to you by marriage.

Professional Home Care services do not include services by providers that are not licensed or certified, when such services require licensing or certification under the laws of the states where the services are provided.

**"Professional Home Care Benefit"** means your monthly Professional Home Care Benefit Amount shown in the Policy Schedule.

**"Residential Care Facility"** means:

(a) A facility that is primarily engaged in providing ongoing care and services in one location and meets all of the following tests:

(1) provides 24 hour a day care; and

(2) provides custodial services and personal care assistance with needs as a result of the Loss of Functional Capacity or Cognitive Impairment; and

(3) has night supervision to the extent required by law; and

8

DON0007

(4) provides 3 meals a day, including special dietary requirements; and

(5) operates under state licensing laws and any other laws that apply; and

(6) is not, other than incidentally, a home for alcoholics or drug abusers, or a hotel; or

(b) a similar facility approved by us.

NOTE: These requirements are typically met by Residential Care Facilities that are either free standing facilities or part of a life care community. In general, they are not met by individual residences, boarding homes, or independent living units.

"Respite Care" means short-term or periodic care which is required to maintain your health or safety and to give temporary relief to your primary informal caregiver from his or her caregiving duties. Respite Care can be provided in your home, a Nursing Facility, a Residential Care Facility, an Adult Day Care Facility, or a similar facility approved by us.

"Stand-by Assistance" means you require the presence of another human being to ensure that all or part of an ADL may be completed or to ensure your safety. Stand-by assistance may also mean that in order to accomplish an ADL, you need verbal cueing.

"You" and "Your" refer to the Insured named on Page 3. It is the person whom we are insuring. The Insured cannot be changed.

## BENEFITS

**Monthly Benefit**

After you satisfy the Elimination Period, we will pay you:

(a) the Nursing Home Benefit Amount if you suffer a covered Loss of Functional Capacity or covered Cognitive Impairment and are receiving services in a Nursing Facility, or

(b) the Residential Care Facility Benefit Amount if you suffer a covered Loss of Functional Capacity or covered Cognitive Impairment and are receiving services in a Residential Care Facility.

The Residential Care Facility Benefit Amount will be the greater of:

(1) 60% of the Nursing Home Benefit Amount; or

(2) the Professional Home Care Benefit percentage shown on the Policy Schedule.

(c) the Monthly Professional Home Care Benefit if you choose to receive care anywhere other than a Nursing Facility or Residential Care Facility and are receiving Professional Home Care Services. This care can be provided at any type of facility, such as an Adult Day Care Facility, a Hospice Facility, or your home by a Home Care Provider. You must give us proof indicating days of Professional Home Care services provided to you before a benefit will be paid.

DON0008

We will send the benefit payments to you each month. If you are eligible for benefits for a period that is less than one month, we will pay 1/30th of the net monthly payment for each day that you suffer a covered Loss of Functional Capacity or covered Cognitive Impairment and are receiving services. Benefit payments will cease as provided in the "Termination of Benefits" section of this policy. In no event will the benefits paid under this policy exceed the Maximum Benefit Amount shown in the Policy Schedule on Page 3.

**Bed Reservation Provision**

If your stay in a Nursing Facility or Residential Care Facility is interrupted because you are hospitalized and you are receiving a benefit, we will continue to pay you the Monthly Benefit Amount if a charge is made to reserve your Nursing Facility or Residential Care Facility accommodations. Such benefit will count toward the Lifetime Maximum Benefit Amount.

If your stay is interrupted while you are completing your Elimination Period, such days will be used to help satisfy this period.

Covered Bed Reservation days will be limited to 31 days per calendar year.

**Respite Care Benefit**

If you suffer a covered Loss of Functional Capacity or covered Cognitive Impairment but Professional Home Care Benefits have not yet become payable, we will make payments to you for each day you receive Respite Care for up to 15 days each calendar year. The amount of your daily payment will equal 1/30th of your Monthly Professional Home Care Benefit Amount. You do not have to complete an Elimination Period for Respite Care

payments to become payable. Care can be provided to you by:

(a) a formal caregiver, such as a Home Care Provider, a registered nurse, a licensed vocational nurse in:

- your home,
- nursing home,
- Residential Care Facility,
- Adult Day Care Facility,
- a similar facility approved by us; or

(b) an informal caregiver, such as your friends or relatives.

Other than for premium waived during the Elimination Period according to the terms of the policy, premium will not be waived while you are receiving a payment for Respite Care.

Respite Care Benefits will count toward the Maximum Benefit Amount, and will end when the Lifetime Maximum Benefit Amount has been reached.

**Benefit Increase Provision - 5% Simple Inflation Protection**

Your Monthly Benefit will increase each year on the Policy Anniversary by 5% of the Monthly Benefit in effect on that Policy Anniversary. Increases will be automatic and will occur regardless of your health and whether or not you have suffered a covered Loss of Functional Capacity or covered Cognitive Impairment. Your premium will not increase due to automatic increases in your Monthly Benefit. In no event will the total Monthly Benefit be more than 200% of your original Monthly Benefit. Your Lifetime Maximum Benefit Amount will also increase by 5%.

10

DON0009

#:846

## How To File a Claim

You must give us written notice of claim within 30 days of the date of Loss of Functional Capacity or Cognitive Impairment. If it is not possible for you to give us notice within this time limit, it must be given as soon as reasonably possible.

We will send you our initial claim forms when we receive your written notice of claim. If you do not receive our claim forms within 15 days after written notice of claim is sent, you can send us written proof of claim without waiting for the forms.

You must give us initial proof of claim no later than 90 days after the date of Loss of Functional Capacity or Cognitive Impairment.

You must give proof of continued Loss of Functional Capacity or Cognitive Impairment:

(a) at intervals requested by us; and

(b) within 90 days of our request.

If it is not possible for you to give proof within these time limits, it must be given as soon as reasonably possible. However, proof of claim must be given no later than one year after the time proof is otherwise required.

In addition to claim forms, we may, at our expense and from time to time during the continuance of your loss, require one or more of the following as proof of claim:

(a) an Assessment;

(b) a Physician's statement and/or copies of relevant medical records from any Physician or health care provider involved in your care;

(c) an independent medical examination.

We reserve the right to select the Physician to perform the independent medical examination, and to request additional information necessary to our claim determination from you, your Physician, or other health care providers.

The proof must cover:

(a) the date the Loss of Functional Capacity or Cognitive Impairment occurred;

(b) the cause of the Loss of Functional Capacity or Cognitive Impairment;

(c) the extent of the Loss of Functional Capacity or Cognitive Impairment; and

(d) such other proof as we may deem necessary.

## When Claims are Paid

When we receive proof of claim, benefits payable under the policy will be paid before the end of the month for each day for which you were entitled to benefits during the prior month.

## To Whom Claims Are Paid

All benefits are payable directly to you unless you have requested in writing that payment be made otherwise.

If you die while you are eligible to receive benefits, we will pay any accrued benefit to your estate. At our option, any remaining benefit of $1,000 or less may be paid to an alternative payee if either of the following is true:

11

DON0010

(a)  such benefit is payable to your estate, or

(b)  such benefit is payable to any person who is a minor or otherwise not competent to give a valid release.

The alternative payee must be a person who we feel is entitled to receive the benefit. Also, the alternative payee must be related to you by blood or marriage.  Any such payments made in good faith will fully discharge us to the extent of such payment.

**Claim Overpayment**

If for any reason, benefits have been paid for a period for which you were not entitled to benefits, repayment of the overpayment must be made to us within 45 days of notice to you. Any amounts not repaid may be recovered by us by offsetting against any amounts otherwise payable to you under this Policy, or by other reasonable means.

**Termination of Benefits**

Your benefits will cease on the earliest of:

(a)  the day after you cease to suffer a covered Loss of Functional Capacity or covered Cognitive Impairment;

(b)  the day after the Lifetime Maximum Benefit Amount has been paid;

(c)  the day after you die.

Termination of coverage under any condition will not prejudice any payable claim which begins prior to termination.

**Plan Exclusions**

We will not provide benefits for:

(a)  a loss which is caused by a war or any act of war, whether declared or undeclared, that occurs while your insurance is in force;

(b)  a loss which is caused by intentionally self-inflicted injuries or attempted suicide;

(c)  a loss which is caused by or results from the commission or attempted commission of a felony by you;

(d)  a loss you sustain or contract in consequence of being intoxicated or under the influence of any narcotic unless administered on the advice of a physician;

(e)  a loss which is caused by a psychological, psychiatric, or mental condition including depression, generalized anxiety disorders, personality disorders, schizophrenia or manic depressive disorders whether treated by drugs, counseling, or other forms of therapy, and irrespective of cause.

This policy does cover losses from conditions that are physical in nature, such as Parkinson's disease, Alzheimer's disease, multi-infarct dementia, brain injury, brain tumors, or other conditions not listed in the first sentence of this paragraph (e), involving structural alterations of the brain;

(f)  a period during which you are outside of Hawaii, Alaska, and the continental United States for longer than 30 days;

12

DON0011

(g) a period in which you are confined in a hospital, other than if you are confined to a Nursing Facility that is a distinctly separate part of a hospital.

## PREMIUMS

### Waiver of Premium

After you have satisfied your Elimination Period, we will waive premium payment during any period for which benefits are payable. Any premium which you had paid to us during your Elimination Period will be refunded to you on a pro rata basis.

The pro rata refund will be calculated based on the number of days in your Elimination Period.

If the Monthly Benefit is no longer payable, or if you do not receive Professional Home Care for a period of 30 consecutive days, you must resume premium payments. We will notify you of the amount of your next premium payment and the date it is due.

### Grace Period

The Grace Period is the 31 consecutive days that begin with the day a premium is due. We will keep this policy in effect and continue coverage during that time. If the premium is not paid during those 31 days, this policy will lapse. However, lapse of the policy will not prejudice any payable claim for a covered loss which begins prior to policy lapse.

The first premium is due and payable on the Effective Date of the policy. There is no Grace Period for the first premium.

### Reinstatement

If this policy terminates because a premium is not paid by the end of the Grace Period, you may apply to reinstate this policy at any time until the first unpaid premium is six months overdue.

In order to reinstate this policy, three requirements must be met. They are:

(a) you must complete a reinstatement application;

(b) we must approve that reinstatement application; and

(c) you must pay all unpaid premium.

If we approve the reinstatement application, we will reinstate this policy on the approval date. If we issue a conditional receipt/prepayment agreement and do not approve or disapprove the reinstatement application within 45 days from the date of the prepayment agreement, we will reinstate this policy on that 45th day.

If we accept premium without a rein-statement application, this policy will be reinstated.

If this policy is reinstated, it will only cover loss resulting from:

(a) Injury that occurs on or after the date this policy is reinstated; or

(b) Sickness which begins more than 10 days after this policy is reinstated.

It WILL NOT cover any Injury or Sickness which is excluded by name or description in this policy.

13

DON0012

### Refund of Premium After Death

If you die while insured under this policy, we will refund any pro rata portion of your premium paid covering the period after your death. We will make the refund within 30 days after we receive written notice of your death. Payment will be made to your estate.

## GENERAL PROVISIONS

### The Contract

This policy, including your attached application and any attached papers, represents the entire contract between you and us. Statements by agents or brokers are not part of our contract. Only an executive officer of this Company can approve a change in this policy. The approval must be in writing and be endorsed on or attached to this policy. No one else can change this policy or waive any of its provisions.

Unless we tell you something else, years, months and anniversaries that we refer to are calculated from the Policy Date shown on Page 3.

### Statements

In the absence of fraud, all statements you make in applying for this coverage are considered representations and not warranties (absolute guarantees).

No statements by you will be used to deny a claim unless a copy of your statements has been given to you.

### Legal Actions

No one may start legal actions to recover on this policy until 60 days after written Proof of Loss has been given to us. Legal action must be started within three years after the written Proof of Loss is required to be furnished.

### Incontestable

After two years from the policy's Effective Date, only fraudulent misstatements in your application may be used to contest this policy. If this policy is reinstated, the contestable period will be two years from the reinstatement date or the date of the last application if no application is received at the time of reinstatement.

"Contest" means that we question the validity of coverage under this policy by letter to you. This contest is effective on the date we mail the letter and refund the premium to you.

There is no time limit to contest this policy for fraudulent misstatements.

### Conformity with State Statutes

If any provision of this policy conflicts with the statutes of the state where you reside on the Effective Date of that provision, it is amended to conform with the minimum requirements of those statutes. Premiums may be changed to reflect these policy requirements.

### Misstatement of Age

If your age has been misstated, any benefit payable will be changed to the amount which the premium paid would have bought for the correct age.

If we accept premium for coverage which we would not have issued or which would have

14

DON0013

ceased according to the correct age, our only liability is to refund the premium for the period not covered.

## Pre-Existing Conditions

We will not reduce or deny any claim under this policy because a Sickness or Injury had existed before the policy's Effective Date.

## Nonparticipating; Dividends Not Payable

This policy does not participate in our profits or surplus earnings; and no dividends will be paid at any time.

## Owner

You own this policy. You have all the rights and privileges granted by this policy while it is in effect. Some of your ownership rights are:

(a) the right to continue or terminate this policy;

(b) the right to name someone else (a Loss Payee) to receive the benefits of this policy;

(c) the right to suspend this policy while you are in military service; and

(d) the right to assign any or all rights under this policy.

## Loss Payee

If you decide to have someone else receive policy benefits, you must notify us in writing on a form satisfactory to us. The notice will be effective when we receive it at our Home Office.

## Assignment

You may assign any or all ownership rights to someone else. The assignment must be in writing and must specify the rights which are assigned and for how long. The Loss Payee is not changed by an assignment unless the assignment specifically names a new Loss Payee. When an assignment is in effect, "you" and "your" refer to the assignee in provisions which describe ownership rights.

No assignment is binding on us until the original or an acceptable copy is received at our Home Office. We are not responsible for the validity or effect of any assignment.

15

DON0014

## I.   Personal Profile

Applicant's Name  (Please Print Last, First, Middle)

DON RUBEN S.

Occupation

RETIRED

Address (Street Apartment No. City, State, Zip)

PALM DESERT, CA 92211

Telephone (Include Area Code)

| Social Security No | Date of Birth | Height | Weight |
|---|---|---|---|
| | 30 | 5 Ft. 8 ½ Ins. | 155 Lbs. |

☑ Male    ☐ Female    ☐ Single    ☑ Married

Yes  No   If married, is your spouse:

☑ ☐   Applying for Long Term Care coverage at this time? or

☐ ☑   Currently covered by UNUM for Long Term Care coverage?

If yes, please list policy number:  N/A

## II.   Insurance Information

Yes  No   (Please check Yes or No)

1. ☐ ☑   Are you currently covered by Medicaid?

2. ☐ ☑   Are you currently receiving disability income benefits or long term care benefits?

3. ☐ ☑   Do you have another long term care insurance policy or certificate in force, including coverage under a health care service contract or health maintenance organization contract?

If yes, provide policy number:  N/A

4. ☐ ☑   Have you had another long term care insurance policy or certificate in force during the last 12 months?

If yes, with which insurance company?  N/A

If the policy lapsed, when did it lapse?  N/A

5. ☐ ☑   Do you intend to replace any of your medical health coverage with this UNUM policy?

If yes, name of insurance company:  N/A

Policy Number:  N/A    Type of Plan:  N/A

## III.   Medical History (Part A)

Primary Physician     (Name and Title)

DR. ALAN KISSELSTEIN
EISENHOWER MEDICAL CENTER

Telephone  (Include Area Code)

(619) 346-7872

Address (Street, City, State, Zip)

39000 BOB HOPE DRIVE - WRIGHT BLDG
RANCHO MIRAGE, CA 92270

1/97 ROUTINE ANNUAL EXAM
LABS-BLOOD-X-RAY ALL O.K.

DR. PETER SCHULZE              (619) 346-8771
EISENHOWER MEDICAL CENTER
39000 BOB HOPE DRIVE - WRIGHT BLDG
RANCHO MIRAGE, CA 92270

INGUINAL
2/10/97 L/INGUINAL HERNIA
FULL RECOVERY EXPECTED

1220-93                                          1                        (4/95)        LAB 034386

DON0015

## III.  Medical History  (Part C)

*Please answer all questions. Do not change any of the wording or this application will be void.*

**Yes / No  Please check yes or no for each question**

1. ☑ ☐ Have you gained or lost more than ten pounds in the last 12 months?
2. ☐ ☑ Have you used tobacco in the last 12 months?
3. ☐ ☑ Do you need human assistance of any kind to perform everyday activities such as bathing, continence, dressing, eating, using the toilet or transferring (for example from a chair to your bed)?
4. ☐ ☑ Do you use any special medical equipment or appliances such as a walker, cane, wheelchair, catheter, oxygen tank or artificial limb?
5. ☐ ☑ Have you ever been advised to discontinue the use of alcohol because of health reasons; been arrested in connection with the use of alcohol or drugs; or been advised to seek counseling for alcoholism or drug abuse?
6. ☐ ☑ Have you ever been denied coverage for medical insurance, disability insurance, long term care insurance, nursing home insurance, or life insurance? If yes, please explain.

*In the past 5 years, have you ever had, been told you had, or been treated for:*

**Yes   No   Please check yes or no**

7. ☐ ☑ A disorder of the heart or circulatory system, heart attack, high blood pressure, or chest pain;
8. ☐ ☑ A psychological, psychiatric or mental disorder, mental illness, anxiety, or depression;
9. ☐ ☑ A disorder of the stomach, liver, pancreas, gallbladder, intestines or rectum; cirrhosis, ulcers or significant weight loss; ) SEE #7
10. ☐ ☑ A neurological disorder including Parkinson's disease, multiple sclerosis, Alzheimer's disease, stroke/TIA, paralysis, fainting, mental retardation, convulsions or epilepsy;
11. ☐ ☑ A disorder of the urinary or reproductive systems, kidney disease, cystitis or prostate disease;
12. ☐ ☑ Glandular problems, diabetes, or thyroid problems;
13. ☐ ☑ Any conditions of the lungs or respiratory tract, emphysema, chronic cough, shortness of breath, tuberculosis, spitting up blood;
14. ☐ ☑ Cancers, tumors, leukemia, Hodgkin's disease, lymphoma;
15. ☐ ☑ Bone or joint disorder, arthritis, gout, osteoporosis, amputation, sciatica, slipped disc;
16. ☐ ☑ Any recurrent infections, skin diseases, pressure sores or skin ulcers;
17. ☐ ☑ AIDS or the AIDS-related Complex (ARC);
18. ☐ ☑ A disorder or disease of the eyes or ears including blindness, balance disturbance, cataracts, glaucoma or hearing loss;
19. ☐ ☑ Any injuries due to falls or other trauma.

*If you answered yes to any of the previous questions, please provide the name of any prescribed medications you have taken and the name, address and telephone number of the prescribing physician:*

| Question Number | Name of Medication | Name, Address & Phone No. of Prescribing Physician |
| --- | --- | --- |
| 1 | Controlled intentional | Weight loss 15LBS lost over a 12 mo period for better health — No Physician or Rx |
| | No Prescribed Medications | |

LAB 034386

DON0016

**IV.   Coverage (Check applicable boxes for each option):**

|  | Advantage I | Advantage II |
|---|---|---|
| 1.   Coverage Type: | ☐ Nursing Home Only<br>☑ Nursing Home w/Professional Home Care<br>☐ Nursing Home w/Home Care | ☐ Nursing Home Only<br>☐ Nursing Home w/Professional Home Care<br>☐ Nursing Home w/Home Care |

| 2a. Benefit Amount:<br>(minimum of $1,500; amounts are available in increments of $100) | Nursing Home  $ 3000<br>Home Care %   ☐ 50 %<br>☐ 75%   ☑ 100% | Nursing Home  $ _____<br>Home Care      $ _____<br>Home Care Benefit Amount cannot exceed Nursing Home Benefit Amount |
|---|---|---|

| 2b. Elimination Period (Days) | ☐ 30  ☐ 60  ☑ 90  ☐ 180  ☐ 365 | ☐ 20    ☐ 100 |
|---|---|---|

| 2c. Benefit Period (Years) | ☐ 2   ☑ 3   ☐ 6   ☐ Life | Nursing Home  ☐ 1  ☐ 2  ☐ 4  ☐ 6  ☐ Life<br>Home Care    ☐ 1  ☐ 3  ☐ 5 |
|---|---|---|

| 3a. Optional Provisions | Inflation Protection:<br>None           ☐<br>5% Simple    ☑ 2x    ☐ No Cap<br>5% Compound  ☐ 2x    ☐ No Cap<br>Paid Up  ☑ No   ☐ Yes | Inflation Protection:<br>None           ☐<br>5% Simple    ☐ No Cap<br>5% Compound  ☐ No Cap<br>Paid Up        Not Available |
|---|---|---|

| 3b. Special Request | ☑ Date to Save Age:<br>☐ Special Policy Date:<br>☐ Other | ☐ Date to Save Age:<br>☐ Special Policy Date:<br>☐ Other |
|---|---|---|

4.   **Payment/Billing:**

  a)   Who Will Pay Premiums?
       ☑ Proposed Insured      ☐ Employer      ☐ Other
  b)   Send Bills To:
       ☑ Proposed Insured      ☐ Employer      ☐ Other
       If Employer or Other:
       Name: _____
       Street: _____ Apt/Suite: _____
       City: _____ State:_____ Zip:_____

  c)   How Often Do You Want To Be Billed?
       ☑ Annually     ☐ Semi-Annually     ☐ Quarterly     ☐ Monthly (flexbill or A.P.P. only)
       *If A.P.P., complete an Authorization and Agreement for Automatic Payments form

  d)   If Ownership Beneficiary Other Than Proposed Insured, Provide Name & Address
       Name: _____
       Street: _____ Apt/Suite: _____
       City: _____ State:_____ Zip:_____

  e)   Add to existing LTC Bill?
       ☐ Yes     ☐ No
       If yes, details:_____

3

LAB 034386

DON0017

## V. Agreement

I have read this application and I understand that:

UNUM Life Insurance Company of America (UNUM) will rely on the information provided in this application and any supplemental applications, medical exams or tests and other questionnaires to determine whether to provide the coverage I have requested. All these documents shall form a part of my contract of insurance.

No agent, broker, medical examiner or other person except an authorized employee of UNUM may
- change or waive questions asked or answers given in this application or in my medical examination;
- determine if I am eligible for coverage;
- promise that I will be issued coverage;
- change or waive any rights or requirements of UNUM.

I agree that:

Payment of premium is my responsibility. If any other person collects, pays or forwards any part of the premium for this coverage, they act as my agent and not an agent for UNUM. If UNUM does not receive premium as due, the policy will lapse in accordance with the provisions of the policy. No coverage will be effective until UNUM has approved my application and received the required premium.

All the statements I have made in this application are true, complete and correctly recorded to the best of my knowledge and belief. Any false statement or misrepresentation in this application may result in loss of coverage under this policy.

Signed at PALM DESERT, CA        on FEBRUARY 19 , 19 97

| | |
|---|---|
| Signature of Proposed Insured | Signature of Applicant if other than Proposed Insured |

Signature of Broker

## VI. Authorization

I authorize any hospital, physician, medical practitioner, clinic, other medical or medically related facility, the Medical Information Bureau, pharmacy, insurance company or government agency to disclose or furnish to UNUM Life Insurance Company of America (UNUM), its subsidiaries or representatives, any information with respect to any illness (including mental illness, drug or alcohol abuse or injury), medical history, consultations, prescriptions, treatments or benefits; and I authorize them to provide copies of all applicable records that may be requested.

The information provided to UNUM, its subsidiaries or representatives is to be used to determine my eligibility for insurance coverage and to evaluate a claim for benefits during the time this authorization is valid.

I agree that this authorization shall be valid for 2 1/2 years from the date it is signed. I have read this authorization and understand that I may receive a copy and that a photocopy of this shall be as valid as the original. I have also read and received a copy of the Notice of Information.

Caution: If your answers on this application are misstated or untrue, UNUM may have the right to deny benefits or rescind your policy.

Signature of Applicant        Date 2/19/97

4

LAB 034386

DON0018

# EXHIBIT B

- your short or long term memory;
- your orientation as to person (such as who you are), place (such as where you are), and time (such as day, date and year);
- your deductive or abstract reasoning.

Such loss in intellectual capacity can result from Alzheimer's disease or similar forms of senility, irreversible dementia, or advanced age.

"**Disability and Disabled**" means that, due to sickness, injury or advanced age:

- you have Cognitive Impairment; or
- you are unable to perform 2 or more Activities of Daily Living (ADLs) without Stand-by Assistance.

"**Elimination Period**" is the number of consecutive days, specific to your plan, during which you must be eligible for benefits before benefits become payable.

"**Lifetime Maximum Benefit Amount**" is the total dollar amount of benefits that will be paid under the policy. Your Lifetime Maximum Amount is based on the level of coverage and benefit duration you select.

"**Respite Care**" means care provided to you for a short period of time to allow your informal caregiver a break from their caregiving responsibilities. If you are eligible for a home care benefit but benefits have not yet become payable, payments will be made to you for each day you receive Respite Care for up to 15 days each calendar year. The amount of your payment will equal 1/30th of your home care monthly benefit for each day that you receive Respite Care.

"**Stand-by Assistance**" means you require the presence of another human being to ensure that all or part of an ADL may be completed or to ensure your safety. Stand-by Assistance may also mean that in order to accomplish an ADL, you need verbal cueing.

## OPTIONAL BENEFITS AVAILABLE

## REFER TO THE SCHEDULE OF BENEFITS TO DETERMINE WHETHER ANY OPTIONAL BENEFITS ARE PROVIDED UNDER THE POLICYHOLDER'S PLAN

### Non-Forfeiture Benefit (Shortened Benefit Period)

If your coverage lapses due to nonpayment of premium after it has been in force for three years, you may be eligible for a Non-forfeiture Benefit. This means your coverage will continue in force with the same level of benefits, except for a reduction in your Lifetime Maximum Benefit Amount.

### Inflation Protection Options:

### Inflation Protection Provision - 5% Simple Inflation With No Cap

Your Monthly Benefit will increase each year on the Policy Anniversary by 5% of the original Monthly Benefit. Your remaining Lifetime Maximum Benefit Amount will also increase.

UNUM  0000078

Increases will be automatic and will occur regardless of your health and whether or not you are disabled.  Your premium will not increase due to automatic increases in your Monthly Benefit.

**Inflation Protection Provision - 5% Simple Inflation With Cap**

Your Monthly Benefit will increase each year on the Policy Anniversary by 5% of the original Monthly Benefit.  Your remaining Lifetime Maximum Benefit Amount will also increase.  Increases will be automatic and will occur regardless of your health and whether or not you are disabled.  Your premium will not increase due to automatic increases in your Monthly Benefit.  In no event will the total Monthly Benefit be more than 200% of your original Monthly Benefit.

**Inflation Protection Provision - 5% Compound Inflation With No Cap**

Your Monthly Benefit will increase each year on the Policy Anniversary by 5% of the Monthly Benefit in effect on that Policy Anniversary.  Your remaining Lifetime Maximum Benefit Amount will also increase.  Increases will be automatic and will occur regardless of your health and whether or not you are disabled.  Your premium will not increase due to automatic increases in your Monthly Benefit.

**Inflation Protection Provision - 5% Compound Inflation With Cap**

Your Monthly Benefit will increase each year on the Policy Anniversary by 5% of the Monthly Benefit in effect on that Policy Anniversary.  Your remaining Lifetime Maximum Benefit Amount will also increase.  Increases will be automatic and will occur regardless of your health and whether or not you are disabled.  Your premium will not increase due to automatic increases in your Monthly Benefit.  In no event will the total Monthly Benefit be more than 200% of your original Monthly Benefit.

Refer to the attached chart comparing a monthly benefit with and without Inflation Protection.

7.   LIMITATIONS AND EXCLUSIONS

UNUM will not make long term care payments to you for:

- a Disability which is caused by a war (whether declared or undeclared) or any act of war;
- a Disability which is caused by intentionally self-inflicted injuries or attempted suicide;
- a Disability caused by the commission of a crime for which you have been convicted under state or federal law or attempting to commit a crime under state or federal law;
- Disabilities or confinements during which you are outside the United States, its territories or possessions for longer than 30 days;
- a Disability caused by being intoxicated;
- a Disability caused by voluntary use of any controlled substance unless the controlled substance is prescribed for you by a Physician;
- a period in which you are confined in a hospital other than if you are confined in a Nursing Facility that is a distinctly separate part of a hospital (this exclusion does not apply to those periods covered under the Bed Reservation Benefit); or
- a Disability caused by psychological or psychiatric or mental conditions regardless of cause, which include:
    - depression,

6

# EXHIBIT C

# GMail
byGoogle

Michael Don

## UNUM payment for Ruben Don
13 messages

**Michael Don** ....  .com>                                    Mon, Jun 4, 2012 at 11:21 AM
To: "Boothby, Sheena M" .    .  .  .com>

Sheena, we received the payment for my Mother but did not receive it for my father.  Can you let me know that it was done and when it was sent?  Thank you,

—
**Mike Don**

---

**Boothby, Sheena M** <          n>                           Mon, Jun 4, 2012 at 11:29 AM
To: Michael Don

Hi Mike,

Payment went out Friday. It was delayed as the copy I had that was for 04/09/2012-04/23/2012 did not have any dates on it so I needed to verify. I apologize for that. You should be getting that shortly. Looks like your dad has about 59 days remaining.

Please let me know if you have any other questions.

**Sheena Boothby**

Long Term Care Claims

Phone          3068 mail zip B266

**From:** Michael Don                       om]
**Sent:** Monday, June 04, 2012 2:21 PM
**To:** Boothby, Sheena M
**Subject:** UNUM payment for Ruben Don

[Quoted text hidden]

---

**Michael Don** <                                            Mon, Jun 4, 2012 at 11:34 AM
To: "Boothby, Sheena M" <

Thank you.  Can you please send me the calculations that result in Dad having 59 days remaining?  I want to check it against the policy and see if I come up with the same calculation.  Thank you, Mike.

of 4

8/28/2012 10:48 AM

DON0019

[Quoted text hidden]
--
Mike Don
Executive Director
South Bay Bicycle Coalition

---

**Michael Don**
To: Bonnie Wachter ·      Mon, Jun 4, 2012 at 11:36 AM

FYI, Dad's benefits run out in 2 months.  I have asked for calculations and will check them to be sure.

I think I wrote to Carol Shiminsky asking where we were on assisted living but have not heard back.  I will ask again when there the end of June unless you happen to bump into her.  My guess is they take new people (new revenue) before they would move Mom and Dad, but that could just be me being cynical.  Thanks, Mikey
[Quoted text hidden]
[Quoted text hidden]

---

**Boothby, Sheena M** ·
To: Michael Don ·      Mon, Jun 4, 2012 at 11:39 AM

Hi Mike,

It's based on the pool of money. Normally it stated that your father has a 3 year benefit period, however it goes by the pool of money he has an because he has inflation it tends to be a little longer. He has 10,309 remaining.

**Sheena Boothby**

Long Term Care Claims

Phone     .8 mail zip B266

---

From: Michael Don  .r         ....@gmail.com]
Sent: Monday, June 04, 2012 2:34 PM
To: Boothby, Sheena M
Subject: Re: UNUM payment for Ruben Don

[Quoted text hidden]

---

**Michael Don**
To: "Boothby, Sheena M" <      Mon, Jun 4, 2012 at 1:00 PM

Yes, I understand the process.  Someone in your organization did a calculation for the total amount to be paid (calculated as the face amount of the policy plus an escalating %) and then compared that to what he has been paid.  What I am asking for is 1) the calculation of the total amount that he is eligible to receive and 2) the amounts you show have been paid (hopefully by month).  I can then check both to confirm I agree.

Thank you, Mike

8/28/2012 10:48 A

DON0020

②

# Gmail
by Google

Michael Don <mikedon56@gmail.com>

## (no subject)
6 messages

---

**Boothby, Sheena M <**
To: Michael Don <

Tue, Jul 17, 2012 at 2:14 PM

Try this

📄 **2012071717083340FE7D.PDF**
210K

---

**Michael Don <**
To: "Boothby, Sheena M" <

Tue, Jul 17, 2012 at 2:28 PM

Sheena, thank you for your efforts in getting me the letter.  Unfortunately, the letter merely restates what you had already told me.  What I was asking for was the calculation of the maximum benefit dollar amount with the escalation clause.  Someone had to do the calculation to come up with the $174,510.  That is the calculation I want to compare against the terms of the agreement.  I assume it would be done on a spread sheet.  If you did the calculation, please send the support.  If someone else gave you the number, please ask them for the calculation.  I am happy to speak to that person if you prefer.

Thank you, Mike :

On Tue, Jul 17, 2012 at 2:14 PM, Boothby, Sheena M <SBoothby@unum.com> wrote:

Try this

--
**Mike Don**
**Coalition Director**
**South Bay Bicycle Coalition**

---

**Boothby, Sheena M**
To: Michael Don <

Wed, Jul 18, 2012 at 5:48 AM

Hi Mike,

The calculation is coming from our system. I will see if there is anything else I can come up with.. In the meantime would you like the copy of the contract?

of 2

8/28/2012 10:45 A

DON0023

Unum
The Benefits Center
PO Box 100186
Columbia, SC 29202-3158
Phone: 1-800-693-2366
Fax: 1-800-268-1377
www.unum.com

# unum

DRAFT - DO NOT COMMUNICATE                     July 17, 2012

MICHAEL DON

MANHATTAN BEACH, C A 90266

RE:   Don, Ruben            DOB:          0, 1930
      Claim Number:         6976564
      Policy Number:        LAC540428
      Unum Life Insurance Company of America

Dear Mr. Don:

This letter is in response to your request for information about your father's Long Term Care benefits.

This policy, which was effective on April 07, 1997, provides Facility and Professional Home Care benefits.  He purchased a policy with a $108,000.00 Lifetime Maximum Benefit Amount.

He also purchased the Simple Inflation option which increases the amount of his monthly benefits as well as the Lifetime Maximum Benefit Amount each year on April 07.

As of today, the current monthly benefit amount is $5,250.00 and we have paid $174,510.00. He has approximately $5,059.09 remaining in benefits under this policy.

DON0025

Claimant Name: Don, Ruben
Claim Number: 6976564

July 17, 2012
Page 2 of 2

As you are aware, the amount of monthly benefits paid and the Lifetime Maximum Benefit Amount remaining may be impacted by changes in the location of care, the frequency of care and periods of time when covered care is not received.

If you have any questions about this letter, please call me at 1-800-693-4988, extension 53068.

Sincerely,

*Sheena M Boothby*

Sheena M Boothby
Benefits Center Coordinator
Long Term Care

CC:      Ruben Don (without enclosures)

DON0026

C.

③ **G☒ail**
by Google

Michael Don <

## (no subject)
5 messages

---

**Boothby, Sheena M** ·                                               Tue, Aug 7, 2012 at 9:49 AM
To: Michael Don <                    ail.com>

Please let me know if you get this

📄 **2012080712474880FE7D.PDF**
   246K

---

**Michael Don**                                                       Tue, Aug 7, 2012 at 12:17 PM
To: "Boothby, Sheena M"
Cc: "Matt Wachter, Esq" <

Sheena, I did receive this and it is what I have.  The only language that could be applicable is consistent with
what I have suggested.  The language says, "Increases will be automatic and will occur regardless of your
health and whether or not you have suffered a covered Loss...."  It further says that, "your Lifetime Maximum
Benefit Amount will also increase by 5%".  Again, I see nothing that says it will not go up if you have a covered
loss.  Please help me if I am missing something.  Thank you, Mike
[Quoted text hidden]

--
**Mike Don**
**Coalition Director**
**South Bay Bicycle Coalition**

---

**Boothby, Sheena M**                          >                      Tue, Aug 7, 2012 at 12:30 PM
To: Michael Don <

Hi Mike,


Your math is current if your father was never receiving benefits. Yes, it does increase his
monthly/lifetime max, however once your father started receiving benefits in 2009 the increase
was on the remaining amount at that time not the original. Please call so we can discuss.


**Sheena Boothby**

Long Term Care Claims

Phone          _. 58 mail zip B266

.

④

# G☒ail
by Google

Michael Don <

**(simple) 09048982.xls**
2 messages

**Boothby, Sheena M** - ...   .        im>          Mon, Aug 13, 2012 at 11:56 AM
To: Michael Don <                      >

Please see attached. This is our calculation from our financial specialist. Please feel free to call me with any questions. I will also send you a hard copy with a letter.

📄 ruben don (simple) 09048982.pdf
40K

**Michael Don** <            .    . .....          Mon, Aug 13, 2012 at 4:12 PM
To: "Boothby, Sheena M" ·
Cc: "Matt Wachter, Esq" <>

Sheena, it appears we are back where we started from.  The provisions of the agreement say that the maximum amount will increase by 5% per year.  There are no provisions that say anything about an offset during pay out periods.  As such, if the maximum was increased by 5% per year, the lowest that could be suggested for a maximum pay out would be $189,000.  I understand that you are not the one who calculates this.  As you know, I can support a calculation that is even higher than that amount.

Can you please have the person that is reading something more into the contract language of, "Your Lifetime Maximum Benefit Amount will also increase by 5%" call me?  It is now over two months and no one has been able to show me in the contract where an offset like you are suggesting is warranted.

Thank you, Mike Don '

|      | 1997 Value | Increase | Adjusted value |            |
|------|-----------|----------|----------------|------------|
| 1998 | 108000    | 5%       | 5400           | 113400     |
| 1999 |           | 5%       | 5400           | 118800     |
| 2000 |           | 5%       | 5400           | 124200     |
| 2001 |           | 5%       | 5400           | 129600     |
| 2002 |           | 5%       | 5400           | 135000     |
| 2003 |           | 5%       | 5400           | 140400     |
| 2004 |           | 5%       | 5400           | 145800     |
| 2005 |           | 5%       | 5400           | 151200     |
| 2006 |           | 5%       | 5400           | 156600     |
| 2007 |           | 5%       | 5400           | 162000     |
| 2008 |           | 5%       | 5400           | 167400     |
| 2009 |           | 5%       | 5400           | 172800     |
| 2010 |           | 5%       | 5400           | 178200     |
| 2011 |           | 5%       | 5400           | 183600     |
| 2012 |           | 5%       | 5400           | 189000     |

My Calc.

[Quoted text hidden]

. of 2

8/28/2012 10:37 ♪

DON0030

DON0032

*UNUM'S CALC*

## Total Benefits Paid and Remaining Benefit Calculation (SIMPLE INFLATION)

| | |
|---|---|
| Claimant Name: | Ruben Don |
| Claim Number: | 09048982 |
| Inflation Date: | 4/7/1997 |
| Attained Benefit Cap at start: | $108,000.00 |

### Inflation Calculator - Total Benefits Paid and Remaining Benefit Calculation

| Coverage Effective Date | Attained Ben Value | Prior Attained Ben Value | Attained Ben Cap at start of Inflation year | Ben Paid | Attained Ben Cap at end of Inflation year | |
|---|---|---|---|---|---|---|
| 4/7/1997 | x | | $108,000.00 | | $108,000.00 | |
| 4/7/97 - 4/6/98 | $3,000.00 | x | $108,000.00 | $0.00 | $108,000.00 | |
| 4/7/98 - 4/6/99 | $3,150.00 | $3,000.00 | $113,400.00 | $0.00 | $113,400.00 | |
| 4/7/99 - 4/6/00 | $3,300.00 | $3,150.00 | $118,800.00 | $0.00 | $118,800.00 | |
| 4/7/00 - 4/6/01 | $3,450.00 | $3,300.00 | $124,200.00 | $0.00 | $124,200.00 | |
| 4/7/01 - 4/6/02 | $3,600.00 | $3,450.00 | $129,600.00 | $0.00 | $129,600.00 | |
| 4/7/02 - 4/6/03 | $3,750.00 | $3,600.00 | $135,000.00 | $0.00 | $135,000.00 | |
| 4/7/03 - 4/6/04 | $3,900.00 | $3,750.00 | $140,400.00 | $0.00 | $140,400.00 | |
| 4/7/04 - 4/6/05 | $4,050.00 | $3,900.00 | $145,800.00 | $0.00 | $145,800.00 | |
| 4/7/05 - 4/6/06 | $4,200.00 | $4,050.00 | $151,200.00 | $0.00 | $151,200.00 | |
| 4/7/06 - 4/6/07 | $4,350.00 | $4,200.00 | $156,600.00 | $0.00 | $156,600.00 | |
| 4/7/07 - 4/6/08 | $4,500.00 | $4,350.00 | $162,000.00 | $0.00 | $162,000.00 | |
| 4/7/08 - 4/6/09 | $4,650.00 | $4,500.00 | $167,400.00 | $0.00 | $167,400.00 | |
| 4/7/09 - 4/6/10 | $4,800.00 | $4,650.00 | $172,800.00 | $41,280.00 | $131,520.00 | |
| 4/7/10 - 4/6/11 | $4,950.00 | $4,800.00 | $135,630.00 | $64,620.00 | $71,010.00 | |
| 4/7/11 - 4/6/12 | $5,100.00 | $4,950.00 | $73,161.82 | $59,160.00 | $14,001.82 | |
| 4/7/12 - 4/6/13 | $5,250.00 | $5,100.00 | $14,413.64 | $14,509.09 | -$95.45 | overpaid customer |

| 4/7/09 - 4/6/10 pmts | 4/7/10 - 4/6/11 pmts | 4/7/11 - 4/6/12 pmts | 4/7/12 - 4/6/13 pmts |
|---|---|---|---|
| $4,800.00 | $1,920.00 | $4,080.00 | $4,200.00 |
| $2,400.00 | $4,950.00 | $4,760.00 | $5,250.00 |
| $2,400.00 | $4,950.00 | $4,760.00 | $5,059.09 |

ruben don (simple) 09048982

DON0033

Ca.

| $4,800.00 | $4,950.00 | $4,760.00 |
|-----------|-----------|-----------|
| $4,800.00 | $4,950.00 | $5,120.00 |
| $4,800.00 | $4,950.00 | $5,440.00 |
| $4,800.00 | $4,950.00 | $4,760.00 |
| $4,800.00 | $4,950.00 | $4,590.00 |
| $4,800.00 | $4,950.00 | $4,760.00 |
| $2,880.00 | $7,590.00 | $3,910.00 |
|           | $3,795.00 | $5,100.00 |
|           | $6,105.00 | $5,100.00 |
|           | $4,620.00 | $1,020.00 |
|           | $990.00   |           |

| $41,280.00 | $64,620.00 | $59,160.00 | $14,509.09 |
|------------|------------|------------|------------|

ruben don (simple) 09048982

## Obtaining A Claim Form, Filing A Claim

**How are claim forms obtained?**

You or your designated representative should call our LTC Benefit Center at 1-800-693-4988 and we will fax or mail a claim form to you within two business days. You can also access a claim form via our web site at unum.com

**What is the process for filing a claim?**

You or your designated representative should fully complete the claim form, attaching additional pages if more space is needed to fully describe your condition and care needs: the claim form must be signed by you, or by a legally designated representative (such as someone to whom you have granted Power of Attorney) who must provide a copy of the appropriate legal papers. Your physician's signature is not required. This authorization is used to request medical information and other pertinent documentation

Once we receive your claim, we will send you or your representative a written acknowledgment within three business days. At that time, a Benefit Specialist will be assigned to your claim. If, after reviewing your claim form, the Benefit Specialist determines that additional information or clarification is needed, he or she may call you or your representative

**What is the role of the Benefit Specialist?**

The Benefit Specialist assigned to your claim is a trained professional, and will be responsible for coordinating all aspects of your claim. Benefit Specialists have in-depth knowledge of long term care issues and have access to the resources needed to manage your claim in the most effective way possible

Your Benefit Specialist will also initiate requests for copies of pertinent medical records or other documentation needed to make a benefit determination. Our approach throughout the claims process emphasizes ongoing contact with you and your family to provide support and monitor progress. The Benefit Specialist stays in touch through status letters sent to you or your designated representative every 21 days

In addition to our Benefit Specialists, the LTC Benefit Center has a dedicated Service Unit. This group provides telephone support to our customers during the claims process. These representatives have extensive LTC knowledge and claims experience, and are ready to answer your questions when you call. You can feel confident that you will receive the highest quality service

**What is the next step in the benefit management process?**

Once your claim and all additional information is received, a final claim determination is made regarding your benefits. The average time frame from receipt of a completed and properly signed claim form to final claim determination is approximately four to six weeks. Of course, each claim is unique and you may experience time frames that are different from this

Once a claim decision is made, the Benefit Specialist will call you or your representative within one business day, and will follow up with a clearly written explanation of the decision and the basis for the determination

4

5

DON 0034

## unum

July 02, 2009

Michael Don
I
Manhattan Beach, CA  90266

Re:  Ruben S Don
     Policy No.  LAC540428
     Claim No.  09048982

Dear Mr. Don:

I am writing to confirm that we have approved the above referenced Long Term
Care claim. I have explained our decision and have outlined your father's policy
below.

In order to become eligible for monthly benefits, the policy requires that your
father: suffer a Loss of Functional Capacity or Cognitive Impairment; receiving
care in a Nursing or Residential Care Facility, or in the home from a Home Care
Provider; and he has satisfied the 90 day Elimination Period.

The Elimination Period is the number of cumulative days in which the benefit
eligibility criteria outlined above is met, but no benefits are payable. Each calendar
week that at least one day of Professional Home Care is received will be counted
as seven days towards completing the Elimination Period.

The policy states " 'Loss of Functional Capacity' means that you are unable to
perform 2 or more Activities of Daily Living (ADLs) because of Sickness, Injury
or Advanced Age." The ADLs are bathing, dressing, toileting, transferring,
continence, and eating.

The policy also states " 'Cognitive Impairment' means that you have suffered a
deterioration or loss in your intellectual capacity which requires another person's
assistance or verbal cueing to protect yourself or others as measured by clinical
evidence and standardized tests which reliably measure your impairment in the
following areas:

Unum Life Insurance Company of America · 2211 Congress Street, Portland, ME 04122 · 800 693 4988 · www.unum.com

DON 0035

Page 2
July 2, 2009
Re: Ruben S. Don

- Your short or long term memory;
- Your orientation as to person (such as who You are), place (such as Your location), and time (such as day, date, and year);
- Your deductive or abstract reasoning.

Such loss in intellectual capacity can result from Alzheimer's disease or similar forms of senility, irreversible dementia or Advanced Age."

"A 'Home Care Provider' is:

(a) an organization that, or a nurse or other professional who, is licensed or certified by the appropriate licensing agency of the state where Professional Home Care will be provided; or certified as a home health care organization as defined under Medicare;

(b) any other organization that meets all of the following tests:
- primarily provides nursing care and other therapeutic services;
- has standards, policies and rules established by a professional group which is associated with the organization;
- includes at least one doctor and one registered nurse;
- maintains a written record of care on each patient; and
- includes a plan of care and record of services provided;

(a) a skilled or unskilled person appropriately licensed by the state, if required, to provide services under a Plan of Care developed by a Physician or a multi-disciplinary team under medical direction; or

(b) a similar organization approved by us."

Based on the information we received from Rancho Mirage Healthcare and Eisenhower Hospital, we have approved the claim as of April, 24, 2009, the day covered care was initiated when your father was admitted to Rancho Mirage Healthcare and records support that he had a loss of all ADLs.  If he continues to be eligible and continues to receive covered care as noted above, the 90-day Elimination Period will be satisfied and benefits will begin on July 23, 2009.

DON0036

Page 3
July 2, 2009
Re: Ruben S. Don

The first benefit payment will be issued August 23, 2009, for all care received from July 23, 2009 to August 1, 2009. An amount of 1/30th of the monthly benefit amount will be paid for each day covered services are received within each month. Because benefits are paid on an accrual basis; payments are processed after the month has been completed. All future payments will be processed on the closest business day to the 23rd of each month.

This policy also includes the Waiver of Premium provision. This means that no premiums are due once monthly Long Term Care benefits are payable. I will notify our Customer Service department at the time of the first benefit payment, and they will refund any premium that may be due.

Legislation passed by the federal government in 1996 requires us to issue a 1099-LTC form for each year benefits are received. IRS form number 8853, "Medical Savings Accounts and Long Term Care Insurance Contracts" will need to be filed. Any questions you may have regarding the taxability of Long Term Care benefits should be directed to a tax advisor or the IRS.

A determination of continued eligibility for benefits is made on a monthly basis. This means that we may require information from you, physicians, or other health care providers to determine if your father continues to suffer a Loss of Functional Capacity or Cognitive Impairment, and continues to receive covered care.

Mr. Don, should you have any questions regarding this letter, please call me at 1-800-693-4988.

Sincerely,

Robert J. Wharton
Associate Disability Benefit Specialist
Long Term Care
Extension 53941

DON 0037

C

Case 2:13-cv-04502-DSF-VBK   Document 41   Filed 04/11/14   Page 36 of 57   Page ID #:424

is simple inflation which we take 5% and add to the monthly benefit with likely was increase of $150 per month each year. Does this help at all? If you would like to call and we can discuss I can be reached at 1-

**Sheena Boothby**

Long Term Care Claims

Phone :          368 mail zip B266

. . .  . .  . . . .  .  m.com

**From:** Michael Don [mailto:                                   om]
**Sent:** Monday, August 06, 2012 11:04 PM
**To:** Boothby, Sheena M
**Cc:** Matt Wachter, esq
**Subject:** Ruben Don maximum calculation

Sheena, since I have not seen anything after 2 months of asking, I am attaching a computation that I did.  As you can see, the maximum calculated is $216,000.  Absent any information to the contrary, please continue payments until the maximum is reached.  I remain willing to discuss the calculations, but I have not been provided anything, as you know, as to how you calculated the max of $174,510.

| Year | Base | Rate | Result |
|------|---------|-----|---------------|
| 1998 | 108000 | 5% | 113,400 |
| 1999 | 113400 | 5% | 119,070 |
| 2000 | 119070 | 5% | 125,024 |
| 2001 | 125,024 | 5% | 131,275 |
| 2002 | 131,275 | 5% | 137,838 |
| 2003 | 137,838 | 5% | 144,730 |
| 2004 | 144,730 | 5% | 151,967 |
| 2005 | 151,967 | 5% | 159,565 |
| 2006 | 159,565 | 5% | 167,543 |
| 2007 | 167,543 | 5% | 175,921 |
| 2008 | 175,921 | 5% | 184,717 |
| 2009 | 184,717 | 5% | 193,952 |
| 2010 | 193,952 | 5% | 203,650 |
| 2011 | 203,650 | 5% | 213,833 |
| 2012 | 213,833 | 5% | 216,000 Max of 2x |

Thank you,

**Mike Don**

?

DON 0 0 3 8

**From:** Boothby, Sheena M <                       .com>
**Date:** Tue, Aug 7, 2012 at 9:46 AM
**Subject:** RE: Ruben Don maximum calculation
**To:** Michael Don <                       om>

I will send you a copy of the contract.. If your father did not have any benefits than your calculation would be true.. It inflates 5% on the remaining amount after benefits that we had paid out.. So up until your father went on claim you calc is correct once he started receiving benefits it brought the remaining amount down and then the next year it inflated based on that remaining amount. I will e-mail you the contact page maybe that will help.

**Sheena Boothby**

Long Term Care Claims

Phone :                  ₿ mail zip B266

:                       :om

**From:** Michael Don [mailto:                    n]
**Sent:** Tuesday, August 07, 2012 12:19 PM
**To:** Boothby, Sheena M
**Subject:** RE: Ruben Don maximum calculation

Please send the portion of the agreement that states that.  What I have says the max is raised by 5% per year and no offset indicated.  I will look forward to seeing those specific calculation portions of the agreement.  Thank you, Mike

On Aug 7, 2012 8:27 AM, "Boothby, Sheena M" <              _____com> wrote:

Hi Michael,

I took a look at your calculations and discovered you are taking the max benefit and adding the 5% to that, that amount is based on if we did not pay benefits during the year. The inflation that your father has

DON 0039

Unum
The Benefits Center
PO Box 100196
Columbia, SC 29202-3158
Phone: 1-800-693-4988
Fax: 1-800-268-1377
www.unum.com



August 24, 2012

MICHAEL DON

MANHATTAN BEACH, CA 90266

RE:  Don, Ruben              DOB:           ), 1930
     Claim Number:           6976564
     Policy Number:          LAC540428
     Unum Life Insurance Company of America

Dear Mr. Don:

I would like to take this opportunity to thank you for speaking with me on August 14, 2012. As we discussed, the $189,000 lifetime maximum you calculated is based off the full 36 month duration with inflation. However, your father started his benefits before the maximum inflation amount was reached. The calculation is based on the remaining months of duration.

As I explained in our previous letter, the Lifetime Maximum Benefit Amount has been reached, and I have sent a benefit check in the amount of $5,059.09.  This amount represents remaining benefits under this policy and his policy will now be terminated.

If you have any questions about this letter please call me at 1-800-693-4988, extension 53068.  We wish your father the best and hope that this coverage has helped to meet his Long Term Care expenses during these past few years.

DON 0040

6726-01    UNUM IS A REGISTERED TRADEMARK AND MARKETING              AND ITS INSURING SUBSIDIARIES

Claimant Name: Don, Ruben
Claim Number: 6976564

August 24, 2012
Page 2 of 3

If you or your father has additional information to support the request for disability benefits, we will be happy to reconsider this claim.  Please send the additional information to my attention for further review within 180 days of the date of this letter.  My address is:

> Long Term Care Benefits Center
> Attn:  Sheena Boothby
> P.O. Box 100196
> Columbia, SC  29202-9975
> Fax Number:  1-207-575-9741

It is important to note, however, that if you choose to submit additional information for our review and later decide to appeal this claim decision, you must appeal within the 180 day period described below.

If you do not have additional information, disagree with our determination, and want to appeal this claim decision, you must submit a written appeal.  This appeal must be received by us within 180 days of the date of this letter even if you submitted additional information to my attention for reconsideration.  Your written appeal should include your comments and views of the issues, as well as any new documentation you may wish us to consider.  You may also request copies of documents contained in the claim file which were pertinent to the denial decision.  You should submit your written appeal to the following address:

> The Benefits Center
> Appeals Unit
> P.O. Box 9548
> Portland, ME  04104-5058

If we do not receive your written appeal within 180 days of the date of this letter, our claim determination will be final.

**To All California Residents and Policyholders**

You may also contact the California Insurance Department if you wish to have them review the claim.  If you wish to write to the Insurance Department, your letter should be addressed to:

> California Department of Insurance

DON 0041

Claimant Name: Don, Ruben
Claim Number: 6976564

August 24, 2012
Page 3 of 3

Claims Service Bureau, 11th Floor
300 South Spring Street, South Tower
Los Angeles, CA 90013

If you wish to contact the Department by telephone, you should ask for the Consumer Communications Bureau at 1-800-927-HELP (1-800-927-4357) or 213-897-8921.

The policy under which Ruben Don is insured has a provision which states, in part, that no lawsuit or legal action shall be brought to recover on the policy after 3 years from the date proof of claim is required.

Sincerely,

*Sheena M Boothby*

Sheena M Boothby
Benefits Center Coordinator
Long Term Care

DON0042

# EXHIBIT D

DON0032

### Total Benefits Paid and Remaining Benefit Calculation (SIMPLE INFLATION)

*Unum's CALC*

| | | |
|---|---|---|
| Claimant Name: | Ruben Don | |
| Claim Number: | 09048982 | |
| Inflation Date: | 4/7/1997 | |
| Attained Benefit Cap at start: | $108,000.00 | |

#### Inflation Calculator - Total Benefits Paid and Remaining Benefit Calculation

| Coverage Effective Date | Attained Ben Value | Prior Attained Ben Value | Attained Ben Cap at start of Inflation year | Ben Paid | Attained Ben Cap at end of Inflation year | |
|---|---|---|---|---|---|---|
| 4/7/1997 | x | | $108,000.00 | | $108,000.00 | |
| 4/7/97 - 4/6/98 | $3,000.00 | x | $108,000.00 | $0.00 | $108,000.00 | |
| 4/7/98 - 4/6/99 | $3,150.00 | $3,000.00 | $113,400.00 | $0.00 | $113,400.00 | |
| 4/7/99 - 4/6/00 | $3,300.00 | $3,150.00 | $118,800.00 | $0.00 | $118,800.00 | |
| 4/7/00 - 4/6/01 | $3,450.00 | $3,300.00 | $124,200.00 | $0.00 | $124,200.00 | |
| 4/7/01 - 4/6/02 | $3,600.00 | $3,450.00 | $129,600.00 | $0.00 | $129,600.00 | |
| 4/7/02 - 4/6/03 | $3,750.00 | $3,600.00 | $135,000.00 | $0.00 | $135,000.00 | |
| 4/7/03 - 4/6/04 | $3,900.00 | $3,750.00 | $140,400.00 | $0.00 | $140,400.00 | |
| 4/7/04 - 4/6/05 | $4,050.00 | $3,900.00 | $145,800.00 | $0.00 | $145,800.00 | |
| 4/7/05 - 4/6/06 | $4,200.00 | $4,050.00 | $151,200.00 | $0.00 | $151,200.00 | |
| 4/7/06 - 4/6/07 | $4,350.00 | $4,200.00 | $156,600.00 | $0.00 | $156,600.00 | |
| 4/7/07 - 4/6/08 | $4,500.00 | $4,350.00 | $162,000.00 | $0.00 | $162,000.00 | |
| 4/7/08 - 4/6/09 | $4,650.00 | $4,500.00 | $167,400.00 | $0.00 | $167,400.00 | |
| 4/7/09 - 4/6/10 | $4,800.00 | $4,650.00 | $172,800.00 | $41,280.00 | $131,520.00 | |
| 4/7/10 - 4/6/11 | $4,950.00 | $4,800.00 | $135,630.00 | $64,620.00 | $71,010.00 | |
| 4/7/11 - 4/6/12 | $5,100.00 | $4,950.00 | $73,161.82 | $59,160.00 | $14,001.82 | |
| 4/7/12 - 4/6/13 | $5,250.00 | $5,100.00 | $14,413.64 | $14,509.09 | -$95.45 | overpaid customer |

| 4/7/09 - 4/6/10 pmts | 4/7/10 - 4/6/11 pmts | 4/7/11 - 4/6/12 pmts | 4/7/12 - 4/6/13 pmts |
|---|---|---|---|
| $4,800.00 | $1,920.00 | $4,080.00 | $4,200.00 |
| $2,400.00 | $4,950.00 | $4,760.00 | $5,250.00 |
| $2,400.00 | $4,950.00 | $4,760.00 | $5,059.09 |

ruben don (simple) 09048982

DON0033

| $4,800.00 | $4,950.00 | $4,760.00 |
| $4,800.00 | $4,950.00 | $6,120.00 |
| $4,800.00 | $4,950.00 | $5,440.00 |
| $4,800.00 | $4,950.00 | $4,760.00 |
| $4,800.00 | $4,950.00 | $4,590.00 |
| $4,800.00 | $4,950.00 | $4,760.00 |
| $2,880.00 | $7,590.00 | $3,910.00 |
| | $3,795.00 | $5,100.00 |
| | $6,105.00 | $5,100.00 |
| | $4,620.00 | $1,020.00 |
| | $990.00 | |

| $41,280.00 | $64,620.00 | $59,160.00 | $14,509.09 |

ruben don (simple) 09048982

# EXHIBIT E

month each year. Does this help at all? If you would like to call and we can discuss I can be reached at 1-800-693-4988 X 53068

**Sheena Boothby**

Long Term Care Claims

Phone 207-575-3068 mail zip B266

sboothby@unum.com

**From:** Michael Don [mailto:mikedon56@gmail.com]
**Sent:** Monday, August 06, 2012 11:04 PM
**To:** Boothby, Sheena M
**Cc:** Matt Wachter, esq
**Subject:** Ruben Don maximum calculation

Sheena, since I have not seen anything after 2 months of asking, I am attaching a computation that I did. As you can see, the maximum calculated is $216,000. Absent any information to the contrary, please continue payments until the maximum is reached. I remain willing to discuss the calculations, but I have not been provided anything, as you know, as to how you calculated the max of $174,510.

| | | | |
|---|---|---|---|
| 1998 | 108000 | 5% | 113,400 |
| 1999 | 113400 | 5% | 119,070 |
| 2000 | 119070 | 5% | 125,024 |
| 2001 | 125,024 | 5% | 131,275 |
| 2002 | 131,275 | 5% | 137,838 |
| 2003 | 137,838 | 5% | 144,730 |
| 2004 | 144,730 | 5% | 151,967 |
| 2005 | 151,967 | 5% | 159,565 |
| 2006 | 159,565 | 5% | 167,543 |
| 2007 | 167,543 | 5% | 175,921 |
| 2008 | 175,921 | 5% | 184,717 |
| 2009 | 184,717 | 5% | 193,952 |
| 2010 | 193,952 | 5% | 203,650 |
| 2011 | 203,650 | 5% | 213,833 |
| 2012 | 213,833 | 5% | 216,000 Max of 2x |

Thank you.

**Mike Don**

310-560-3945

# EXHIBIT F

Filed 06/25/14   Page 1 of 91   Page ID #:883

#.435

## OPTIONAL BENEFITS AVAILABLE

**REFER TO THE SUMMARY OF BENEFITS TO DETERMINE WHETHER ANY OPTIONAL BENEFITS ARE PROVIDED UNDER THE POLICYHOLDER'S PLAN**

### NonForfeiture Benefit (Shortened Benefit Period)

If your coverage lapses due to nonpayment of premium after it has been inforce for three years, you may be eligible for a Nonforfeiture Benefit. This means your coverage will continue inforce with the same level of benefits, except for a reduction in your Lifetime Maximum Benefit Amount.

### Inflation Protection Provision - 5% Simple Inflation With No Cap

Your Monthly Benefit Amount will increase each year on January 1st by 5% of the original Monthly Benefit. Your remaining Lifetime Maximum Benefit Amount will also increase. Increases will be automatic and will occur regardless of your health and whether or not you are Disabled. Your premium will not increase due to automatic increases in your Monthly Benefit Amount.

### Inflation Protection Provision - 5% Simple Inflation With Cap

Your Monthly Benefit Amount will increase each year on January 1st by 5% of the original Monthly Benefit. Your remaining Lifetime Maximum Benefit Amount will also increase. Increases will be automatic and will occur regardless of your health and whether or not you are Disabled. Your premium will not increase due to automatic increases in your Monthly Benefit. In no event will the total Monthly Benefit Amount be more than 200% of your original Monthly Benefit Amount.

### Inflation Protection Provision - 5% Compound Inflation With No Cap

Your Monthly Benefit Amount will increase each year on January 1st by 5% of the Monthly Benefit in effect on that January 1st. Your remaining Lifetime Maximum Benefit Amount will also increase. Increases will be automatic and will occur regardless of your health and whether or not you are Disabled. Your premium will not increase due to automatic increases in your Monthly Benefit Amount.

### Inflation Protection Provision - 5% Compound Inflation With Cap

Your Monthly Benefit Amount will increase each year on January 1st by 5% of the Monthly Benefit in effect on that January 1st. Your remaining Lifetime Maximum Benefit Amount will also increase. Increases will be automatic and will occur regardless of your health and whether or not you are Disabled. Your premium will not increase due to automatic increases in your Monthly Benefit. In no event will the total Monthly Benefit Amount be more than 200% of your original Monthly Benefit Amount.

The benefit paid is subject to the Lifetime Maximum Benefit Amount. Benefits are not paid during the Elimination Period.

6

#:436

Individual completing this form:

Name (first and last): _Michael Don_

Telephone #: _3_____ Relationship to Claimant: _Son_

Check if individual completing this form is also a legal representative:
☒ Power of Attorney  ☐ Legal Guardian  ☐ Conservator

_Michael Don_ _____     _05/14/2009_
Signature                                              Date (mm/dd/yyyy)

## SECTION 5 – Authorizations

**The Authorization to Disclose Information (required)**
The Authorization to Disclose Information is a HIPAA (Health Insurability Portability and Accountability Act of 1996) compliant form which should be signed and dated by the claimant or their legal representative. This form allows us to obtain documentation from medical and care providers, and others as provided, to assist with our review of this claim. *Without this authorization, Unum may not be able to evaluate or administer your claim (s).*

**The Primary Contact Authorization (optional)**
The Primary Contact Authorization is optional. Completing this authorization indicates that you, the claimant, designate another individual to be the primary contact with regards to the claim. This means that the primary contact will receive all written and verbal correspondence related to the claim with the exception of benefit payments, if payment is approved. Benefit payments are made directly to the claimant unless otherwise directed in writing from the claimant or a legally designated representative who has the authority to make such a request.

If no primary contact is assigned, the claimant or their legal representative will be the primary contact.

**Special Authorizations for Release of Information (as needed)**
On occasion certain medical or care providers may require that their own, specific authorization be completed in addition to the Authorization to Disclose Information included with this form. When we are informed that a special authorization is required to obtain documentation, we will forward that authorization to the claimant or their legal representative for completion. Since the authorization will be required to obtain the documentation needed for our review of the claim, completing and returning the form as soon as possible will help to expedite our decision.

1137-95 (09/08)

RECEIVED
MAY 26 2009
LTC BENEFITS

UA - CL - LTC - 000712

#:437

# unum

**Primary Contact Information**
**(Optional: If no primary contact is assigned, the claimant or their legal representative will be the primary contact.)**

Primary Contact Name (first and last): _Michael Don_

Address: _____ Manhattan Beach, CA 90266_

Telephone #: _____ Relationship to Claimant: _Son_

Check if primary contact is also a legal representative:
☒ Power of Attorney ☐ Legal Guardian ☐ Conservator

**Authorization for Primary Contact**
I authorize _____ (Print Name) to act as my representative in regard to my claim(s). In doing so, I am giving Unum Group, its insurance subsidiaries* and duly authorized representatives ("Unum") the right to discuss all aspects of my coverage and claim(s) with my representative. This may include information regarding benefits, medical conditions (including, but not limited to, HIV and AIDS, mental illness and drug and alcohol abuse), medical providers, caregivers and locations of care. This information will be provided so that my representative may assist me with my claim(s). This information may be provided to my representative in writing or orally, such as by telephone. I understand the information could be redisclosed by my representative and no longer protected by federal privacy regulations.

I understand I am not required to sign this authorization and Unum may not condition payment of my claim(s) on whether I sign this authorization. I may revoke this authorization in writing at any time except to the extent Unum has relied on the authorization prior to notice of revocation. I may revoke this authorization by sending written notice to: Long Term Care Benefits Center, 2211 Congress Street, Portland, Maine 04122.

This authorization is valid for the duration of my claim unless it is revoked in writing. I know that I have a right to request a copy of this authorization. A photographic or electronic copy of this authorization is as valid as the original.

_Michael Don_ for Robert Don          _5/18/09_
(Claimant Signature)                        (Date Signed)

_Michael Don_
(Print Name)

*This authorization is valid for the following Unum insurance subsidiaries: Unum Life Insurance Company of America and Provident Life and Accident Insurance Company.

```
RECEIVED
MAY 26 2009
LTC BENEFITS
```

1137-95-AUTH (09/08)

UA - CL - LTC - 000713

#:438

APR-06-2011 09:30    popcornopolis                310 314 6701    P.001/001

**NOTE: Federal law requires that we obtain this authorization from you. You are not required to sign the** authorization, but if you do not, Unum may not be able to evaluate or administer your claim(s). Please sign and return this authorization to: Long Term Care Benefits Center, 2211 Congress Street, Portland, ME 04122. This authorization complies with the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

### Authorization to Disclose Information

I authorize any health care provider including, but not limited to, any health care professional, hospital, clinic, laboratory or other medically related facility or service; health plan; rehabilitation professional; insurance company; reinsurer; insurance service provider; third party administrator; producer; government organization; and employer that has information about my health, employment information, or other insurance claims and benefits to disclose any and all of this information to persons who administer claims for Unum Group, its insurance subsidiaries* and duly authorized representatives ("Unum"). Information about my health may relate to any disorder of the immune system including, but not limited to, HIV and AIDS; use of drugs and alcohol; and mental and physical history, condition, advice or treatment, but does not include psychotherapy notes.

I understand that any information Unum obtains pursuant to this authorization will be used for evaluating and administering my claim(s) for benefits. I further understand that the information is subject to redisclosure and might not be protected by certain federal regulations governing the privacy of health information.

This authorization is valid for two (2) years from the date below, or the duration of my claim, whichever period is shorter. A photographic or electronic copy of this authorization is as valid as the original. I understand I am entitled to receive a copy of this authorization.

I may revoke this authorization in writing at any time except to the extent Unum has relied on the authorization prior to notice of revocation or has a legal right to contest a claim under the policy or the policy itself. I understand if I revoke this authorization, Unum may not be able to evaluate or administer my claim(s) and this may be the basis for denying my claim(s). I may revoke this authorization by sending written notice to: Long Term Care Benefits Center, 2211 Congress Street, Portland, ME 04122.

I understand if I do not sign this authorization or if I alter its content in any way, Unum may not be able to evaluate or administer my claim(s) and this may be the basis for denying my claim(s).

_____                    _____4/5/11_____
(Claimant Signature)                                        (Date Signed)

Claimant's Name: Ruben S Don

I signed on behalf of the claimant as ___Son, POA___ (indicate relationship). If Power of Attorney Designee, Guardian, or Conservator, please attach a copy of the document granting authority.

*This authorization is valid for the following Unum insurance subsidiaries: Unum Life Insurance Company of America and Provident Life and Accident Insurance Company.

ILTC/GLTC-AUTH

UA - CL - LTC - 000714

#:439

**Willey, Jeanne E**

| | |
|---|---|
| **From:** | Mike Don [mdon@popcornopolis.com] |
| **Sent:** | Tuesday, October 19, 2010 10:55 AM |
| **To:** | Willey, Jeanne E |
| **Subject:** | Ruben Don POA to Mike Don |

**Attachments:** 10-19-2010.pdf

10-19-2010.pdf (1 MB)

Jeanne, please reply to this e-mail to let me know you received it.  Thank you, Mike

UA - CL - LTC - 000717

#440

# Immediate Durable Power of Attorney of Ruben Don

I, Ruben Don, of Palm Desert, California, am creating a durable power of attorney under the laws of the state of California. I hereby revoke all Powers of Attorney previously granted by me as Principal and terminate all Agency relationships created by me except:

Powers granted by me under any Advance Healthcare Directive;

Powers granted by me on forms provided by financial institutions granting the right to write checks on, deposit funds to and withdraw funds from accounts to which I am a signatory; and

Powers granting access to a safe deposit box.

## Article One
## Appointment of Agent

### Section 1.01    Initial Agent

I appoint Michael Don to serve as my Agent.

### Section 1.02    Successor Agent

If Michael Don is unavailable or unable to serve, I appoint Bonnie Don Wachter to serve as successor Agent.

### Section 1.03    Default of Designation

If no one is serving as my Agent under this power of attorney, Bonnie Don Wachter may appoint a successor Agent by written instrument acknowledged before a notary public and attached to this power of attorney.

### Section 1.04    Prior or Joint Agent Unable to Act

A successor Agent or an Agent serving jointly with another Agent may establish that the acting Agent or joint Agent is no longer able to serve as Agent, by signing an affidavit that states that the Agent is not available or is incapable of acting. The affidavit may (but need not) be supported by a death certificate of the Agent, a certificate showing that a guardian or conservator has been appointed for the Agent, a letter from a physician stating that the Agent is incapable of managing his or her own affairs, or a letter from the Agent stating his or her unwillingness to act or delegating his power to the successor Agent.

UA - CL - LTC - 000718

#:441

## Article Two
## Effectiveness of Appointment - Durability Provision

**Section 2.01     Effectiveness**

The authority granted to my Agent under this power of attorney is effective upon execution of this document.

**Section 2.02     Durability**

The authority granted to my Agent under this power of attorney shall not be affected by my subsequent disability, incapacity or lapse of time.

If this power of attorney becomes operative because of my disability or incapacity and if the authority granted to my Agent becomes effective because of my incapacity and I am no longer incapacitated, as evidenced in the manner provided above, this power of attorney shall not be revoked and my Agent's power shall become effective again on my subsequent incapacity as provided above.

**Section 2.03     Term of Durable Power of Attorney**

This Durable Power of Attorney shall expire at the earlier of:

My death (except for post-death matters allowed under the laws of California), or

Upon my revocation of this Power of Attorney.

## Article Three
## Powers Granted to My Agent

I grant my Agent the powers described in this Article so that my Agent may act on my behalf. In addition, my Agent may do everything necessary to exercise the powers listed below.

**Section 3.01     Power to Sell**

Unless specifically limited by the other provisions of this power of attorney, my Agent may sell any interest I own in any kind of property, real or personal, tangible or intangible, including any contingent or expectant interest, marital right and any right of survivorship incident to joint tenancy or tenancy by the entirety. My Agent may determine the terms of sale and may grant options with regard to sales.

My Agent may dispose of sales proceeds on my behalf as my Agent determines is appropriate.

**Section 3.02     Power to Buy**

Unless specifically limited by the other provisions of this power of attorney, my Agent may buy any kind of property. My Agent may determine the terms for buying property

UA - CL - LTC - 000719

#:442

and may obtain options to buy property. In addition, my Agent may arrange to insure the purchased property, and otherwise arrange for its safekeeping.

My Agent is authorized to borrow money for the purposes described in this Section and to secure the loan in any manner my Agent determines is appropriate.

My Agent is authorized to repay from my funds any money borrowed by me or on my behalf and to pay for any purchases made or cash advanced using my credit cards.

### Section 3.03    Power to Invest

My Agent may invest and reinvest all or any part of my property in any other property of whatever type, real or personal, tangible or intangible, and whether located inside or outside the geographic borders of the United States and its possession or territories. Unless specifically limited by the other provisions of this power of attorney, my Agent may:

> Invest in securities of all kinds, limited partnership interests, real estate or any interest in real estate whether or not productive at the time of investment, commodities contracts of all kinds, interests in trusts including investment trusts;

> Participate in common, collective or pooled trust funds or annuity contracts;

> Sell or otherwise terminate any investment made by me or on my behalf, and establish and terminate savings and money market accounts at banks and other financial institutions;

> Establish and terminate accounts with securities brokers and use brokerage accounts to make short sales and to buy on margin, and pledge any securities held or purchased in brokerage accounts as security for loans and advances made to the account;

> Establish and terminate agency accounts with corporate fiduciaries.

> Employ and fire financial and investment advisors.

### Section 3.04    Power to Manage Real Property

My Agent may manage any real property I now own or may acquire in the future including my personal residence. Unless specifically limited by the other provisions of this power of attorney, my Agent may:

> Lease and sublease property for any period, and grant options to lease or subdivide property, even if the term of the lease, sublease or option extends beyond the term of this power of attorney;

> Eject and remove tenants or other persons from property, and recover the property by all lawful means;

> Collect and sue for rents;

> Pay, compromise or contest tax assessments and apply for tax assessment refunds;

UA CL LTC 000720

#:443

Subdivide, partition, develop, dedicate property to public use without consideration, or grant or release easements over my real property;

Maintain, protect, repair, preserve, insure, build upon, improve, demolish, abandon and alter all or any part of my real property;

Employ laborers;

Obtain or vacate plats and adjust boundaries;

Adjust differences in the property's value on exchange or partition by giving or receiving consideration;

Release or partially release real property from a lien;

Enter into any contracts, covenants and warranty agreements regarding my real property that my Agent considers appropriate; and

Encumber property by mortgage or deed of trust.

My Agent may accept real property as a gift or as security for a loan.

### Section 3.05    Power to Manage Tangible Personal Property

My Agent may manage any tangible personal property I now own or may acquire in the future. Unless specifically limited by the other provisions of this power of attorney, my Agent may:

Lease and sublease property for any period, and grant options to lease or subdivide property, even if the term of the lease, sublease or option extends beyond the term of this power of attorney;

Recover my property by all lawful means;

Collect and sue for rents;

Pay, compromise or contest tax assessments and apply for tax assessment refunds;

Maintain, protect, repair, preserve, insure, improve, destroy, and abandon all or any part of my property; and

Grant security interests in my property.

My Agent may accept tangible personal property as a gift or as security for a loan.

### Section 3.06    Power Regarding Securities

My Agent may exercise all rights regarding securities that I own now or in the future. Specifically my Agent may:

Buy, sell, and exchange all types of securities and financial instruments including but not limited to stocks, bonds and mutual funds;

Receive certificates and other evidences of ownership with regard to securities;

UA - CL - LTC - 000721

Hold securities in bearer or uncertified form and use a central depository, clearing agency or book-entry system such as The Depository trust Company, Euroclear or the Federal Reserve Bank of New York;

Place all or any part of my securities in the custody of a bank or trust company or in the name of its nominee;

Employ a broker-dealer as custodian for my securities and register the securities in the name of the broker-deal or its nominee;

Exercise voting rights with respect to securities in person or by proxy, enter into voting trusts, and consent to limitations on the right to vote;

Participate in any reorganization, recapitalization, merger or similar transaction; and

Exercise any subscription rights, option rights (whether or not qualified under the Internal Revenue Code) or other rights to which I am entitled now or in the future, or to sell and dispose of these rights, and, if required, to sign my name to rights, warrants or other similar instruments.

### Section 3.07    Power to Collect and Settle My Obligations

My Agent may collect all rights and benefits to which I am entitled now or in the future, including, but not limited to rights to, cash payments, property, debts, accounts, legacies, bequests, devises, dividends and annuities. In collecting my obligations, my Agent may demand, sue for, arbitrate, settle, compromise, receive, deposit, expend for my benefit, reinvest or otherwise dispose of these matters as my Agent determines appropriate.

My Agent may use all lawful means and methods to recover these assets and rights, to qualify me for benefits and claim benefits on my behalf, and to compromise claims and grant discharges regarding the matters described in this Section. My Agent may convert my assets into assets that do not disqualify me from receiving benefits, or my Agent may divest my assets altogether. In any divestment action or asset conversion, I direct my Agent to avoid disrupting the dispositive provisions of my estate plan as established by me prior to my incapacity.

### Section 3.08    Power Regarding Governmental Benefits

All Powers described in this section are exercisable with respect to all federal and state (or any subdivision thereof) programs existing when this power of attorney was executed or for which I become eligible after this power of attorney is executed. The power of attorney shall extend to any state in which I live when my Agent's powers become effective.

My Agent is appointed as my "Representative Payee" for the purposes of receiving Social Security benefits. My Agent may collect all benefits payable to or for my benefit by any governmental agency or body, such as Supplemental Social Security (SSI), Medicaid, Medicare, and Social Security Disability Insurance (SSDI). My Agent shall have the full power to represent me and deal in all ways necessary concerning rights or benefits payable to me by any governmental agency including, without limitation,

UA - CL - LTC - 000722

#:445

Supplemental Social Security Income (SSSI), Medi-Cal and Social Security Disability Income (SSDI).

My Agent may:

Execute vouchers in my name for allowances and reimbursements payable to me by the United States, a foreign government, a state, or a subdivision of a state to me, including allowances and reimbursements for my transportation, children's and other individual's customarily or legally entitled to be supported by me, and for shipment of their household effects.

Take possession, remove and ship any of my property from a post, warehouse, depot, dock, or other place of storage, whether governmental or private, and execute and deliver a release, voucher, receipt, bill of lading, shipping ticket, certificate, or other instrument for that purpose.

Prepare, file, and prosecute my claims for benefits or assistances, financial or otherwise, for any claim to which I am entitled under a statute or government regulation.

Prosecute, defend, arbitrate, settle, and propose or accept a compromise with respect to any benefits I may be entitled to receive.

Receive the financial proceeds of any type of claim described in this Section and invest, disburse, or use the proceeds on my behalf for any lawful purpose.

Sign on my behalf any document necessary to permit my return to my residence following my incapacity or other condition that prevents me from currently living there.

### Section 3.09   Power Regarding Bank Accounts

My Agent may establish bank accounts of any type in one or more bank institutions that my Agent may choose. My Agent may modify, terminate, make deposits to, write checks on, make withdrawals from and grant security interests in any account in my name or to which I am an authorized signatory, except accounts held by me in a fiduciary capacity. In exercising this authority, it does not matter whether or not the account was established by me or for me by my Agent. My Agent is authorized to negotiate, endorse or transfer any check or other instrument with respect to any account, to contract for any services rendered by any bank or financial institution, and to execute, on my behalf as principal, any agency or power of attorney forms furnished by a bank with respect to accounts with the bank that appoints the bank or any person as my Agent.

If more than one Agent is serving concurrently under this power of attorney, the signature of any one of them is sufficient to endorse checks or drafts and to draw checks or drafts on my financial accounts.

### Section 3.10   Power Regarding Safe-Deposit Boxes

My Agent may contract with any institution to rent a safe-deposit box in my name. My Agent may have access to any safe-deposit box in my name or with respect to which I am an authorized signer. This Section will apply whether or not the contract for the safe-

UA - CL - LTC - 000723

#:446

deposit box was executed by me alone or jointly with others or by my Agent in my name. My Agent may also add to or remove the contents of a safe-deposit box, or terminate any rental contract for a safe-deposit box.

### Section 3.11 Power to Prosecute and Defend Legal Actions

My Agent may institute, supervise, prosecute, defend, intervene in, abandon, compromise, adjust, arbitrate, settle, dismiss, and appeal from any and all legal, equitable, judicial or administrative hearings, actions, suits or proceedings involving me in any way. This authority includes, but is not limited to, claims by or against me arising out of property damage or personal injury suffered by or caused by me or under circumstances such that the resulting loss may be imposed on me. My Agent may otherwise engage in litigation involving me, my property or my legal interests, including any and all property, interest or person for which or whom I have or may have any responsibility.

### Section 3.12 Power to Loan and Borrow

My Agent may make secured or unsecured loans to any person, entity, trust or estate on my behalf, for any term or payable on demand, with or without interest. My Agent may enter into or modify the terms of any mortgage, deed of trust or security agreement made in connection with any loan and may release or foreclose on the mortgage, deed of trust, or security.

My Agent may borrow money on my behalf at interest rates and on other terms that my Agent considers advisable from any person, institution or other source including, if my then-acting Agent is a corporate fiduciary, its own banking or commercial lending department.

My Agent may encumber my property by mortgages, pledges, and other hypothecation and shall have to power to enter into any mortgage or deed of trust even though the term of the mortgage or deed of trust may extend beyond the term for which this power of attorney is effective.

My Agent may borrow money for any purpose on any life insurance policy owned by me on my life even though the term of the loan may extend beyond the term for which this power of attorney is effective. My Agent may grant a security interest in the policy to secure the loan. In this regard, my Agent may assign and deliver the policy as security. No insurance company will be under any obligation to determine the necessity of the loan or how my Agent applies the loan proceeds.

### Section 3.13 Power to Renounce or Resign from Fiduciary Positions

My Agent may resign or renounce for me any fiduciary position I hold now or in the future including personal representative, trustee, guardian, attorney-in-fact, and officer or director of a corporation and any governmental or political office or position. In so doing, my Agent may file an accounting with the appropriate court of competent jurisdiction or settle on the basis of a receipt, release or other appropriate method.

UA · CL · LTC · 000724

#:447

### Section 3.14     Power Regarding Insurance

My Agent may purchase, maintain, surrender, collect, or cancel

> All kinds of life insurance or annuities on my life or the life of any one in whom I have an insurable interest;

> Liability insurance protecting me and my estate against third party claims;

> Hospital insurance, medical insurance, Medicare supplement insurance, custodial care insurance, and disability income insurance for me or my dependents; and

> Casualty insurance insuring my assets against loss or damage due to fire, theft, or other commonly insured risk.

My Agent may pay all insurance premiums, select any options under the policies, increase coverage under any policy, borrow against any policy, pursue all insurance claims on my behalf, and adjust insurance losses. This authority shall apply to both private and public plans, including Medicare, Medicaid, SSI and Workers' Compensation.

### Section 3.15     Power Regarding Taxes

My Agent may represent me in all tax matters and proceedings before any Agent or officer of the Internal Revenue Service, state and local authorities and in any court, for all periods including the date this power of attorney is executed until December 31, 2050.

My Agent may:

> Prepare, sign, and file all federal, state, and local tax returns including income, gift, FICA and payroll tax returns on my behalf;

> Prepare, sign, and file claims for refunds, requests for extensions of time to file returns or pay taxes, extensions and waivers of applicable periods of limitation, protests and petitions to administrative agencies or courts (including, but not limited to, the United States Tax Court);

> Sign consents and agreements under Section 2032A of the Internal Revenue Code or any successor section and consents to split gifts, closing agreements, and any power of attorney form required by the Internal Revenue Service or any state or local taxing authority with respect to any tax year;

> Pay taxes due, collect and dispose of refunds as my Agent determines appropriate, post bonds, receive confidential information and contest deficiencies determined by the Internal Revenue Service or any state or local taxing authority.

> Exercise any election I have under federal, state or local tax law and allocate any generation-skipping tax exemption to which I am entitled.

> Engage representation for me in any and all tax proceedings by attorneys-at-law, Certified Public Accountants, enrolled agents, and other licensed tax professionals.

UA - CL - LTC - 000725

#:448

### Section 3.16     Power to Make Gifts

My Agent may make gifts on my behalf. In order to make gifts, my Agent may withdraw assets from any trust created by me and from which I may withdraw assets.

For purposes of this power of attorney, my Agent may forgive any debts owed to me, and any debt forgiven will be considered a gift to the debtor.

For purposes of this Section, "my beneficiaries" shall mean my descendants and beneficiaries, including contingent beneficiaries, named in my Will or my revocable living trust.

My Agent may make gifts on the following terms and conditions:

#### (a)   Continuation of My Gifting

My Agent may honor pledges and continue to make gifts to charitable organizations that I have regularly supported in the amounts I have customarily given. My Agent may make gifts in order to assure the continuation of any gifting program initiated by me prior to the time I became incapacitated.

My Agent may make special occasion gifts to my estate plan beneficiaries, family members, or friends, in equal or unequal amounts, that reflect my past giving and my relationship with such individuals.

#### (b)   Gifts to My Agent

I specifically authorize gifts to my Agent, but only a Special Agent appointed under the provisions of Section 7.03 may make gifts to my Agent. My Agent may not make gifts to himself or herself, his or her estate, his or her creditors, or the creditors of his or her estate.

#### (c)   Gifts in Excess of the Annual Federal Gift Tax Exclusion

Only a Special Agent appointed under the provisions of Section 7.03 may make gifts in excess of the annual federal gift tax exclusion to my beneficiaries.

If my Agent determines that gifts in amounts in excess of the annual federal gift tax exclusion are in my best interest and the best interests of my beneficiaries, my Agent, by unanimous vote if more than one Agent is serving, shall appoint a Special Agent unrelated by blood or marriage to any Agent to review the facts and circumstances and to decide whether such gifts should be made. I recommend, but do not require, that my Agent select an independent certified public accountant, attorney-at-law, or corporate fiduciary to serve as the Special Agent under such circumstances.

Neither my Agent, nor the Special Agent appointed by my Agent, shall be liable to any beneficiary for exercising or failing to exercise its discretion to make gifts.

#### (d)   Gifts for Medical Expenses

My Agent may pay medical expenses for any of my beneficiaries as permitted under Section 2503(e) of the Internal Revenue Code. My Agent shall make the payments directly to the medical provider.

UA · CL · LTC · 000726

#:449

### (e)   Methods of Making Gifts

My Agent may make gifts of my property under this Section outright, in trust or in any other manner that my Agent considers appropriate.

By way of example and without limiting my Agent's powers under this Section, my Agent is specifically authorized to make gifts by creating tenancy in common and joint tenancy interests or establishing irrevocable trusts including charitable or non-charitable split interest trusts.   My Agent may make gifts by establishing and contributing my property to corporations, family limited partnerships, limited liability partnerships, limited liability companies or other similar entities and by making gifts of interests in any of those entities.

To accomplish the objectives described in this subsection, my Agent may establish and maintain financial accounts of all types and may execute, acknowledge, seal and deliver deeds, assignments, agreements, authorizations, checks and other instruments.   My Agent may prosecute, defend, submit to arbitration, settle or propose or accept a compromise with respect to a claim existing in favor of or against me based on or involving a gift transaction on my behalf. My Agent may intervene in any related action or proceeding.

My Agent may perform any other act my Agent considers necessary or desirable to complete a gift on my behalf in accordance with the provisions of this Section.

### (f)   Standard for Making Gifts

It is my desire that in making gifts on my behalf, my Agent consider the history of my gift making and my estate plan.   To the extent reasonably possible, I direct my Agent to avoid disrupting the dispositive provisions of my estate plan as established by me prior to my incapacity

### (g)   Ratification of Gifts

I specifically ratify any gifts made by my Agent under the terms of this power of attorney.

## Article Four
## Care and Control of Principal

My Agent may, in my Agent's sole and absolute discretion, exercise the following powers with respect to the control and management of my person.

### Section 4.01      Power to Provide for My Support

My Agent may do anything reasonably necessary to maintain my customary standard of living, including:

> Maintain my residence by paying all operating costs, including, but not limited to, interest on mortgages or deeds of trust, amortization payments, repairs and taxes, or by purchasing, leasing or making other arrangement for a different residence;

Immediate Durable Power of Attorney of Ruben Don
Page 10 of 18

#:450

Provide normal domestic help;

Provide clothing, transportation, medicine, food and incidentals; and

Make all necessary arrangements, contractual or otherwise, for my care at any hospital, hospice, nursing home, convalescent home or similar establishment, or in my own residence should I desire it, and assure that all of my essential needs are met wherever I may be.

### Section 4.02    Power to Provide for Support of Dependents

My Agent may make payments as my Agent deems necessary for the health, education, maintenance or support of those my Agent determines to be dependent on me for support.

### Section 4.03    Power to Protect or Dispose of Property

If my Agent determines that I will never be able to return to my residence from a hospital, hospice, nursing home, convalescent home or similar facility, my Agent may dispose of my residence. In so doing, my Agent may sell, lease, sublease or assign my interest on terms and conditions that my Agent considers appropriate.

My Agent may store and safeguard any items of tangible personal property remaining in my residence and pay all storage costs. Alternatively, my Agent may sell any items that my Agent believes I will never need again on terms and conditions that my Agent considers appropriate.

As an alternative to storing my tangible personal property, my Agent may transfer custody and possession, but not title, of any property item to the person named in my Will or my revocable living trust as the person entitled to receive that property item on my death.

### Section 4.04    Power to Provide for My Recreation and Travel

My Agent may, at my expense, allow me to engage in recreational and sports activities as my health permits, including travel.

### Section 4.05    Power to Provide for Companionship

My Agent may arrange any form of companionship for me necessary to meet my needs if I am unable to arrange for such companionship myself.

### Section 4.06    Power to Make Advance Funeral Arrangements

My Agent may make advance arrangements for my funeral and burial, including a burial plot, marker and any other related arrangements that my Agent considers appropriate.

UA - CL - LTC - 000728

#:451

## Article Five
## Incidental Powers

My Agent may perform those acts and execute and deliver those legal documents necessary or appropriate to the exercise of the powers set forth in this power of attorney, including, but not limited, to the following incidental powers.

### Section 5.01     Power to Commence Court Proceedings

My Agent may commence any court proceedings necessary to protect my legal rights and interests under this power of attorney including, but not limited to:

> Actions for declaratory judgments from any court of competent jurisdiction interpreting the validity of this power of attorney and any of the acts sanctioned by this power of attorney; provided, however, that my Agent need not seek a declaratory judgment to perform any act sanctioned by this power of attorney;

> Actions for mandatory injunctions requiring any person or entity to comply with my Agent's directions as authorized by this power of attorney;

> Actions for actual and punitive damages and the recoverable costs and expenses of such litigation against any person or entity who negligently or willfully fails or refuses to follow my Agent's directions as authorized by this power of attorney.

### Section 5.02     Power to Employ and Discharge Personnel

My Agent may employ and remove investment advisors, accountants, auditors, depositories, custodians, brokers, consultants, attorneys, expert advisors, agents and employees to advise or assist my Agent as my Agent considers appropriate.

### Section 5.03     Power to Sign Documents

My Agent may sign, execute, endorse, seal, acknowledge, deliver and file or record all appropriate legal documents necessary to exercise the powers granted under this power of attorney.

### Section 5.04     Power to Submit Costs for Payment

If my Agent incurs costs in performing any powers granted under this power of attorney, or in enforcing compliance with the powers given to my Agent under this power of attorney, my Agent may submit those costs to any person who has the authority to pay those costs such as the trustee of my revocable living trust or to my guardian or conservator. My trustee, conservator or guardian shall promptly pay those costs.

### Section 5.05     Power Regarding My Mail

My Agent may open, read, respond to and redirect my mail. My Agent may represent me before the U.S. Postal Service and all other mail or package carriers in any matter relating to mail or delivery services including the receipt of certified mail.

UA - CL - LTC - 000729

#:452

### Section 5.06     Power Regarding Memberships

My Agent may establish, cancel, continue or initiate my membership in organizations and associations of all kinds.

### Section 5.07     Power Regarding Custody of Documents

My Agent may take, give or deny custody of my important documents, including my Will and any codicils, trust agreements, deeds, leases, life insurance policies, contracts or securities. My Agent may disclose or not disclose the whereabouts or contents of those documents as my Agent believes appropriate.

### Section 5.08     Power to Care for My Pets

My Agent may provide for the housing, support, and maintenance of my pet animals. My Agent may contract for and pay the expenses of their proper veterinary care and treatment. But if my Agent decides that the care and maintenance of my pet animals is unreasonably expensive or burdensome, my Agent may give the pet animals to persons willing to care for and maintain them.

## Article Six
## Limitation on Powers

No individual serving as my Agent may exercise any fiduciary power or discretion if the exercise of that power or discretion would:

> Cause any income generated by my property to be attributed to my Agent for federal income tax purposes;

> Cause the value of any property subject to this power of attorney to be included in my Agent's gross estate for federal estate tax purposes;

> Cause any distribution made or allowed to be made by my Agent to be treated as a gift from my Agent; or

> Discharge a legal obligation of my Agent.

If the exercise of a power by my Agent under this power of attorney would cause any of the foregoing results, a Special Agent appointed under the provisions of Section 7.03 may exercise the power or discretion.

If it becomes necessary for my Agent to liquidate or reinvest any of my assets to provide support for me, I direct that my Agent, to the extent that it is reasonably possible, avoid disrupting the dispositive provisions of my estate plan as established by me prior to my incapacity.

If it is necessary to disrupt the dispositive provisions of my estate plan, my Agent will use his or her best efforts to restore my plan as soon as possible. My Agent will make reasonable efforts to obtain and review my estate plan. I authorize any person with knowledge of my estate plan or possession of my estate planning documents to disclose information to my Agent and to provide copies of documents to my Agent.

UA CL LTC - 000730

#:453

## Article Seven
## Administrative Powers and Provisions

This Article contains certain administrative powers and provisions that facilitate the use of the power of attorney and that protect my Agent and those who rely upon my Agent.

### Section 7.01    Release of Information

My Agent may release and obtain, as the case may be, any and all information regarding my financial investments and taxes, including any information regarding stocks, bonds, certificates of deposit, bank accounts, tax returns, retirement accounts, pension plans, and any other documents or information regarding my financial affairs and taxes from my attorneys-at-law, financial advisors, insurance professionals, accountants, stockbrokers, stock transfer agents, and any other persons having such information.

I release these persons or entities from any liability for releasing the above-referenced information to my Agent in reliance on this Section.

If my Agent is an attorney-at-law or other accounting or financial professional, the professional regulations of my Agent's profession and federal law may prohibit my Agent from releasing information about my financial affairs to others if I am a client of my Agent. This instrument, therefore, is a limited waiver of any privilege (such as the attorney-client privilege) that I have established with any Agent as a client. The privilege is waived for the limited purpose of permitting my Agent to perform his or her duties under this power of attorney.

### Section 7.02    Nomination of Conservator of my Person and my Estate

If at any time proceedings are initiated for the appointment of Conservator of my person and my estate, I nominate the person serving, or named to serve, as my Agent under this power of attorney at the time the proceedings are initiated.

If any person I have nominated is appointed Conservator of my person and my estate, I request that the court grant powers permitting my Conservator of my person and my estate to administer my estate independently of supervision and without adjudication, order or direction of any court.

### Section 7.03    Appointment of a Special or Ancillary Agent

If for any reason any Agent is unwilling or unable to act with respect to any property or any provision of this power of attorney, Agent2 shall appoint, in writing, a corporate fiduciary or an individual to serve as Special Agent as to the property or with respect to the provision. The Special Agent appointed must be an individual that is not related or subordinate to my Agent within the meaning of Section 672(c) of the Internal Revenue Code. Agent2 may revoke any such appointment at will.

If my Agent determines that it is necessary or desirable to appoint an Ancillary Agent to act under this power of attorney in a jurisdiction other than this one, my Agent may do so. In making an appointment, my Agent may sign, execute, deliver, acknowledge and

UA - CL LTC 000731

make declarations in any documents that may be necessary, desirable, convenient or proper in order to carry out the appointment.

A Special or Ancillary Agent may exercise all powers granted by this power of attorney unless expressly limited elsewhere in this power of attorney or by the instrument appointing the Special or Ancillary Agent. A Special or Ancillary Agent may resign at any time by delivering written notice of resignation to my Agent. Notice of resignation shall be effective in accordance with the terms of the notice.

### Section 7.04    Agent Authorized to Employ My Attorney

My Agent may employ the attorney who prepared this power of attorney or any other attorney employed by me in connection with my estate plan or business matters and I specifically:

> Waive any and all conflicts of interest that might arise through such employment;

> Authorize the attorney to make full disclosure of my estate plan and business to the Agent; and

> Authorize the attorney to accept the engagement.

### Section 7.05    Fiduciary Eligibility of Agent

My Agent shall be eligible to serve in any other fiduciary capacity for me or for my benefit, including trustee, guardian, conservator, committee, executor, administrator, or personal representative.

### Section 7.06    Reimbursement for Expenses and Compensation

My Agent may pay himself or herself, from my assets, fair and reasonable compensation authorized by law for services performed under this power of attorney and, in addition, my Agent may reimburse himself or herself for all reasonable expenses incurred for carrying out any provision of this power of attorney.

### Section 7.07    Liability of Agent

I release and discharge any Agent acting in good faith from any and all civil liability and from all claims or demands of all kinds whatsoever by me, my estate, and my heirs, successors and assigns arising out of the acts or omissions of my Agent, except for willful misconduct or gross negligence. This protection extends to the estate, heirs, successors and assigns of my Agent.

### Section 7.08    Amendment and Revocation

I may amend or revoke this power of attorney at any time. Amendments to this document must be made in writing by me personally (not by my Agent) and must be attached to the original of this document and recorded in the same county or counties as the original if the original is recorded.

UA-CL-LTC  000732

#:455

### Section 7.09    Resignation

My Agent may resign by the execution of a written resignation delivered to me or, if I am mentally disabled, by delivery to any person with whom I am residing or who has my care and custody.

### Section 7.10    Signature of Agent

My Agent shall use the following form when signing documents on my behalf pursuant to this power

Ruben Don by [enter Agent's name], his Agent.

### Section 7.11    Interpretation

This power of attorney is a general power of attorney and should be interpreted as granting my Agent all general powers permitted under the laws of State of California. The description of specific powers is not intended to, nor does it, limit or restrict any of the general powers granted to my Agent.

### Section 7.12    Use of "Agent" Nomenclature

The word "Agent" and any modifying or equivalent word or substituted pronoun includes the singular and the plural and the masculine, feminine and neuter genders.

### Section 7.13    Third Party Reliance

No person who relies in good faith on the authority of my Agent under this power of attorney will incur any liability to me, my estate, or my heirs, successors and assigns.

Any party dealing with my Agent may conclusively rely upon an affidavit or certificate of my Agent that:

The authority granted to my Agent under this power of attorney is in effect;

My Agent's actions are within the scope of my Agent's authority under this power of attorney;

I was competent when I executed this power of attorney;

I have not revoked this power of attorney; and

My Agent is currently serving as my Agent.

### Section 7.14    Effect of Duplicate Originals or Copies

If this power of attorney has been executed in multiple counterparts, each counterpart original will have equal force and effect.  My Agent may make photocopies of this power of attorney and each photocopy will have the same force and effect as the original.

UA - CL - LTC - 000733

#:456

**Section 7.15     Governing Law**

This power of attorney's validity and interpretation will be governed by the laws of the State of California. To the extent permitted by law, this power of attorney is applicable to all my property, whether real, personal, intangible or mixed, wherever located, and whether or not the property is owned by me now or in the future.

**Section 7.16     Severability**

If any provision of this power of attorney is declared invalid for any reason, the remaining provisions will remain in full force and effect.

## Article Eight
## Declarations of the Principal

I understand that this power of attorney is an important legal document. Before executing this power of attorney, my attorney explained to me the following:

The power of attorney provides my Agent with broad powers to dispose of, sell, convey and encumber my real and personal property.

The powers will exist for an indefinite period of time unless I revoke the power of attorney or I have limited their duration by specific provisions in the power of attorney.

This Durable Power of Attorney will continue to exist notwithstanding my subsequent disability or incapacity.

I have the power to revoke or terminate this Durable Power of Attorney at any time.

Dated:  December 17, 2009

_____
Ruben Don, Principal

UA - CL - LTC  000734

#:457

## ACKNOWLEDGMENT FOR PRINCIPAL

STATE OF CALIFORNIA        )
                                    ) ss.
COUNTY OF RIVERSIDE       )

On December 17, 2009, before me, Susan Chester, a Notary Public, personally appeared Ruben Don, who proved to me on the basis of satisfactory evidence to be the person whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: _____

SUSAN CHESTER
Commission # 1853681
Notary Public - California
Riverside County
My Comm. Expires Jun 13, 2013

Immediate Durable Power of Attorney of Ruben Don
Page 18 of 18

UA - CL - LTC - 000735

#:458



## DURABLE POWER OF ATTORNEY

### FOR HEALTH CARE

1.  CREATION OF DURABLE POWER OF ATTORNEY FOR HEALTH CARE. By this document I, RUBEN S. DON, of _____ ...n Desert, California 92211, intend to create a durable power of attorney for health care under Sections 4600 to 4752, inclusive, of the California Probate Code. This power of attorney shall not be affected by my subsequent incapacity.

2.  DESIGNATION OF HEALTH CARE AGENT. I do hereby designate and appoint LITA DON of _____ ... .... .... , Palm Desert, California 92211, whose telephone number is _____ 118, as my attorney in fact (referred to in this document as my "agent") to make health care decisions for me as authorized in this document. For the purposes of this document, "health care decision" means consent, refusal of consent, or withdrawal of consent to any care, treatment, service, or procedure to maintain, diagnose, or treat my physical or mental condition.

3.  GENERAL STATEMENT OF AUTHORITY GRANTED. Subject to any limitations in this document, I hereby grant to my agent full power and authority to make health care decisions for me to the same extent that I could make such decisions for myself if I had the capacity to do so. In exercising this authority, my agent shall make health care decisions that are consistent with my desires as stated in this document or (if not inconsistent with my desires as stated in this document) otherwise made known to my agent, including, but not limited to, my desires concerning obtaining, refusing, or withdrawing life-prolonging care, treatment, services, and procedures.

-1-

RECEIVED

7 26 20?

LTC BENEFITS

UA - CL - LTC - 000736

#459

(c)  Consent to the disclosure of this information.

6.  SIGNING DOCUMENTS, WAIVERS, AND RELEASES.  When necessary to implement the health care decisions that my agent is authorized by this document to make, my agent has the power and authority to execute on my behalf all of the following:

(a)  Documents titled or purporting to be a "Refusal to Permit Treatment" and "Leaving Hospital Against Medical Advice" and;

(b)  Any necessary waiver or release from liability required by a hospital or physician.

7.  ANATOMICAL GIFTS.  My agent shall have the power and authority to make a disposition of a part or parts of my body under the Uniform Anatomical Gift Act.

8.  DISPOSITION OF REMAINS.  My agent shall have the power and authority to direct the disposition of my remains according to her discretion.

9.  AUTHORIZATION OF AUTOPSY.  My agent shall have the power and authority to authorize an autopsy.

10.  ALTERNATE AGENT.  If LITA DON is not available or becomes ineligible to act as my agent to make health care decisions for me, or if I revoke her appointment or authority to act as my agent to make health care decisions for me, then I designate the following person to serve as my agent to make health care decisions for me as authorized in this document:

1.  MICHAEL HOWARD DON,

970

2.  BONNIE E. WACHTER,

11.  NOMINATION OF CONSERVATOR OF PERSON.  If a conservator of the

-3-

RECEIVED

MAY 26 2022

LTC BENEFITS

UA CL LTC 000738

#.400

**Call Information**

Call Taken By: Willey, Jeanne                      Date: 10/15/2010  Type:

Call/Caller: from: Michael Don                     Primary Phone:

all Source/Recipient: Son                          Additional Phone:

                                                   Additional Phone:

                                                   Fax:

**Insured/Claimant**

Last Name: Don

First Name: Ruben                                  Action:

olicy Number: ucs40428                             Send To:

alm Number: 09048982

SSN:                                               ☐ Question Outstanding   ☐ Incomplete

                                                   ☐ Referred to LTC Conne   ☐ Complaint

**Memo**

4:28:31 PM

Michael Ruben called today to update me on the care of his father and mother. He states his father had an a car accident 1.5 years ago which has left him with some brain damage and cognitive impairment. He has 24 hour care from Desert Lily as he doesn't know he is disabled and when he goes to get up on his own he falls. He cannot walk on his own and falls without someone with him. His mother is living with his dad and on 8/22/10 she fell backwards in the bathroom and hit her head. She was taken to the hospital and had a pacemaker put in. His mother now needs A as she cannot do things on her own. He is planning on sending in a claim form for her also.

He states they are moving his mother and father into an ALF on 10/21/10 - Chambrel Montrose which is in OH closer to his sisters home. They are now living in CA. They will also need to hire someone to be with his dad while living in the ALF and his sister is looking into getting someone for him

Since his parents are moving he would like to have their check sent directly to him so that he can deposit it in their account. His Address is Michael Don, 1.          L Manhattan Beach CA 90266.
He states he is the Power of Attorney. I told him if he is the power of attorney I can change the address to his address.

[New]  [Add]  [Undo]  [Print]  [Search]  [Address]  [Claim]  [Send]  [Status Call]  [Exit]

UA - CL - LTC - 000901

fr.401

**Boothby, Sheena M**

| | |
|---|---|
| From: | Michael Don [ |
| Sent: | Tuesday, September 11, 2012 12:47 AM |
| To: | Boothby, Sheena M |
| Subject: | Ruben Don- Your letter of August 24, 2012 |

Hello Sheena, I wanted to let you know that I received your letter of the above date with respect to our disagreement as to the total amount UNUM has paid under the contract between my father and UNUM. As you know, I have a power of attorney for all matters properly executed by my father.

I have asked you to show me where in the contract the lifetime maximum is not calculated as the agreement states. UNUM has not once referred to a section in the agreement that modifies the specific language in the agreement. As we have discussed, the "Lifetime Maximum Benefit Amount" is a capitalized (defined) term in the agreement. The policy schedule sets that amount at $108,000. The last line of page 10 of the policy has the statement, "Your Lifetime Maximum Benefit Amount will also increase by 5%." I have asked where this language is modified to allow for a different calculation when benefits are being paid. UNUM has responded that, "this is the way we do it" without one indication of where in the contract this is permitted.

When we spoke by phone with your supervisor (I believe), John Noble, the Director of Long Term Claims was also on the line. You both stated that you had checked with all departments within the Company, including those people to whom an appeal would go, and that everyone was in agreement with your calculation. Accordingly, your supervisor suggested that an appeal based on the arguments I had made would likely not give rise to a different answer. Never the less, I would like you to appeal my request based on the facts above and the calculations I have previously provided.

I wanted to let you know that effective today we have decreased the in-home care that is being provided to my Father. While it would be preferable to continue 24 hour care because my father still has cognitive and motor impairment, we have to conserve assets so there will be some left for his life going forward, especially in light of your decreased payment decision. While concerned, we hope that this change will not result in a negative experience for him. We look forward to your prompt response.


Mike Don
POA for Ruben Don

1

UA - CL - LTC - 001339

#.402

## Activity

-----------------------------------------------------------------------------

Checked/Unchecked Indicator: No
Type: Appeal          Name: Appeal Referral
Status: Cancelled
Notify Date: 09/11/2012
Activity Owner: Roy, Amy
Mark As Priority: No
Subject: LTC-appeal
Upon Completion Notify: Activity Creator
Due Date:
Action:

Request Fields

-----------------------------------------------------------------------------

Request: See appeal e-mail linked to this


Created By: Boothby, Sheena M
Created Date: 09/11/2012 09:37:43          Create Site: Portland

Response Fields

-----------------------------------------------------------------------------

Response: Roy, Amy 09/11/2012 10:07:32: Appeals cannot accept at this time.  Appeal
cannot be sent via email.  Acceptable appeals must be sent by mail, fax or IVR/WEB.
Please contact EE/ POA and advise.  Please also re-iterate appeal time frames.
Appeals will take no action at this time.

Thank you.
A. Roy



Completed By: Roy, Amy
Completed Date: 09/11/2012 10:07:32          Complete Site. Portland


Linked Document ID. [Primary Doc Type - Secondary Doc Type]

-----------------------------------------------------------------------------

2012091109364027CB54: Appeals - Notice of Appeal

### Follow Up

-----------------------------------------------------------------------------

Checked/Unchecked Indicator: No

Status: Cancelled          Date: 09/18/2012
Follow Up Owner: Boothby, Sheena M
Subject: F/U on appeal
Mark As Priority: No

Notes: F/U on appeal


Created By: Boothby, Sheena M
Created Date: 09/11/2012          Create Site: Portland

Completed By: Roy, Amy
Complete Date: 09/11/2012          Complete Site: Portland

UA - CL - LTC - 001340

CONFIDENTIAL

UNUM 0005411

# EXHIBIT G

#:464

## BENEFITS

**Nursing Home Benefit**

After you satisfy the Elimination Period, we will pay you the Nursing
Home Benefit if you suffer a covered Loss of Functional Capacity or a
covered Cognitive Impairment and are receiving services in a Nursing
Facility.

We will send the benefit payments to you each month. If you are
eligible for benefits for a period that is less than one month, we
will pay 1/30th of the net monthly payment for each day that you
suffer a covered Loss of Functional Capacity or a covered Cognitive
Impairment and are receiving services in a Nursing Facility. Benefit
payments will cease as provided in the "Termination of Nursing Home
Benefit" section of this policy.

**Paid-up Benefit**

If this policy should lapse due to nonpayment of premium after it
has been inforce for five years, you may be eligible for a Paid-up
Benefit. This means that your policy would continue automatically
with a reduced Nursing Home Benefit Amount. The amount of insurance
with a Paid-up Benefit is based on your issue age and how long your
coverage has been inforce on the due date of the last unpaid premium.
This Paid-up Benefit is subject to all the terms and conditions of
this policy. The Paid-up Benefit Table is shown in the Policy
Schedule.

This policy has no cash surrender value.

**Benefit Increase Provision**

Your Nursing Home Benefit will increase each year on the Policy
Anniversary by 5% of the Nursing Home Benefit in effect on that
Policy Anniversary. Increases will be automatic and will occur
regardless of your health and whether or not you have suffered a
covered Loss of Functional Capacity or a covered Cognitive
Impairment. Your premium will not increase due to automatic
increases in your Nursing Home Benefit. In no event will the total
Nursing Home Benefit be more than 200% of your original Nursing Home
Benefit. If your policy is being continued as insurance with a
Paid-up Benefit, you will receive no further increases in your
Nursing Home Benefit.

**How To File a Claim**

You must give us written notice of claim within 30 days of the date
of Loss of Functional Capacity or Cognitive Impairment. If it is not
possible for you to give us notice within this time limit, it must be
given as soon as reasonably possible.

We will send you our initial claim forms when we receive your written
notice of claim. If you do not receive our claim forms within 15
days after written notice of claim is sent, you can send us written
proof of claim without waiting for the forms.

ICN.BEN.3.1                                    9

# EXHIBIT H

IN THE PROBATE COURT OF SUMMIT COUNTY, OHIO

IN THE MATTER OF
THE ESTATE OF

CASE NUMBER  2014 ES 00776

Ruben S. Don

*Deceased*

## ENTRY APPOINTING FIDUCIARY; LETTERS OF AUTHORITY
### (For Executors and all Administrators)

Name and Title of Fiduciary:  Michael Don, Executor
Ronald J. Koehler, Administrator WWA

On hearing the Application of the above fiduciary for authority to administer decedent's estate, in open Court, the Court finds that:

1.  Decedent died on: 08/06/2014;

    Domiciled in:  100 Brookmont Road, #137, Copley, OH 44333

    Choose One:  ☒ Testate ☐ Intestate

2.  Choose One:  ☒ Bond is dispensed with by the Will.

    ☐ Bond is dispensed with by Law.

    ☐ Applicant has executed and filed an appropriate bond, which is approved by the Court.

3.  Applicant is a suitable and competent person to execute the trust.

The Court, therefore, appoints applicant as such fiduciary, with the power conferred by law, to fully administer decedent's estate.   This entry of appointment constitutes the fiduciary's Letters of Authority.

PROBATE COURT
COUNTY OF SUMMIT, OH.
F I L E D

AUG 1 8 2014

IT IS SO ORDERED.

*Elinore Marsh Stormer*

Date: 08/18/2014      JUDGE ELINORE MARSH STORMER      JUDGE ELINORE MARSH STORMER

---

## CERTIFICATION OF APPOINTMENT AND INCUMBENCY

The above document is a true copy of the original kept by me as custodian of the records of this Court.  It constitutes the Appointment and Letters of Authority of the named fiduciary who is qualified and acting in such capacity.

Elinore Marsh Stormer, Probate Judge *and Ex-Officio Clerk*

( Seal )

George R. Wentz, Chief Magistrate
August 18, 2014
Date

# EXHIBIT I

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUBEN DON, Individually, and by and through his Power of Attorney, Son and Authorized and Legally Designated Representative MICHAEL DON, and as the Class Representative on behalf of those persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UNUM GROUP, a Delaware Corporation; and UNUM LIFE INSURANCE COMPANY OF AMERICA, a Maine Corporation,<br><br>Defendants. | Case No. CV 13-4502-DSF (VBKx)<br><br>**[ORDER ON JOINT STIPULATION OF THE PARTIES TO SUBSTITUTE RUBEN DON WITH MICHAEL DON, EXECUTOR OF THE ESTATE OF RUBEN DON, AS PLAINTIFF PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 25(a)** |

FOR GOOD CAUSE APPEARING, and based on the Joint Stipulation of all the parties, the Court orders as follows:

(1)    The second amended complaint in this action shall not include claims or requests for declaratory or injunctive relief.

(2)    All of the requirements of Federal Rule of Civil Procedure 25(a) have been satisfied.

(3)    Ruben Don is substituted with Michael Don, Executor of the Estate of Ruben Don, as Plaintiff in this action.

(4)    By stipulating to the substitution described above, Defendants do not waive any arguments regarding the merits of Plaintiff's claims or Plaintiff's ability to

satisfy the requirements of Fed. R. Civ. P. 23, including the requirements of adequacy and typicality.

IT IS SO ORDRED.

Dated: August _28, 2014

UNITED STATES DISTRICT JUDGE
DALE S. FISCHER

# EXHIBIT J

Case 2:13-cv-04502-DSF-VBK   Document 130-1   Filed 03/26/15   Page 84 of 96   Page ID
#:3343
Case 2:13-cv-04502-DSF-VBK   Document 104   Filed 12/30/14   Page 1 of 2   Page ID #:1921

1
2
3
4
5
6
7
8
9
10
11
12                    UNITED STATES DISTRICT COURT
                      CENTRAL DISTRICT OF CALIFORNIA
13
14
15   MICHAEL DON, EXECUTOR OF THE          Case No. CV 13-4502-DSF (VBKx)
     ESTATE OF RUBEN DON,
16   Individually, and as the Class        **ORDER RE:  UNUM GROUP**
     Representative on behalf of those persons
17   similarly situated,
18                    Plaintiff,
19          vs.
20   UNUM GROUP, a Delaware Corporation;
     and UNUM LIFE INSURANCE
21   COMPANY OF AMERICA, a Maine
     Corporation,
22
23                    Defendants.
24
25
26
27
28

     FOR GOOD CAUSE APPEARING, and based on the Stipulation of the parties, the Court orders as follows:

     1.     This Order is limited and applicable only to this case.

     2.     For the purpose of this case only, Defendants Unum Group ("Unum Group") and Unum Life Insurance Company of America ("Unum Life") (together, "Defendants") stipulate and agree that, with respect to the conduct alleged in Plaintiff's Second Amended Complaint ("SAC") [Docket No. 64], Unum Life may be treated as the agent and/or alter ego of Unum Group.

     3.     Based on that stipulation and agreement, Plaintiff's Unum Group Written Discovery Requests and Unum Group Deposition Notices (as defined in the parties' Stipulation) are withdrawn, and Plaintiff shall not seek any further discovery with respect to whether Unum Group acted as the actual, or ostensible authorized agent, or agent by ratification, or principal, servant, master, partner, alter ego, or joint venture of Unum Life.

     3.     By entering into this stipulation, Unum Group and Unum Life do not concede, for the purposes of any other case, that Unum Life may be treated as the agent and/or alter ego of Unum Group.

     4.     The parties' Stipulation is contingent upon the entry of this Order.


**IT IS SO ORDERED.**


Dated: 12/30/14                          _____
                                         United States District Judge
                                         Dale S. Fischer

-1-

# EXHIBIT K

DURABLE POWER OF ATTORNEY

FOR HEALTH CARE

(California Probate Code §§4600-4753)

1.     CREATION OF DURABLE POWER OF ATTORNEY FOR HEALTH CARE:

A durable power of attorney enables the person designated below to make health care decisions for me as permitted in California Probate Code sections 4600-4753. This power of attorney shall not be affected by my subsequent incapacity.

By this document I intend to create a durable power of attorney for health care as authorized by the California Probate Code. This power of attorney shall remain in force despite my subsequent incapacity.

2.     DESIGNATION OF HEALTH CARE AGENT:

I, LEROY E. LITTLE, of ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ hereby designate and appoint CAROLYN JAN LITTLE, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ as my agent to make health care decisions authorized in this document.

3.     GENERAL STATEMENT OF AUTHORITY GRANTED:

A.     In the event I become incapable of giving an informed consent to any health care decision, I hereby grant to my agent full power and authority to consent, refuse consent, or withdraw consent to any type of health care procedure (including any procedure to maintain, diagnose, or treat any physical or mental condition), or to make any other health care decision, to the same extent that I could if I were competent to do so, subject to the terms of this instrument. My agent shall exercise this power and authority in accordance with my expressed desires, known to my agent, whether contained in this document or not. Before acting, my agent shall attempt to communicate with me

Exhibit K
1 of 8

should decide for me, having my best interests in mind. My agent is further authorized:

To authorize, or refuse to authorize, any health care decision, or medical treatment, if I shall be physically or mentally incapacitated or otherwise unable to make such authorization for myself, including but not limited to authorization for emergency care, hospitalization, surgery, therapy, and/or any other kind of treatment or procedure that, in my agent's sole discretion, my agent thinks necessary for my benefit and well being.

To consult with and advise any physicians, nurses, therapists, dentists, or any other medical and/or health care institutions on my behalf, as such consultations relate to my health and welfare. All such personnel and institutions are specifically requested to abide by any and all decisions and instructions of my agent and to release to my agent any and all information that my agent may request concerning my health and well-being.

To receive into my agent's sole possession any and all items of personal property and effects that may be recovered from or about my person by any hospital, police agency, or any other person at the time of my illness, disability, or death, this to specifically include my remains, if applicable.

B.      "Health care decisions" means consent, refusal of consent, or withdrawal of consent for any care, treatment, service, or procedure to affect my physical or mental condition, as well as consent to release of medical information.

C.      I trust my agent, who knows and understands my desires, and in whose judgment I have absolute faith, to exercise her discretion in a manner that would be satisfactory to me if I had the capacity to give or refuse to give consent.

D.      Before acting, my agent shall attempt to communicate with me regarding my desires unless such attempt would be futile. If I am unreachable by such communication, and my desires regarding a particular health care decision are unknown, my agent should make the health care

Exhibit K
2 of 8

herein, and information received from the attending physician(s) concerning my prognosis, all the while having my best interests in mind.

E.     If a Declaration under the California Natural Death Act, as set forth in the California Health and Safety Code, is signed by me, whether it is signed before, in conjunction with, or after this Durable Power of Attorney for Health Care, it is my intention that the language in the California Natural Death Act should in no way limit the powers given to my agent in this document. If I have signed a Declaration, it was with the hope that the cumulative effect of both documents would help implement my intentions.

4.     STATEMENT OF DESIRES CONCERNING LIFE-SUSTAINING TREATMENT AND
       SPECIAL PROVISIONS:

A.     If the extension of my life would result in a mere biological existence, devoid of cognitive function, with no reasonable hope for normal functioning, then I do not desire any form of life-sustaining procedures, including nutrition and hydration unless necessary for my comfort or alleviation of pain or, if life-sustaining treatment has been instituted, I desire that it be withdrawn. It is my desire that my agent consider relief from suffering, preservation or restoration of functioning, and the quality as well as extent of the life being preserved when decisions are made concerning life-sustaining care, treatment, services, and procedures. In making the decision to withhold or remove treatment, my agent should ask the question: "Is the proposed treatment an aid to recovery or merely a prolongation of inevitable death?" What is "reasonable," what is "an aid to recovery," and what is "merely a prolongation of inevitable death" shall be determined by my agent after consulting with my attending physicians.

B.     It is my desire that my agent consent to and arrange for the administration of any type of pain relief, even though its use may lead to permanent damage, addiction, or even hasten the moment of, but not intentionally cause, my death.



Exhibit K
3 of 8

PHYSICAL OR MENTAL HEALTH:

My agent has the power and authority to do all of the following:

(a)     Request, review, and receive any information, verbal or written, regarding my physical or mental health, including, but not limited to, medical and hospital records.

(b)     Execute, on my behalf, any releases or other documents that may be required in order to obtain this information.

(c)     Consent to disclosure of this information.

(d)     Execute documents such as "Refusal to Permit Treatment," "Leaving Hospital Against Medical Advice," or any necessary waiver or release from liability required by hospital or physician.

(e)     Execute all necessary instruments and perform all necessary acts required for the execution and implementation of all authorizations contained in this document.

6.     SIGNING DOCUMENTS, WAIVERS, AND RELEASES:

My agent has the power and authority to execute any and all documents that relate to my health care decisions, including, but not limited to, documents titled or purported to be a "Refusal to Permit Treatment" or "Leaving Hospital Against Medical Advice," and any necessary waiver or release from liability.

7.     DESIGNATION OF ALTERNATE AGENTS:

If the person I designated as my agent in paragraph 2 is unable or unwilling to act as my

Exhibit K
4 of 8

to serve as my agent, in the order listed below, to make health care decisions for me, as authorized in this document:

FIRST ALTERNATE AGENT:     KAREN JOYCE JACOBSON

ADDRESS:

TELEPHONE:

9.     NOMINATION OF CONSERVATOR OF PERSON:

A.     If it becomes necessary to appoint a conservator of my person, I nominate the following persons in the following order to act as the conservator of my person:

FIRST NOMINEE:          CAROLYN JAN LITTLE

ADDRESS:

TELEPHONE:

FIRST ALTERNATE NOMINEE:   TAMARA JO NILES

ADDRESS:

TELEPHONE:

B.     I grant to my conservator all the powers specified in the California Probate Code. My conservator shall serve in such capacity without bond, or if a bond is required, I request that a minimum bond be set. I revoke all prior conservatorship nominations.

Exhibit K
5 of 8

10.   DURATION:

This power of attorney is effective immediately and shall remain in force indefinitely.

11.   REVOCATION:

I revoke any prior durable power of attorney for health care.

12.   DECLARATION OF PRINCIPAL:

I declare that my lawyer has explained to me my rights in connection with this instrument and the consequences of signing it and not signing it, and that I have read the warnings contained in California Probate Code section 4703(a)

WARNING TO PERSON EXECUTING THIS DOCUMENT

THIS IS AN IMPORTANT LEGAL DOCUMENT WHICH IS AUTHORIZED BY THE KEENE HEALTH CARE AGENT ACT. BEFORE EXECUTING THIS DOCUMENT, YOU SHOULD KNOW THESE IMPORTANT FACTS:

THIS DOCUMENT GIVES THE PERSON YOU DESIGNATE AS YOUR AGENT (THE ATTORNEY IN FACT) THE POWER TO MAKE HEALTH CARE DECISIONS FOR YOU. YOUR AGENT MUST ACT CONSISTENTLY WITH YOUR DESIRES AS STATED IN THIS DOCUMENT OR OTHERWISE MADE KNOWN.

EXCEPT AS YOU OTHERWISE SPECIFY IN THIS DOCUMENT, THIS DOCUMENT GIVES YOUR AGENT THE POWER TO CONSENT TO YOUR DOCTOR NOT GIVING TREATMENT OR STOPPING TREATMENT NECESSARY TO KEEP YOU ALIVE.

NOTWITHSTANDING THIS DOCUMENT, YOU HAVE THE RIGHT TO MAKE MEDICAL AND OTHER HEALTH CARE DECISIONS FOR YOURSELF SO LONG AS YOU

Exhibit K
6 of 8

CAN GIVE INFORMED CONSENT WITH RESPECT TO THE PARTICULAR DECISION. IN ADDITION, NO TREATMENT MAY BE GIVEN TO YOU OVER YOUR OBJECTION AT THE TIME, AND HEALTH CARE NECESSARY TO KEEP YOU ALIVE MAY NOT BE STOPPED OR WITHHELD IF YOU OBJECT AT THE TIME.

THIS DOCUMENT GIVES YOUR AGENT AUTHORITY TO CONSENT, TO REFUSE TO CONSENT, OR TO WITHDRAW CONSENT TO ANY CARE, TREATMENT, SERVICE, OR PROCEDURE TO MAINTAIN, DIAGNOSE, OR TREAT A PHYSICAL OR MENTAL CONDITION. THIS POWER IS SUBJECT TO ANY STATEMENT OF YOUR DESIRES AND ANY LIMITATIONS THAT YOU INCLUDE IN THIS DOCUMENT. YOU MAY STATE IN THIS DOCUMENT ANY TYPES OF TREATMENT THAT YOU DO NOT DESIRE. IN ADDITION, A COURT CAN TAKE AWAY THE POWER OF YOUR AGENT TO MAKE HEALTH CARE DECISIONS FOR YOU IF YOUR AGENT (1) AUTHORIZES ANYTHING THAT IS ILLEGAL, (2) ACTS CONTRARY TO YOUR KNOWN DESIRES, OR (3) WHERE YOUR DESIRES ARE NOT KNOWN, DOES ANYTHING THAT IS CLEARLY CONTRARY TO YOUR BEST INTERESTS.

YOU HAVE THE RIGHT TO REVOKE THE AUTHORITY OF YOUR AGENT BY NOTIFYING YOUR AGENT OR YOUR TREATING DOCTOR, HOSPITAL, OR OTHER HEALTH CARE PROVIDER ORALLY OR IN WRITING OF THE REVOCATION.

YOUR AGENT HAS THE RIGHT TO EXAMINE YOUR MEDICAL RECORDS AND TO CONSENT TO THEIR DISCLOSURE UNLESS YOU LIMIT THIS RIGHT IN THIS DOCUMENT.

THIS DOCUMENT REVOKES ANY PRIOR DURABLE POWER OF ATTORNEY FOR HEALTH CARE.

Exhibit K
7 of 8

YOU SHOULD CAREFULLY READ AND FOLLOW THE WITNESSING PROCEDURE DESCRIBED AT THE END OF THIS FORM. THIS DOCUMENT WILL NOT BE VALID UNLESS YOU COMPLY WITH THE WITNESSING PROCEDURE.

IF THERE IS ANYTHING IN THIS DOCUMENT THAT YOU DO NOT UNDERSTAND, YOU SHOULD ASK A LAWYER TO EXPLAIN IT TO YOU.

YOUR AGENT MAY NEED THIS DOCUMENT IMMEDIATELY IN CASE OF AN EMERGENCY THAT REQUIRES A DECISION CONCERNING YOUR HEALTH CARE. EITHER KEEP THIS DOCUMENT WHERE IT IS IMMEDIATELY AVAILABLE TO YOUR AGENT AND ALTERNATE AGENTS OR GIVE EACH OF THEM AN EXECUTED COPY OF THIS DOCUMENT. YOU MAY ALSO WANT TO GIVE YOUR DOCTOR AN EXECUTED COPY OF THIS DOCUMENT.

DO NOT USE THIS FORM IF YOU ARE A CONSERVATEE UNDER THE LANTERMAN-PETRIS-SHORT ACT AND YOU WANT TO APPOINT YOUR CONSERVATOR AS YOUR AGENT. YOU CAN DO THAT ONLY IF THE APPOINTMENT DOCUMENT INCLUDES A CERTIFICATE OF YOUR ATTORNEY.

Executed on October___6___, 1995, at Laguna Hills, California.

_____

LEROY E. LITTLE

Exhibit K
8 of 8

STATE OF CALIFORNIA ）

　　　　　　　　　　　　　） 　　SS.

COUNTY OF ORANGE ）

On *October 6,* _____, 1995, before me, *Lynn Simon* _____

personally appeared LEROY E. LITTLE, personally known to me (or proved to me on the basis of

satisfactory evidence) to be the person whose name is subscribed to the within instrument and

acknowledged to me that he executed the same in his authorized capacity, and that by his signature

on the instrument the person, or the entity upon behalf of which the person acted, executed the

instrument.

WITNESS my hand and official seal.

Signature _____

LYNN SIMON
Comm. #976471
NOTARY PUBLIC  CALIFORNIA
ORANGE COUNTY
Comm. Expires Nov. 22, 1996

CERTIFICATE OF LAWYER

I am a lawyer authorized to practice law in the State where this power of attorney was executed, and the principal was my client at the time when this power of attorney was executed. I have advised my client concerning his rights in connection with this power of attorney and the applicable law and the consequences of signing or not signing this power of attorney, and my client, after being so advised, has executed this power of attorney.

Date:   October 6, 1995

DANIEL J. COOPER
Cooper & Wolowski
24012 Calle De La Plata, Suite 210
Eldorado Bank Building
Laguna Hills, California 92653
(714) 859-8456